IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NELSON RODRIGUEZ,

                Plaintiff,

      v.                                  Civil Action No.
                                          9:07-CV-0432 (LEK/DEP)

DONALD SELSKY,

                Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

NELSON RODRIGUEZ, *Pro Se*
88-A-5497
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANT:

HON. ANDREW M. CUOMO        AARON M. BALDWIN, ESQ.
Attorney General of the State     Assistant Attorney General
  of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Nelson Rodriguez, a prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.  In his complaint, as amended, Rodriguez alleges that prison officials at the facility in which he was confined at the relevant times issued him a false misbehavior report and denied him procedural due process during the course of the ensuing disciplinary hearing.[1]  Plaintiff attributes defendants' actions to retaliation for his having filed a civil action against a corrections employee who is not named as a defendant in this action.

At this juncture, all that remains in the case is plaintiff's claim against defendant Donald Selsky, the Director of Special Housing and Inmate Disciplinary Programs for the New York State Department of Correctional Services ("DOCS"), alleging violation of plaintiff's due process rights arising out of his disciplinary hearing and defendant Selsky's review of plaintiff's appeal of the disciplinary determination and affirmance of the

---

[1]     As originally constituted, plaintiff's complaint recited other allegedly unlawful conduct, including that he was subjected to ongoing harassment, retaliation, and interference with his access to the courts.  As a result of a series of court interventions the claims in this action, which was commenced elsewhere but later transferred to this district, have been significantly narrowed.

2

finding of guilt, though with modification of the sentence imposed.  Now that discovery in the action has closed, defendant Selsky has moved for judgment on the pleadings seeking dismissal of plaintiff's claims against him.

Defendant's motion presents an issue that has divided the courts of this circuit – that is, whether by reviewing a disciplinary determination allegedly infected by procedural due process violations defendant Selsky becomes sufficiently involved in the constitutional deprivation to support a finding of liability.  After having carefully considered plaintiff's allegations in light of the arguments now raised, I have concluded that those district court decisions finding the requisite personal involvement under the circumstances presented are better-reasoned.  Accordingly, I find that plaintiff has set forth a plausible cause of action for a due process violation against defendant Selsky and therefore recommend that his motion for judgment on the pleadings be denied.

I.    BACKGROUND[2]

Plaintiff is a prison inmate entrusted to the custody of the DOCS; at the times relevant to his due process claim it appears that Rodriguez was housed in the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York.  *See generally* Amended Complaint (Dkt. No. 7); *see also* Complaint (Dkt. No. 1).[3]

Plaintiff alleges that on December 30, 2003, he was issued a false misbehavior report accusing him of disciplinary infractions and that Corrections Captain Connolly was principally responsible for its issuance and the false accusation upon which it was based.  *See* Amended Complaint (Dkt. No. 7) ¶ 12.  In that disciplinary report, which was not served upon him until January 2, 2004, plaintiff was charged with fighting,

---

[2]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

[3]      Defendant Selsky's motion is addressed to plaintiff's amended complaint, which was filed on June 26, 2007, and is the operative pleading currently before the court.  Dkt. No. 7.  Despite the fact that it has been superceded as a result of the filing of an amended complaint, *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999), I have also referred to plaintiff's original complaint to assist in fleshing out the relevant background facts as it more clearly identifies the location of some of the relevant events.  Plaintiff's amended complaint, for example, does not clearly allege where he was incarcerated when the wrongdoing now at issue occurred, whereas a review of his original complaint indicates that the relevant events occurred while plaintiff was incarcerated at Shawangunk.

engaging in violent conduct, and participating in an action detrimental to the order of facility, all in violation of established prison rules. *Id.* ¶ 14. Shortly after the misbehavior report was issued, at the direction of defendant Connolly corrections officers escorted the plaintiff to the facility's hospital isolation room, purportedly for treatment of injuries that he sustained. *Id*. ¶ 13. The following day, without having yet been officially charged with any misconduct, plaintiff was placed in the facility's special housing unit ("SHU"), again at the direction of defendant Connolly. *Id.*

A disciplinary hearing was conducted, beginning on January 8, 2004, to address the misbehavior report. Amended Complaint (Dkt. No. 7) ¶ 15. During the course of that hearing plaintiff was served with yet another misbehavior report which, he alleges, was also fabricated. *Id.* Although plaintiff objected on the record to the late receipt of the newest misbehavior report, the hearing proceeded and continued until January 27, 2004. *Id.* ¶ 16. Plaintiff maintains that during the course of the hearing he presented "overwhelming evidence" supporting his claim of fabrication and his theory that corrections officials, along with certain inmates, conspired to set him up, allegedly on orders from defendant Connolly. *Id.* According to the plaintiff, in light of that evidence defendant

Wright, the author of one of the misbehavior reports, was prepared to drop the charges against him, but the hearing was nonetheless reinstated on order of defendant Connolly.  *Id.* ¶ 17.

Plaintiff contends that during the course of the hearing Corrections Counselor Roddy, who was apparently assigned to assist him, exhibited bias, acted unprofessionally, and refused to provide him with requested documents.  Amended Complaint (Dkt. No. 7) ¶ 18.  According to Rodriguez, defendant Roddy threatened that if he continued to request further assistance from her she would "write him up for harassment".  *Id.* Plaintiff's amended complaint alleges that he was denied the right to adequately prepare a meaningful defense to the charges against him and that he was deprived of a fair and impartial hearing by defendant John Ewanciw, the hearing officer, who was biased and involved in the "set up" against him.  *Id.* ¶¶ 19-20.  Plaintiff maintains that all of the defendants' actions were taken in retaliation for his having commenced a civil action against another DOCS employee, Lieutenant Schneider.  *Id.* ¶ 19.

Although plaintiff's complaint, as amended, does not provide a great deal of detail regarding the hearing outcome, it appears that following the disciplinary hearing he was found guilty of one or more of the charges lodged against him and sentenced to a term of two years of disciplinary

6

SHU confinement.  *See* Amended Complaint (Dkt. No. 7) ¶ 21.  Plaintiff

appealed his disciplinary conviction to both defendant Michael McGinnis,

the superintendent at the Southport Correctional Facility, and defendant

Selsky.  *Id.* ¶ 21.  In those appeals, plaintiff reiterated his argument that

the misbehavior reports lodged against him were fabricated, that the

subsequent disciplinary hearing was unfair, and that the hearing officer's

packet was missing "pertinent documentary evidence that the plaintiff had

submitted as evidence" which would have refuted the charges leveled

against him.  *Id.*  Though the finding of guilt on the charges was affirmed,

plaintiff's appeal to defendant Selsky resulted in a reduction of the term of

SHU confinement from two years to one.  *Id.*

II.   PROCEDURAL HISTORY

This action was filed on April 11, 2007 in the Southern District of

New York, but was subsequently transferred to this district by order issued

by Chief District Judge Kimba M. Wood on April 11, 2007.[4]  Dkt. Nos. 1, 3.

Plaintiff's original complaint challenged not only the misbehavior report

and disciplinary action that ensued but also chronicled continued

harassment and acts of retaliation that he experienced following his

---

[4]     While plaintiff's complaint was not filed in the Southern District until April
11, 2007, the transfer order issued by Chief Judge Wood noted that the complaint was
received in that district on February 26, 2007.  *See* Dkt. No. 3, n.1.

transfer into the Attica Correctional Facility, naming as defendants several

DOCS employees including Donald Selsky.  *Id.*  Upon transfer of the case

to this district and the court's initial review of plaintiff's complaint and

accompanying request for leave to proceed *in forma pauperis* ("IFP"), by

order dated May 17, 2007 Senior District Judge Lawrence E. Kahn

granted plaintiff IFP status but directed that he file an amended complaint,

noting several deficiencies in the original pleading including, *inter alia*, the

apparent untimeliness of certain of his claims.  Dkt. No. 5.

In accordance with the court's directive, plaintiff filed an amended

complaint on June 26, 2007.  Dkt. No. 7.  Upon review of that pleading

District Judge Kahn issued an order on July 19, 2007 accepting plaintiff's

amended complaint for filing, but dismissed his claims against the majority

of the defendants as time-barred and further directing dismissal of

plaintiff's claims against a newly added defendant, Corrections Sergeant

Corcran, without prejudice to plaintiff's right to file a separate action

against that defendant in the Western District of New York.[5]  As a result,

---

[5]      District Judge Kahn explained that "[s]ince the alleged wrongdoing by
Defendant Corcran occurred in the Western District of New York, and Plaintiff's claims
against Defendant Corcran are very recent, and thus not in jeopardy of being time-
barred at this time, the Court will dismiss Defendant Corcran from the action, without
prejudice to Plaintiff filing his claims against Defendant Corcran in the Western District
of New York."  Dkt. No. 8 at p. 3.

Donald Selsky was left as the sole remaining defendant in the action.

After filing an answer generally denying plaintiff's allegations against him and asserting various affirmative defenses, Dkt. No. 10, on March 5, 2009 defendant Selsky moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, urging dismissal of plaintiff's amended complaint on the ground that plaintiff has failed to allege that he was personally involved in any wrongdoing.[6]  Dkt. No. 47. Plaintiff has since opposed the motion, Dkt. No. 50, prompting submission by the defendant of a reply to plaintiff's response, Dkt. No. 51, and a surreply by the plaintiff.  Dkt. No. 53.  Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Standard of Review

Defendant's motion is brought pursuant to Rule 12(c) of the Federal

---

[6]      At defendant's request the dispositive motion filing deadline in this case has been held in abeyance, and the court has granted defendant's request for leave to file a summary judgment motion in the event that his motion for judgment on the pleadings is denied.  *See* Dkt. No. 48 and Text Entry Dated March 9, 2009.

Rules of Civil Procedure, which governs the entry of judgment on the pleadings.[7]  When analyzing a Rule 12(c) motion, I must apply the same standard as that applicable to a motion under Rule 12(b)(6).  *See, e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion "is not whether [the] plaintiff is likely to prevail ultimately, 'but

---

[7]      Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Rule 12(d) further mandates that:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

whether the claimant is entitled to offer evidence to support the claims.'"
*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d
435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69
F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).
Accordingly, a complaint should be dismissed on a motion brought
pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide
some basis for the allegations that support the elements of his or her
claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 570, 127 S.
Ct. 1955, 1969, 1974 (2007); *see also Patane v. Clark*, 508 F.3d 106, 111-
12 (2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint
must plead 'enough facts to state a claim for relief that is plausible on its
face.'") (quoting *Twombly,* 550 U.S. at 570, 127 S. Ct. at 1974*)*.  "While
*Twombly* does not require heightened fact pleading of specifics, it does
require enough facts to 'nudge [plaintiffs'] claims across the line from
conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50
(2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

        When assessing the sufficiency of a complaint against this
backdrop, particular deference should be afforded to a *pro se* litigant
whose complaint merits a generous construction by the court when
determining whether it states a cognizable cause of action. *See Erickson*

11

*v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle*

*v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)) ("'[A] *pro se*

complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.'") (internal quotations

omitted); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation

omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004)

(Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's

complaint, a court should not dismiss without granting leave to amend at

least once if there is any indication that a valid claim might be stated.

*Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed. R. Civ.

P. 15(a) ("The court should freely give leave [to amend] when justice so

requires.").

B.    Personal Involvement

In his motion defendant Selsky maintains that plaintiff's amended

complaint fails to allege facts showing that he was personally involved in

the alleged due process violation, and does not support a finding of liability

against him.  Defendant Selsky argues that the mere fact that he reviewed

and affirmed the hearing officer's findings, without more, is insufficient to

demonstrate his personal involvement in any alleged due process

violations that may have occurred during the course of the disciplinary

hearing.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who

13

caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

Defendant Selsky's participation in the relevant events, including his review on appeal of the disciplinary hearing and determination, would seem to bring him squarely within the second of the five above-stated potential grounds for establishing personal involvement on the part of a supervisory employee.  Despite this, some courts have found that the mere allegation that Selsky has reviewed and affirmed a hearing officer's disciplinary determination is insufficient to show the requisite personal involvement in the alleged underlying constitutional violation.  *See, e.g., Abdur-Raheem v. Selsky*, 598 F. Supp.2d 367, 370 (W.D.N.Y. 2009) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU.... That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord*, No. 05-CV-47A, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("[t]he fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on

appeal is not enough to establish personal involvement of their part.");[8] *see also Odom v. Calero*, No. 06 Civ. 15527, 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (concluding that a due process violation is complete upon the hearing officer rendering a decision, even when the liberty interest deprivation persists, and therefore is not "ongoing" when an appeal is taken to Donald Selsky).

On the other hand, other courts have found that the act of reviewing and affirming a determination on appeal can provide a sufficient basis to find the necessary personal involvement of a supervisory employee like defendant Selksy. *See, e.g., Baez v. Harris,* No. 9:01-CV-807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (fact that defendant Selsky responds personally to all disciplinary appeals by inmates found sufficient to withstand summary judgment motion based on lack of personal involvement); *Cepeda v. Coughlin*, 785 F. Supp. 385, 391 (S.D.N.Y. 1992) ("The Complaint alleges that '[t]he Commissioner and/or his designee entertained plaintiff[']s appeal and also affirmed.' ... [T]he allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal

_____

   [8]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

participation.  Assuming that this allegation is true, as this court must on a

motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ..., Cepeda has

pleaded personal involvement by Commissioner Coughlin sufficiently to

withstand this motion."); *Johnson v. Coombe*, 156 F. Supp.2d 273, 278

(S.D.N.Y. 2001) (finding that plaintiff's complaint had sufficiently alleged

personal involvement of Superintendent and Commissioner to withstand

motion to dismiss because plaintiff alleged that both defendants had

actual or constructive notice of the defect in the underlying hearing);

*Ciaprazi v. Goord*, No. 9:02-CV-0915, Report-Recommendation, 2005 WL

3531464, at *16 (N.D.N.Y. Mar. 14, 2004) (Peebles, M.J.) (recommending

that Selsky's motion for summary judgment for lack of personal

involvement be denied because Selsky's review of plaintiff's disciplinary

hearing appeal "sufficiently establishes his personal involvement in any

alleged due process violations based upon his being positioned to discern

and remedy the ongoing effects of any such violations."), *adopted,* 2005

WL 3531464, at *1-2 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.).

Those cases concluding that a plaintiff's allegations that defendant

Selsky reviewed and upheld an alleged constitutionally suspect

disciplinary determination are enough to show his personal involvement in

the alleged violation appear to be both better reasoned and more

16

consistent with the Second Circuit's position regarding personal involvement.  *See Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to establish his personal involvement).  While it may be true that the due process violations cited by Rodriguez occurred and were no longer ongoing when his appeal was taken to defendant Selsky, because it appears that the sentence imposed was still being served at the time of his review the liberty interest deprivation alleged to have effectuated without due process was therefore ongoing, and defendant Selsky was in a position to remedy the violation, at least in part, at a time when his intervention would still have been meaningful.[9]

In sum, having reviewed plaintiff's allegations and accepted them as true, I find that plaintiff has alleged sufficient facts to demonstrate a plausible due process claim and the requisite personal  involvement in the violation by defendant Selsky.

_____

[9]      It should be noted that in this case plaintiff goes beyond merely alleging defendant Selsky's failure to rectify a past due process violation.  In his complaint plaintiff also alleges that defendant Selsky participated in or furthered the violation by failing to conduct an appropriate review.  Amended Complaint (Dkt. No. 7) ¶ 21.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint alleges that on his appeal of a disciplinary determination that was infected by procedural due process violations defendant Selsky failed to perform a proper investigation of plaintiff's claims and remedy the unconstitutional conduct that had occurred.  Taken as true, these facts could establish that Selsky was aware of and failed to remedy a constitutional violation.  At this juncture, plaintiff has therefore sufficiently set forth facts demonstrating defendant Selsky's personal involvement in an alleged Fourteenth Amendment violation.  Accordingly, it is hereby respectfully

RECOMMENDED that defendant Selsky's motion for judgment on the pleadings (Dkt. No. 47) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 25, 2010
           Syracuse. NY

19



Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Michael F. RAMSEY, Plaintiff,
v.
Glenn S. GOORD, Donald Selsky, Mr. Ryerson,
Thomas G. Eagen, John H. Nuttall, Michael McGinnis,
Paul Chapius, A. Bartlett, M. Sheahan, J. Irizarry, J.
Hale, J. Cieslak, Sgt. Litwilder, J. Ames, C.O. Clark,
C.O. Held, and P. Klatt, Defendants.
**No. 05-CV-47A.**

Aug. 13, 2005.

Michael F. Ramsey, Clinton Correctional Facility,
Dannemora, NY, pro se.

DECISION and ORDER

SKRETNY, J.

*INTRODUCTION*

**\*1** Plaintiff, an inmate formerly incarcerated at the Elmira
and Southport Correctional Facilities (hereinafter "Elmira"
and "Southport"), has brought this action pursuant to 42
U.S.C. § 1983, and seeks permission to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915. Plaintiff's
complaint sets forth five claims alleging violations of his
constitutional and statutory rights. The first and second
claims set forth in the complaint relate to a July, 2002
administrative hearing that was conducted on disciplinary
charges brought against him during his sojourn at Elmira,
and principally allege a violation of plaintiff's due process
rights. Plaintiff's third and fourth claims allege violations
of his right to practice his religious beliefs by correctional
employees and supervisory personnel at Southport
between February, 2004 and January, 2005. Plaintiff's fifth
claim asserts that prison officials at Southport interfered

with his First and Fourteenth Amendment rights when they
deprived him of paper and other materials necessary to his
prosecution of legal actions that he had previously filed.
Plaintiff seeks declaratory and injunctive relief as well as
compensatory and punitive damages with respect to each
claim.

Plaintiff's application to proceed *in forma pauperis* is
granted. For the reasons set forth below, several of
plaintiff's claims are now dismissed pursuant to 28 U.S.C.
§§ (e)(2)(B) and 1915(A), and service by the U.S. Marshal
is directed with respect to the remaining claims.

*DISCUSSION*

Section 1915(e)(2)(B) of 28 U.S.C. provides that the
Court shall dismiss a case in which *in forma pauperis*
status has been granted if the Court determines that the
action: (I) is frivolous or malicious; (ii) fails to state a
claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief. In addition, 28 U.S.C. § 1915A(a) requires the
Court to conduct an initial screening of "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity," *id.,* regardless of whether or not the
inmate has sought *in forma pauperis* status under 28
U.S.C. § 1915.

In evaluating the complaint, the Court must accept as true
all factual allegations and must draw all inferences in
plaintiff's favor. See *King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957). "This rule applies with particular
force where the plaintiff alleges civil rights violations or
where the complaint is submitted *pro se."Chance v.
Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Based on its
evaluation of the amended complaint, the Court finds that
several of plaintiff's claims must be dismissed pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because
they fail to state a claim upon which relief may be granted.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

*1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)*

*(a) Due Process*

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that

following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Goord administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

**\*3** It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and a § 1983 cannot lie "unless ... the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. *Id.* at 487. The Supreme Court further held in *Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

imposed a loss of six months good time, his complaint is not barred under *Preiser* and *Heck* because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding in New York State Supreme Court.[FN1] *See, e.g.,Odom v. Pataki,* 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y.2001) ("[A]n inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

> FN1. Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection. The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that determination from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[FN2] (Compl. p. 5).

> FN2. The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.[FN3] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S.Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *SeeMiller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) (holding that, while *Sandin* did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

> FN3.*Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id.* at 486, 115 S.Ct. at 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487, 115 S.Ct. at 2302.

**\*4** Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g.,Welch v. Bartlett,* 196 F.3d 389, 393-95 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 8-9;*Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997). Several factors should be considered when assessing whether the particular

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

restrictions imposed on the prisoner are atypical and significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. *Wright,* 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. *Id.* Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a " 'detailed record' of the conditions of confinement relative to ordinary prison conditions." *Id.* at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). The Court in *Palmer* further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." *Id.* (citing *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of *Sandin.* In light of the Second Circuit's directive that the district court must develop a detailed record concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of alypicality," *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y.2004), the Court concludes that the complaint sufficiently alleges that plaintiff was deprived of a liberty interest.

*5 To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654. Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In light of the plaintiff's allegations, noted above, concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[FN4]

> **FN4.** The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his due process rights. A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). Under this requirement, there may be liability if:

(1) the defendant participated directly in the alleged

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. Montero v. Travis, 171 F.3d 757, 761-62 (2d. Cir.1999) (citing Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997)); see Neitzke v. Williams, 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement. Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against defendants Selsky and Goord. Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky responded on Goord's behalf, advising him that his appeal was denied. In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing. Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing. (Compl. pp. 6-7). Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and Goord with respect to plaintiff's due process claims.[FN5]

FN5. While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff. Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

*6 It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement. Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir.1995); see also Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."). Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part. Page v. Breslin, 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y.2004); Foreman v. Goord, 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y.2004). In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal involvement on the part of Goord. See Lunney v. Brureton, 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at *45-46 (S.D.N.Y.2005) (citing Sealy v. Giltner, 116 F.3d 47, 51 (2d cir.1997)) ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

(b) *Malicious Prosecution, First Amendment, Equal Protection*

In addition to his due process arguments, plaintiff's first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996) (citing *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991)). Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983. *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir.2004) (citing *Albright v. Oliver,* 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. *Id.* at 315.

*7 The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, *see Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."), and plaintiff alleges no violation of Fourth Amendment rights. Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free

speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selsky denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl.P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e .g., Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon,* 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon,* 58 F.3d at 872, requiring " 'detailed fact pleading ... to withstand a motion to dismiss.' " *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) (quoting *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981)). To survive a motion to dismiss, such claims must be " 'supported by specific and detailed factual allegations,' " and should not be stated " 'in wholly conclusory terms.' " *Friedl,* 210 F.3d at 85-86 (quoting *Flaherty,* 713 F.2d at 13); *see also Graham,* 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (cited with approval in *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). See *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (on remand, district court must consider the "serious question" of "whether the alleged acts of retaliation ... were more than *de minimis*" in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes,* 239 F.3d at 492.

**\*8** There is nothing in plaintiff's complaint to support his claim that his appeal from July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord beyond: (1) the temporal proximity between his filing of his complaint and the denial of his appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and Selsky in a second letter that he sent to Goord following the denial of his appeal. Plaintiff fails, however, to point to anything said or otherwise communicated to him by Goord or Selsky or by any other prison official or employee that supports his claim that defendants' denial of his appeal was intended to retaliate against him for exercising his First Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly conclusory and therefore that his First Amendment claims (free speech, right to petition) should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and second claims that would support his allegation that defendants Goord and Selsky violated his equal protection rights, and those claims must likewise be dismissed.

*2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)*

Plaintiff's third and fourth claims principally allege that prison officials took actions that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in accordance with the prescribed kosher rules. Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu. (Compl. p. 8). Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates. Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices." He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.[FN6]

> FN6. Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983. Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights. Instead, plaintiff seeks to sue them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002); *Villante v. N.Y. State Dep't of Corr. Servs.,* 96-CV-1484, 2001 U.S. Dist. LEXIS 25208, at \*17 (N.D.N.Y.2001). This point was well-stated in *Joyner v. Greiner,* in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

**\*9** The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.

195 F.Supp.2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. *See, e.g., Breslin,* 2004 U.S. Dist. LEXIS at \*21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); *Foreman,* 2004 U.S. Dist. LEXIS at \*21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29, 2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[FN7] Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

FN7. Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination. Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

**\*10** The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt, Clark, Held, Irizarry, McGinnis, and Sheahan.[FN8]

FN8. While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim *supra* ), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of religious discrimination and denial of due process. As explained by the Court in addressing plaintiff's third claim, *supra,* the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish requisite personal involvement in an alleged denial of a plaintiff's constitutional rights. *See, e.g.,Joyner v. Greiner,* 195 F.Supp. at 506. Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. *SeeSealey,* 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

*3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)*

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected. Plaintiff filed grievances with respect to these alleged interferences with his rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. *Ramsey v. Coughlin,* No. 94-CV-9S( F), 1 F.Supp.2d 198, 204-205 (W.D.N.Y.1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

**11** However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Chapius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. *See, e.g.,Page v. Breslin,* 2004 U.S. Dist. LEXIS at *21-22; *Foreman v. Goord,* 2004 U.S. Dist. LEXIS, at 19-22; *Joyner v. Greiner,* 195 F.Supp.2d at 15.

*CONCLUSION*

In accordance with the foregoing, the Court determines that:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

*ORDER*

IT HEREBY IS ORDERED that plaintiff's claims against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*12** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2005.
Ramsey v. Goord
Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jonathan ODOM, Plaintiff,
v.
Ana E. CALERO, et al., Defendants.
**No. 06 Civ. 15527(LAK)(GWG).**

July 10, 2008.

*REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate
Judge.

**\*1** Jonathan Odom, currently an inmate at the Auburn
Correctional Facility, brings this suit *pro se* under 42
U.S.C. §§ 1983 and 1985 against employees of the New
York State Department of Correctional Services
("DOCS"). After the defendants filed a motion to dismiss,
the undersigned issued a Report and Recommendation
recommending that the motion be granted. Following
objections by plaintiff, the district judge granted the
defendants' motion to dismiss some of the claims but
sustained Odom's objection to dismissing two of the
claims on statute of limitations grounds. Thus, the instant
Report and Recommendation addresses the alternative
grounds raised in the motion to dismiss with respect to the
remaining two claims.

In the remaining causes of action, Odom alleges that, in
retaliation for testifying in 2001 regarding the assault of a
fellow inmate at the Sing Sing Correctional Facility ("Sing
Sing"), Correction Officers W. Perez and Brian McCoy
filed false misbehavior reports against him, and that
Hearing Officer Ana E. Calero violated his right to due
process through her conduct at his disciplinary hearings.
Following the hearings, Odom was sentenced to various
amounts of time in the Special Housing Unit ("SHU") at
Sing Sing. Odom further alleges that Brian Fischer, the

Superintendent of Sing Sing, and Donald Selsky, the
Director of the Special Housing/Inmate Disciplinary
Program, violated his right to due process by affirming the
decisions made at those hearings.

Defendants Perez and McCoy have never been served.
Defendants Calero, Fischer, and Selsky move to dismiss
Odom's claims for failure to state a claim and on qualified
immunity and Eleventh Amendment immunity grounds.
For the reasons stated below, the defendants' motion
should be granted in part and denied in part.

I. *BACKGROUND*

A. *Facts*

On this motion to dismiss, the Court assumes that the facts
alleged in Odom's complaint, amended complaint, and
affirmation in opposition to the motion are true. *See, e.g.,
Burgess v. Goord,* 1999 WL 33458, at *1 n.1 (S.D.N.Y.
Jan. 26, 1999)* (" 'the mandate to read the papers of *pro se*
litigants generously makes it appropriate to consider
plaintiff's additional materials, such as his opposition
memorandum' " (quoting *Gadson v. Goord,* 1997 WL
714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)*)); *accord
Torrico v. IBM Corp.,* 213 F.Supp.2d 390, 400 n.4
(S.D.N.Y.2002). In addition, "[d]ocuments that are
attached to the complaint or incorporated in it by reference
are deemed part of the pleading and may be considered."
*Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007).

Odom's allegations stem from an incident on May 27,
2001, in which he alleges that he witnessed Perez and
"other[ ] prison officials" assault another inmate. *See*
Amended Complaint, filed May 24, 2007 (Docket # 10)
("Am.Compl."), ¶ 12. Odom was issued approximately ten
misbehavior reports both before and after he testified at
the other inmate's disciplinary hearing. *Id.* ¶ 16; *see id.* ¶
¶ 24-25, 43-44. All of the charges against Odom were
dismissed at disciplinary hearings or on appeal before
Selsky, except for the charges considered at disciplinary
hearings held on June 7, 2001 and July 16, 2001. *Id.* ¶ 17.
Those charges resulted in Odom being sentenced to 455

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

days in the SHU. *Id.* ¶ 18. The charges considered at these hearings were ultimately dismissed on June 17, 2005, and December 30, 2005. *Id.* ¶ 17; *see* Exs. A, F to Am. Compl.

**\*2** In his first and second causes of action, Odom alleges violations of his due process rights. *Id.* ¶ 27; *see id.* ¶¶ 38; 56. Two Correction Officers, Perez and McCoy, filed misbehavior reports in retaliation for Odom's testifying about the assault of a fellow inmate in 2001. *See id.* ¶¶ 24-25, 44-45. Fischer caused Odom to be subjected to misbehavior reports and unfair disciplinary hearings, and he also assigned Calero as the hearing officer in order to violate Odom's due process rights. *Id.* ¶¶ 14, 28, 43, 46. Calero undertook "to act as [his] inmate assistant, and then did nothing to help assist [him]," *id.* ¶ 29; *see id.* ¶ 47; asked prison officials leading questions and "then provided most of their answers," *id.* ¶ 30; *see id.* ¶ 48; and "refused to allow [Odom] to call witnesses and precluded [him] from presenting a defense, resulting in him being found guilty with no evidence to support the charges," *id.* ¶ 31; *see id.* ¶ 49; Affirmation in Opposition to Defendants' Motion to Dismiss, filed Sept. 7, 2007 (Docket # 25) ("Pl.Aff."), ¶ 9 (Calero failed "to obtain the testimony of the witnesses requested by the plaintiff during his June 7, 2001 and July 16, 2001 disciplinary hearings." Following one of the hearings, Calero told plaintiff to "mind his business next time." Am. Compl. ¶ 14.

Odom filed appeals with Fischer and Selsky after the disciplinary hearings. *Id.* ¶ 15. While neither Fischer nor Selsky "commit[ted] the due process violations," *id.* ¶ 32, 50, Fischer and Selsky "both became responsible for them[ ] when they ... failed to correct them in the course of their supervisory responsibilities," *id.* ¶ 32; *see id.* ¶ 50. They "refus[ed] to overturn [his] disciplinary conviction and expunge it, despite their knowledge of the ... due process violations." *Id.* ¶ 34; *accord id.* ¶¶ 50-52.

B. *Procedural History*

The original complaint was received by the Pro Se Office on June 27, 2006, and was filed on December 29, 2006. (Docket # 1). After submitting a "Supplemental Complaint" (filed May 4, 2007 (Docket # 7)), Odom filed the Amended Complaint on May 24, 2007, *see* Am. Compl.

Defendants Calero, Fischer, and Selsky filed their motion to dismiss and supporting papers on August 22, 2007. *See* Notice of Motion, filed Aug. 22, 2007 (Docket # 20) ("Def.Not."); Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Aug. 22, 2007 (Docket # 21) ("Def.Mem."); Declaration of Jeb Harben, filed Aug. 22, 2007 (Docket # 22). Odom responded with an affirmation, *see* Pl. Aff., and the defendants filed a reply brief, *see* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Sept. 21, 2007 (Docket # 28) ("Def.Reply").

On February 19, 2008, the undersigned issued a Report and Recommendation recommending that all claims be dismissed. *Odom v. Calero,* 2008 WL 449677 (S.D.N.Y. Feb. 19, 2008). The district judge granted the defendants motion to dismiss claims three, four, five and six in the Amended Complaint, sustained Odom's objection to the dismissal of claims one and two on statute of limitations grounds, and referred the motion back to the undersigned to address the alternative grounds in defendants' motion to dismiss. *See* Order, filed Mar. 25, 2008 (Docket # 40). Odom responded to this order, *see* Affirmation in Reply to Judge Lewis A. Kaplan's March 27, 2008 Court Order, dated April 14, 2008 (Docket # 51), and defendants filed a motion for reconsideration, *see* Motion for Reconsideration, filed Apr. 9, 2008 (Docket # 42), which was denied, *see* Order, filed Apr. 15, 2008 (Docket # 45).

**\*3** Shortly before the denial of the motion for reconsideration, Odom submitted a motion for summary judgment. *See* Notice of Motion for Summary Judgment, dated April 14, 2008 (Docket # 48) ("S.J.Motion"); Plaintiff's Affirmation in Opposition to Defendants' Motion for Reconsideration and in Support of the Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 49); Brief in Support of Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 50); Statement of Undisputed Facts, dated April 14, 2008 (Docket # 52). As discussed below, the summary judgment motion should be denied for procedural reasons. Nonetheless, we have considered Odom's submissions in support of the summary judgment motion to the extent they are relevant to his opposition to the defendants' motion to dismiss.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

In addition to arguing for dismissal on statute of limitations grounds, Calero, Fischer, and Selsky moved to dismiss the complaint for failure to state a claim or "insufficient pleadings," qualified immunity, failure to allege a conspiracy, and Eleventh Amendment immunity. Def. Mem. at 5-17.

II. *DISCUSSION*

A. *Law Governing a Motion to Dismiss for Failure to State a Claim*

Under Fed.R.Civ.P. 8(a)(2), a pleading is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (some internal quotation marks and citation omitted). On a motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n.1 (2002).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and brackets omitted); *see also id.* at 1966 (pleading must "possess enough heft to show that the pleader is entitled to relief") (internal quotation marks, citation, and brackets omitted). Thus, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007).

For purposes of deciding a motion to dismiss, "[a]

document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks and citations omitted); *accord Boykin v. KeyCorp,* 521 F.3d 202, 213-14 (2d Cir.2008).

**\*4** Calero, Fischer, and Selsky argue that Odom has failed to "allege sufficient specific facts to support the stated causes of action," Def. Mem. at 7, by which they apparently mean to argue that he has failed to state a claim under Fed.R.Civ.P. 12(b)(6), *see* Def. Mem. at 4-5, 7 (citing *Bell Atl. Corp.*), 9-11; Def. Not. We now consider whether Odom's Amended Complaint states a claim against any of these defendants.

B. *Section 1983* Claims

To assert a claim under 42 U.S.C. § 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution or federal law by a defendant acting under the color of state law. 42 U.S.C. § 1983; *see West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights, but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999) (citations omitted), namely in the Constitution or federal statutes. Here it is undisputed that the defendants were acting under color of law. The only question is whether plaintiff has shown that they committed a violation of plaintiff's federal rights. In this case, the only violations that the complaint may be fairly read to assert are violations of the Due Process clause of the Fourteenth Amendment.

A party asserting a due process claim " 'must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)), *cert. denied,* 543 U.S. 1187 (2005). Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Hanrahan v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

Doling, 331 F.3d 93, 97 (2d Cir.2003) (per curiam)
(quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).
"Factors relevant to determining whether the plaintiff
endured an 'atypical and significant hardship' include 'the
extent to which the conditions of the disciplinary
segregation differ from other routine prison conditions'
and 'the duration of the disciplinary segregation imposed
compared to discretionary confinement.' " Palmer v.
Richards, 364 F.3d 60, 64 (2d Cir.2004) (quoting Wright
v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998)).

"Segregation of longer than 305 days in standard SHU
conditions is sufficiently atypical to require procedural
due process protection under Sandin." Iqbal v. Hasty, 490
F.3d 143, 161 (2d Cir.2007). Odom alleges that he was
sentenced to 455 days in the SHU as a result of the
disciplinary hearings on June 7, 2001 and July 16, 2001,
Am. Compl. ¶ 18, and defendants do not contest that
Odom's confinement implicates a liberty interest. Thus, for
the purposes of this motion we assume that Odom's
sentence of confinement in the SHU implicates a liberty
interest.

*5 We next address each defendant's arguments regarding
whether Odom was deprived of his liberty through
insufficient process.

1. Calero

As previously noted, Odom alleges that Calero violated
his due process rights by the manner in which she
conducted disciplinary hearings with respect to
misbehavior reports on June 7, 2001 and July 16, 2001.
See Am. Compl. ¶¶ 4, 17, 27-31, 46-49. Specifically, he
alleges that "Calero ... violated the plaintiff's due process
rights by failing (without rational explanation) to obtain
the testimony of the witnesses requested by the plaintiff
during his June 7, 2001 and July 16, 2001 disciplinary
hearings." Pl. Aff. ¶ 9; see Am. Compl. ¶ 31 (Calero
"refused to allow plaintiff to call witnesses and precluded
the plaintiff from presenting a defense"); accord id. ¶ 49.
Odom asserts that in one of the hearings he requested that
Calero call "several inmates as witnesses" for him and
"provided their cell locations," Declaration in Support of
Plaintiff's Motion for Summary Judgment, dated Apr. 14,
2008 (attached to S.J. Motion), ¶ 3, but that she refused to

call them on the ground that "staff reports gave a 'full
picture' of the incident," id. ¶ 4. "The evidence at the
hearing consisted solely of the written report of defendant
Perez, inmate Hurt's and my neighbor W16 cell and my
testimony" [sic]. Id. ¶ 5.

In addition, Odom alleges that he was not afforded "the
right to a fair and impartial hearing officer" in his
disciplinary hearings. Am. Compl. ¶ 27; accord id. ¶ 48.
Specifically, he alleges that Calero asked prison officials
leading questions and provided "most of their answers."
Id. ¶ 30; accord id. ¶ 48.

According to the Second Circuit:

The due process protections afforded a prison inmate do
not equate to "the full panoply of rights" due to a
defendant in a criminal prosecution. Wolff v.
McDonnell, 418 U.S. at 556, 94 S.Ct. 2963. Notably,
there is no right to counsel or to confrontation at prison
disciplinary hearings. See id. at 567-70, 94 S.Ct. 2963.
Nevertheless, an inmate is entitled to advance written
notice of the charges against him; a hearing affording
him a reasonable opportunity to call witnesses and
present documentary evidence; a fair and impartial
hearing officer; and a written statement of the
disposition, including the evidence relied upon and the
reasons for the disciplinary actions taken. See id. at
563-67, 94 S.Ct. 2963; accord Luna v. Pico, 356 F.3d at
487; Kalwasinski v. Morse, 201 F.3d at 108.

Sira v. Morton, 380 F.3d 57, 69 (2d Cir.2004).

Construing the complaint in the manner most favorable to
plaintiff, Odom's allegations that he was not given a
reasonable opportunity to call witnesses and that Calero
"provided answers" to questions asked at the hearings are
sufficient to state a claim for violation of his due process
rights. The defendants' argue that the allegations are infirm
because Odom does not give sufficient factual details such
as the names of witnesses that he would have called or the
evidence he would have presented. Def. Mem. at 7. At this
stage of the litigation, however, when only a "short and
plain statement" of a claim is required by Fed.R.Civ.P.
8(a)(2), and where the plaintiff is proceeding pro se, such

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

factual detail is not required in the complaint.

**\*6** The defendants also argue that Odom has failed to state a claim because there was some evidence on which Calero could have reasonably relied in making her decisions at the disciplinary hearings. Def. Mem. at 10; Def. Reply at 4. Certainly, a hearing decision will be upheld if there is "any evidence" in the record to support it. *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (emphasis omitted). But this argument fails for two reasons. First, it requires the Court to look outside the record on a motion to dismiss. Second, it does not address the question of whether Calero committed a due process violation. By asking the Court to judge the decision based on the record that Calero allowed to be created, the defendants ignore the allegations that Odom was not given a reasonable opportunity to call witnesses in order to create a proper record in the first place.

2. *Fischer and Selsky*

The defendants argue that Odom has failed to allege the personal involvement of Fischer and Selsky in any constitutional violation. Def. Mem. at 9. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks and citation omitted). In addition, personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior. See, e.g., Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) ( "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior* " ), *cert. denied,* 543 U.S. 1093 (2005); *accord Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). According to the Second Circuit,

The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on

information that constitutional rights were being violated.

*Iqbal,* 490 F.3d at 152-53 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

Odom's central allegation is that Fischer and Selsky violated his rights by not overturning Calero's decisions when he appealed the disciplinary hearing decisions to them. Odom argues that Fischer and Selsky "both became responsible" for the due process violations committed at the hearings "when they ... failed to correct [the violations] in the course of their supervisory responsibilities." Am. Compl. ¶¶ 32, 50. He alleges that they "refus[ed] to overturn [his] disciplinary conviction and expunge it, despite their knowledge of the ... due process violations." *Id.* ¶ 34; *accord id.* ¶¶ 50-52. While the source of that knowledge is not identified, the context of allegations make clear that it could only have been derived from their review of Odom's assertions as part of the appeal process itself. Indeed, in another submission, Odom asserts that he "identified the due process violations in his discretionary appeal and direct appeal letters," and that as a result "Fischer and Selsky both knew just what to look for." Pl. Aff. ¶ 12.

**\*7** These allegations are insufficient to show personal involvement in the due process violation alleged to have been committed by Calero. Odom concedes that neither Fischer nor Selsky "commit[ted] the due process violations" themselves. Am. Compl. ¶¶ 32, 50. Rather, Calero is alleged to have committed the alleged due process violation. Once the hearing was over and her decision was issued, the due process violation was completed. The only opportunity that Fischer or Selsky had to rectify this violation was through the appeal process itself.

The only method outlined by the Second Circuit by which personal involvement may be shown potentially relevant here is that Fischer and Selsky, "after being informed of the violation through [the appeals], failed to remedy the wrong." *Colon,* 58 F.3d at 873. This method does not apply here, however, because-as has been noted in a related context-"affirming the administrative denial of a prison inmate's grievance by a high-level official is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca,* 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citing, *inter alia, Foreman v. Goord,* 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement.")). As was noted in *Thompson v. New York,* 2001 WL 636432 (S.D.N.Y. Mar. 15, 2001), "[w]ere it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Id.* at *7 (internal citations omitted). The reference in case law to an official who "fails to remedy" a violation logically applies only to ongoing, and therefore correctable, constitutional violations-not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded. As was held in *Harnett v. Barr,* 538 F.Supp.2d 511 (N.D.N.Y.2008), "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Id.* at 524; *accord Thompson,* 2001 WL 636432, at *7 ("The Second Circuit's reference to the failure by a supervisor to remedy a known wrong seems to have a different focus. As worded, it appears to address cases involving continuing unconstitutional prison conditions that the warden may be proven or assumed to know about, and a refusal by the warden to correct those conditions."). In this case, any constitutional violation allegedly committed by Calero was concluded by the time Fischer and Selsky were called upon to review it. Accordingly, they were not "personally involved" in committing the alleged due process violations.[FN1]

FN1. Odom has made other allegations against Fischer that are too vague and conclusory to state a claim for a due process violation, such as the assertion that Fischer "subjected" Odom to four of the misbehavior reports after Odom testified at the other inmate's disciplinary hearing. Am. Compl. ¶ 43. Another assertion-that Fischer intentionally assigned Calero as the hearing officer at both hearings in order to violate Odom's due process rights, *id.* ¶¶ 14, 28, 46-is insufficient to show personal involvement inasmuch as it was Calero's responsibility to act

as an impartial hearing officer. To fault Fischer, as a supervisory official, for giving her this assignment is tantamount to arguing that he failed in his supervisory responsibilities. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

C. *Qualified Immunity*

**\*8** The defendants assert that they are entitled to qualified immunity. Def. Mem. at 11. The doctrine of qualified immunity precludes civil liability where prison officials performing discretionary functions " 'did not violate clearly established rights or if it would have been objectively reasonable for the official[s] to believe [their] conduct did not violate plaintiff's rights.' " *Reuland v. Hynes,* 460 F.3d 409, 419 (2d Cir.2006) (quoting *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003)), *cert. denied,*128 S.Ct. 119 (2007); *accord Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (qualified immunity ensures that defendants have "fair notice" that their conduct is unlawful before being exposed to liability, and "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' " (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987))). A qualified immunity defense may be asserted as part of a motion under Fed.R.Civ.P. 12(b)(6) if it is based on facts appearing on the face of the complaint, though defendants asserting the defense at this stage face a "formidable hurdle." *McKenna v. Wright,* 386 F.3d 432, 434-35 (2d Cir.2004).

With respect to Calero, the defendants' brief makes no argument that the rights of a prisoner to due process at a disciplinary hearing under the standard set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not clearly established at the time of Odom's hearings. *See* Def. Mem. at 11-12. Instead, they seem to argue that Calero's actions were objectively reasonable. *Id.* But their only support for this argument is material outside the record, *see id.* at 11, and their claim that the decision on the disciplinary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

hearings must have been justified by the evidence presented at the hearing. As noted previously, however, the issue is whether the complaint alleges that Calero committed a due process violation-not whether the decision was justified by record.

"In analyzing whether the defense of qualified immunity may be successfully invoked on a motion to dismiss, the court need look no further than the complaint's allegations regarding the specific procedural protections allegedly denied the plaintiff. If the entitlement to those protections was 'clearly established' at the time of the administrative hearing ... then the defense is unavailable." *Wright v. Dee,* 54 F.Supp.2d 199, 207 (S.D.N.Y.1999). Calero does not contest that it was clearly established at the time of Odom's hearings that he was entitled to call witnesses on his behalf, *see, e.g., Sira,* 380 F.3d at 69, and that he was entitled to an impartial hearing officer, *see, e.g., Allen v. Cuomo,* 100 F.3d 253, 259 (1996). Odom alleges that these procedural protections were denied him. Thus, Calero has not shown that the complaint establishes that she is entitled to qualified immunity for Odom's due process claims.[FN2]

> FN2. While it is clear in the Amended Complaint that Odom is alleging that Perez and McCoy filed the misbehavior reports in retaliation for Odom's testifying at another inmate's disciplinary hearing, Am. Compl. ¶¶ 24-25, 44-45, no retaliation claim has been asserted against Calero. To the extent the complaint could be construed as making such a claim against Calero, it would have to be dismissed because it is not clearly established in this Circuit that a prisoner has a constitutional right to testify in a disciplinary hearing of another inmate. *See Pettus v. McGinnis,* 533 F.Supp.2d 337, 340 (W.D.N.Y.2008) ("This Court has found no authority ... that even today clearly establishes within this circuit whether an inmate's testimony on behalf of another inmate at the other inmate's disciplinary hearing is constitutionally protected.") (dismissing claim of retaliation) (emphasis omitted).

D. *Claims Under 42 U.S.C. § 1985*

*9 Odom also purports to assert conspiracy claims under 42 U.S.C. § 1985. *See* Am. Compl. at 1. "To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." *Porter v. Selsky,* 287 F.Supp.2d 180, 187 (W.D.N.Y.2003) (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)), *aff'd on other grounds,* 421 F.3d 141 (2d Cir.2005). There are no explicit allegations of conspiracy in the Amended Complaint, however. When this issue was raised by defendants in their motion, Odom's response, *see* Pl. Aff. ¶ 46, pointed to scattered allegations in the Amended Complaint that particular defendants "acted alone and/or in conjunction with another named defendant." *See, e.g.,* Am. Compl. ¶¶ 28, 31, 32, 46, 50. Nothing in Odom's allegations, however, shows that the elements of a section 1985 claim, quoted above, have been met.

E. *Eleventh Amendment*

The defendants argue that "[i]f claims are being made against defendants in their positions of authority within DOCS, those claims are essentially claims against DOCS or the State of New York and are barred." Def. Mem. at 17. Odom does not address this argument.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the language of the Eleventh Amendment is not literally applicable to suits brought by citizens of the state being sued, the Supreme Court has long held that it bars such suits as well. *See, e.g., Employees of Dep't of Pub. Health and Welfare v. Dep't of Pub. Health and Welfare,* 411 U .S. 279, 280 (1973). Thus, "[i]t is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (citations omitted). The Supreme Court has also explicitly held that 42 U.S.C. § 1983 is not a statute that abrogates the States' sovereign

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

immunity. *See* Quern v. Jordan, 440 U.S. 332, 340-45 (1979).

The bar imposed by the Eleventh Amendment "remains in effect when State officials are sued for damages in their official capacity ." Kentucky v. Graham, 473 U.S. 159, 169 (1985). Thus, the Eleventh Amendment bars suits against individual employees of the State who are named as defendants in their official capacities. *See, e.g.,* Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003); Eng v. Coughlin, 858 F.2d 889, 894 (2d Cir.1988). Accordingly, to the extent that Odom intends to state claims for money damages against Calero or any other defendant in their official capacities, such claims must be dismissed.

E. *Odom's April 14, 2008 Motion for Summary Judgment*

**\*10** Odom recently filed a motion for summary judgment (Docket # 48). This motion should be denied for two reasons. First, its statement of material facts (Docket # 52) violates Local Civil Rule 56.1(d) inasmuch as none of the statements are "followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Second, discovery has not yet begun in this case. Thus, a motion for summary judgment is premature and would merely result in a denial pursuant to Fed.R.Civ.P. 56(f). Odom previously filed a motion for summary judgment and it was denied for precisely this reason. *See* Order, filed Nov. 30, 2007 (Docket # 36) (available at: Odom v. Calero, 2007 WL 4191752 (S.D.N.Y. Nov. 28, 2007)).

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the first and second causes of action (Docket # 20) should be granted in part and denied in part, with the only claim to proceed being the due process claim against Calero. Odom's motion for summary judgment (Docket # 48) should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See* Thomas v. Arn, 474 U.S. 140 (1985).

S.D.N.Y.,2008.
Odom v. Calero
Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Candido BAEZ, Plaintiff,
v.
J. HARRIS, Deputy Superintendent, Shawangunk
Correctional Facility; Donald Selsky, Director Special
Housing Unit Program; and Quartarone, Nurse,
Shawangunk Correctional Facility, Defendants.
**No. 9:01-CV-807.**

Feb. 7, 2007.

Candido Baez, Ossining, NY, Plaintiff Pro Se.

Andrew M. Cuomo, Attorney General for the State of New
York, Maria Moran, Esq., Assistant Attorney General,
Syracuse, NY, Attorney for Defendants.

**MEMORANDUM-DECISION AND ORDER**

NORMAN A. MORDUE, Chief U.S. District Judge.

**INTRODUCTION**

**\*1** Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services, brought this
action under 42 U.S.C. § 1983. The amended complaint
(Dkt. No. 49) claims that defendants violated his
constitutional rights under the Eighth and Fourteenth
Amendments.

Defendants' motion for summary judgment (Dkt. No. 75)
was referred to United States Magistrate Judge David R.

Homer for a report and recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c). Magistrate
Judge Homer's Report and Recommendation (Dkt. No. 81)
recommends that defendants' motion be granted in part
and denied in part.

Plaintiff has submitted an objection (Dkt. No. 82) to the
Report and Recommendation. Pursuant to 28 U.S.C. §
636(b)(1)(C), this Court conducts a *de novo* review of
those parts of a magistrate judge's report and
recommendation to which a party specifically objects.
Where only general objections are filed, the Court reviews
for clear error. *See Brown v. Peters,* 1997 WL
599355,*2-*3 (N.D .N.Y.), *af'd without op.,*175 F.3d 1007
(2d Cir.1999). Failure to object to any portion of a report
and recommendation waives further judicial review of the
matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89
(2d Cir.1993).

**DISCUSSION**

Plaintiff objects to Magistrate Judge Homer's Report and
Recommendation insofar as it recommends: (1) that all
claims against Selsky be dismissed; and (2) that all Eighth
Amendment claims be dismissed.

**(1) Claims against Selsky**

Plaintiff asserts Eighth and Fourteenth Amendment claims
against Selsky. Plaintiff objects to Magistrate Judge
Homer's recommendation that they be dismissed.

The Court first addresses plaintiff's Eighth Amendment
claims against Selsky. Plaintiff's amended complaint may
be read to assert a claim against Selsky based on the
allegedly premature removal of plaintiff's bandages after
hernia surgery. In a Memorandum-Decision and Order
entered on September 29, 2003 (Dkt. No. 29) the Court
adopted Magistrate Judge Homer's recommendation (Dkt.
No. 27) to dismiss without prejudice plaintiff's claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

based on premature removal of the bandages because plaintiff had failed to exhaust this claim. Plaintiff then filed a grievance raising this issue. The grievance was rejected as untimely, and that rejection was affirmed on administrative appeal. Accordingly, the claim remains unexhausted. Plaintiff objects to dismissal of this claim, arguing that he attempted to exhaust it. The fact that plaintiff was foreclosed from exhausting the claim due to the passage of time does not, without more, excuse him from the administrative exhaustion requirement. *See Williams v. Comstock,* 425 F.3d 175, 176 (2d Cir .2005); *Baez v. Kahanowicz,* 2007 WL 102871, *7 (S.D.N.Y.). Thus, the Court agrees with Magistrate Judge Homer that plaintiff's Eighth Amendment claim based on removal of his bandages must be dismissed for failure to exhaust his administrative remedies. Further, the Court agrees with Magistrate Judge Homer that, in any event, the claim lacks merit. Accordingly, to the extent that plaintiff asserts an Eighth Amendment claim against Selsky based on this allegation, it is dismissed.

**\*2** Plaintiff also appears to assert an Eighth Amendment claim against Selsky stemming from plaintiff's allegedly premature removal from the hospital and subjection to a lengthy bus trip when he needed immediate medical attention. However, there is no basis to find that Selsky was personally involved in these events. To the extent that plaintiff asserts an Eighth Amendment claim against Selsky based on this allegation, it is dismissed.

To the extent that plaintiff bases an Eighth Amendment claim on the conditions he experienced in SHU, this Court agrees with Magistrate Judge Homer that as a matter of law plaintiff's allegations fail to state such a claim. *See generally Branch v. Goord,* 2006 WL 2807168, *5 (S.D.N.Y.). Thus, all Eighth Amendment claims against Selsky are dismissed.

With respect to plaintiff's Fourteenth Amendment claims against Selsky, plaintiff's objections state: "Defendant Selsky could have release[d] plaintiff sooner from SHU, but instead waited until I submitted a C.P.L.R. Article 78 [petition] to change his decision and release me. Defendant Selsky was put on notice sooner with my administration *[sic]* appeal to release me from SHU but chose not to." Essentially, plaintiff asserts Fourteenth

Amendment liability against Selsky stemming from the disciplinary hearing conducted by defendant Harris and Selsky's handling of plaintiff's appeal from Harris' determination. [FN1]

> **FN1.** In his objection, plaintiff also states: "My father addressed a letter to Mr. Selsky documenting the violations of my rights. Therefore, [Selsky] is personally involve[d] because he was aware of the violation and never release[d] me from SHU[.]" The receipt of a letter does not, however, constitute sufficient personal involvement to generate supervisory liability. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Garvin v. Goord,* 212 F .Supp.2d 123, 126 (S.D.N.Y.2002).

Selsky's affidavit in support of summary judgment states that he is the Director of the Special Housing/Inmate Disciplinary Program, and that he personally responds, as the Commissioner's authorized designee, to all Tier III appeals taken by inmates. Under the circumstances of this case, the record is sufficient to withstand summary judgment on the issue of personal involvement. *See, e.g., Gilbert v. Selsky,* 867 F.Supp. 159, 166 (S.D.N.Y.1994) ("If a supervisory official learns of a violation through a report or an appeal, but fails to remedy the wrong, that may constitute a sufficient basis for liability."). Likewise, defendants are not entitled to dismissal of plaintiff's claim against Selsky based on plaintiff's confinement in SHU for one year. *See generally Sandin v. Connor,* 515 U.S. 472, 483-84 (1995).

**(2) Claims against Quartarone**

Plaintiff objects to Magistrate Judge Homer's recommendation that the Court dismiss plaintiff's Eighth Amendment claim against defendant Quartarone. Insofar as this claim is based on Quartarone's allegedly premature removal of plaintiff's bandages after his hernia repair surgery, it is unexhausted as discussed above.

Plaintiff's other Eighth Amendment claims, based on his allegedly premature removal from the hospital and bus

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

transfer, do not allege any involvement on the part of Quartarone. The sole named defendant allegedly involved in these events is Forte; however, all claims against him have been dismissed (Dkt. No. 79). Accordingly, all claims against Quartarone are dismissed.

## CONCLUSION

**\*3** It is therefore

ORDERED the Court accepts and adopts the Report and Recommendation (Dkt. No. 81) of United States Magistrate Judge David R. Homer, except insofar as it recommends dismissal of the Fourteenth Amendment claims as against Selsky; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No. 75) is granted in part and denied in part; and it is further

ORDERED that dismissal of all claims against defendant Quartarone is granted; and it is further

ORDERED that dismissal of plaintiff's Eighth Amendment claims against defendant Donald Selsky is granted; and it is further

ORDERED that dismissal of plaintiff's Fourteenth Amendment claims against Donald Selsky is denied; and it is further

ORDERED that dismissal of plaintiff's claims against J. Harris is denied.

IT IS SO ORDERED.

## REPORT-RECOMMENDATION AND ORDER[FN1]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN1.] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).
DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Candido Baez ("Baez"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants,[FN2] three DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. (Docket No. 49) at ¶¶ 50-53. Presently pending are defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Docket No. 75. Baez opposes the motion. Docket No. 76. For the reasons which follow, it is recommended that defendants' motion be granted in part and denied in part.

[FN2.] Harris, Selsky, and Quartarone. Defs. Mem. of Law (Docket No. 75) at 2. The remaining defendant, Doctor Forte, was dismissed following his death in 2004. Docket No. 79.

## I. Background

The facts are set forth in the light most favorable to Baez as the non-movant. See Section II(A) infra.

### A. Disciplinary Hearing

At all relevant times, Baez was incarcerated at Shawangunk Correctional Facility ("Shawangunk"). Am. Compl. at ¶ 1. On November 8, 1999, while in the A yard, Baez swung a five-pound weight and hit inmate Garbez on the left side of his head. Moran Aff. (Docket No. 75), Ex. A at 1. Another inmate, Valdez, began to fight with Baez and both ignored orders from corrections officer Riopelle to stop. Id. A response team was able to separate Valdez and Baez, removed them from the yard, and brought both inmates to the infirmary. Id. Baez was issued a misbehavior report for assault on an inmate, fighting, refusing a direct order, and having a weapon. Id. On the

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

same day, corrections officers searched Baez's cell and confiscated a bottle of expired medication, a broken ruler, and a hard plastic plate. *Id.* at 2. Baez received another misbehavior report for possessing unauthorized medication, contraband, property in unauthorized area, and an altered item. *Id.*

On November 10, 1999, the commencement of Baez's Tier III disciplinary hearing [FN3] was adjourned to November 16, 1999 because the hearing officer, Deputy Superintendent of Programs J. Harris, was unavailable. Docket No. 24, Ex. C; Hrg. Tr. at 1. Baez's assistant for the hearing, Boyham,[FN4] first met with Baez on November 10, 1999 and completed his assistance on November 12, 1999. Hrg. Tr. at 2. On November 16, 1999, Baez's disciplinary hearing commenced. Hrg. Tr. at 1. On November 23, 1999, Harris found Baez guilty of assault, fighting, possessing a weapon, refusing a direct order, and having an altered item and found him not guilty of unauthorized medication, having property in an unauthorized area, and possessing contraband. Moran Aff., Ex. A at 3-4. Baez was sentenced to twenty-four months in the Special Housing Unit ("SHU"),[FN5] loss of packages, commissary, and telephone privileges, and the recommended loss of twenty-four months of good time credit. *Id.* Additionally, Baez lost his inmate grade-pay and program assignment. Compl. (Docket No. 1) at ¶ 17.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendents' hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2006).

> FN4. Boyham, an original defendant in this matter, was dismissed from the case on a motion for summary judgment on September 29, 2003. Docket No. 29.

> FN5. SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y.

Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2006). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

**\*4** Baez appealed Harris's determination. Docket No. 24, Ex. H. On March 21, 2000, Baez filed a petition pursuant to N.Y. C.P.L.R. Art. 78.[FN6] Moran Aff., Ex. C. The defendants received three extensions of time to answer Baez's petition. Am. Compl. at ¶ 10. On May 17, 2000, Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, modified Baez's punishment from twenty-four months to twelve months. Moran Aff., Ex. B at 1-2. On October 26, 2000, Baez's petition was transferred from Ulster County Supreme Court to the Appellate Division, Third Department. Moran Aff., Ex. C at 3. On March 12, 2001, Selsky administratively reversed the disciplinary determination because the hearing officer considered medical evidence not on the record. Moran Aff., Ex. B at 4. On June 14, 2001, Baez's Article 78 petition was denied as moot. Moran Aff., Ex. C at 3-4.

> FN6. N.Y. C.P.L.R. Art. 78 (McKinney 1994 & Supp.2006 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

### B. Medical Treatment

On December 14, 1999, Baez had hernia repair surgery at Albany Medical Center. Am. Compl. at ¶ 33. Baez was to remain on bed rest in the hospital for three days. *Id.* On December 16, 1999, Baez was discharged from the hospital. *Id.* Baez was instructed to keep the dressing dry and intact for two days and then remove the outer dressing and resume showering. Davidson Decl. (Docket No. 75), Ex. 1. Baez was not allowed to engage in lifting, strenuous work, straining or reaching for six weeks and was allowed to return to work or school. *Id.* A follow-up examination at the prison clinic was also required. *Id.* Quartarone removed Baez's bandages and padding from the incision area against doctor's orders. Am. Compl. at ¶ 33.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

On the day of Baez's discharge, he was ordered to board a bus for transfer to Downstate Correctional Facility. *Id.* Baez was taken on a bus trip which included stops at Shawangunk and Wallkill Correctional Facility where Baez began to vomit and experience severe pain. Am. Compl. at ¶ 34. Baez's requests to be taken to the infirmary were ignored. *Id.* This action followed.

### C. Procedural History

Baez commenced this action by filing a complaint on May 25, 2001. *See* Compl. Defendants filed a motion for summary judgment on December 13, 2002. Docket Nos. 21-23. As a result of that motion, several claims and defendants were dismissed. Docket No. 27. That decision was modified on November 18, 2004 and required Baez to file an amended complaint within thirty days of the order. Docket No. 47. Baez complied and filed his amended complaint on December 17, 2004. Docket No. 49. This motion for summary judgment of the remaining defendants followed. Docket No. 75.

### II. Discussion

Baez asserts three causes of action in his amended complaint. The first alleges that defendant Selsky failed to correct behavior that violated Baez's Eighth and Fourteenth Amendment rights. The second alleges that defendants Harris and Selsky deprived him of his due process rights in connection with a prison disciplinary hearing. The third alleges that defendant Quartarone was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[FN7] Am. Compl. at ¶¶ 50-53. Defendants seek judgment on all claims.

> FN7. Any claims against Dr. Forte have been dismissed and are not being considered on this motion. *See* note 2 *supra.*

### A. Standard

**\*5** A motion for summary judgment may be granted if

there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223-24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the nonmovant special solicitude.[FN8] *Id.; Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 2006 WL 3499975, at *5 (2d Cir. Dec. 5, 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247-48.

> FN8. Baez has, however, filed at least seven other actions in the federal courts of New York since 1990. *U.S. Party/Case Index* (visited Jan. 8, 2007) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

### B. Eighth Amendment

### 1. Defendant Quartarone

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

In his third cause of action, Baez contends that "less than forty (40) hours after the [hernia] surgery, defendant Quartarone ... removed the bandages and padding from the incision area of [his] operation," thereby acting with deliberate indifference to his medical needs. Am. Compl. at ¶ 33. Defendants contend that Baez has failed to exhaust his administrative remedies on this claim and, in the alternative, the claim is without merit.

### a. Failure to Exhaust

Defendants contend that Baez has not exhausted his administrative remedies with regard to the claim that his Eighth Amendment rights were violated by defendant Quartarone. This assertion is based on the fact that Baez did not raise the issue of his surgery dressings being removed prematurely in his Grievance No. UST-2681-00. Defs. Mem. of Law at 10; *see also* Moran Aff., Ex. E.

Issues that have previously been determined become the law of the case. *In re Lynch,* 430 F.3d 600, 604 (2d Cir.2005) (citing *Quern v. Jordan,* 440 U.S. 332, 348 n. 18 (1979)). A district court may reconsider its own decision if the law has since changed, new evidence becomes available, to correct an error, or if a "manifest injustice would otherwise ensue." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber,* 407 F.3d 34, 44 (2d Cir.2005).

*6 Here, this Court has already decided that Baez did not exhaust his claim regarding removal of the bandages because he never filed a grievance regarding it. Docket No. 27. The Report-Recommendation and Order containing that finding was adopted in full by the district court on September 29, 2003. Docket No. 29. In response to this Court's decisions, Baez filed a grievance on October 3, 2003 where he raised the issue of the early bandage removal. Am. Compl., Ex. A. That grievance was rejected as untimely in the absence of any reason provided for the delay. *Id.* Baez appealed the decision to reject his late grievance, but that decision was affirmed. *Id.* Although Baez attempted to remedy his failure to exhaust, filing an untimely grievance does not amount to an exhaustion of remedies. *Williams v. Comstock,* 425 F.3d 175, 176 (2d Cir.2005). Further, since this Court finds no reason to reconsider its previous decisions, Baez has not exhausted his claim for removal of the bandages.

### b. Medical Treatment

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844 (1994).

A serious medical need is " 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (quoting *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. *Chance,* 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. *Id.* at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate. *Id.* at 703. Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

recklessness. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

**\*7** Even assuming that hernia repair surgery is a serious medical need, Baez failed to raise a question of material fact with regard to the alleged deliberate indifference of Quartarone in removing his bandages. The bandages were removed on the second post-operative day, which was within the instructed time period recommended by Baez's surgeon. Davidson Decl. at ¶¶ 3-4. Therefore, it is recommended in the alternative that defendants' motion for summary judgment on this ground be granted.

**2. Defendant Selsky**

Baez alleges that Selsky "contributed to and proximately caused the ... violation of [his] Eighth and Fourteenth Amendment Rights." Am. Compl. at ¶ 50. Summary judgment in favor of all defendants, including Selsky, with regard to Baez's Eighth Amendment claim resulting from his disciplinary hearing has already been granted. Docket No. 27 at 16. As such, Baez's claim against Selsky for a violation of his Fourteenth Amendment due process rights in connection with his prison disciplinary hearing is dismissed. Baez's claim against Selsky for his alleged involvement in Baez's Eighth Amendment claims relative to his medical care remain at issue.

**a. Personal Involvement**

Defendants contend that Baez cannot demonstrate the personal involvement of Selsky in any Eighth Amendment violation.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). The doctrine of respondeat superior is not a substitute for personal involvement. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Black v.*

*Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) (citations omitted).

In his amended complaint, Baez's only allegation as to the personal involvement of Selsky is that he and his father wrote Selsky a letter documenting the violations of Baez's rights. Am. Compl. at ¶ 42. However, "receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability." *Petty v. Goord,* No. Civ. 00-803(MBM), 2002 WL 31458240, at \*8 (S.D.N.Y. Nov. 4, 2002). Further, there is no evidence that Selsky participated here in the alleged violations or created a policy which allowed constitutional violations to continue.

Therefore, it is recommended that defendants' motion for summary judgment as to Selsky be granted on this ground.

**C. Fourteenth Amendment**

**\*8** Defendants Harris and Selsky contend that Baez's due process claim should be dismissed and that qualified immunity bars Baez's claim.

**1. Liberty Interest**

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See *Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir.2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *Frazier v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

*Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

Here, this Court has already decided that Baez has raised a question of fact as to whether twelve months spent in SHU establishes a protected liberty interest. Docket Nos. 27, 29, & 47; *see also Colon v. Howard,* 215 F.3d 227 (2d Cir.2000) (holding that 305 days spent in normal SHU conditions was sufficient to raise a question of significant hardship). Defendants' motion on this ground should, therefore, be denied.

**2. Process Provided**

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing officer. *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-64 (1974)). Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process. *Massachusetts Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985); *Gaston v. Coughlin,* 249 F.3d 156, 162 (2d Cir.2001).

Again, this Court has already determined that there is a question of fact as to the fourth prong of Wolff. Docket No. 27 at 12;.*see also In re Lynch,* 430 F.3d at 604 (quoting *Quern,* 440 U.S. at 348 n. 18)). As such, it is recommended that defendants' motion for summary judgment on this ground be denied.

**C. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229-30 (N.D.N.Y .2002) (McAvoy, J.), *aff'd,*80 Fed.Appx. 146 (2d Cir. Nov. 10,

2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the issue of defendants entitlement to qualified immunity has already been decided in Baez's favor. Docket Nos. 27, 29, & 47.

**\*9** Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied.

**III. Conclusion**

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 75)

1. **GRANTED** as to Quartarone and Selsky in all respects; and

2. **DENIED** as to Harris as to the due process claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2007.
Baez v. Harris
Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

C  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Roberto CIAPRAZI, Plaintiff,
v.
Glenn S. GOORD; et al. Defendants.
No. Civ.9:02CV00915(GLS/.

Dec. 22, 2005.

Roberto Ciaprazi, Clinton Correctional Facility,
Dannemora, New York, Plaintiff pro se.

Hon. Eliot Spitzer, Attorney General, State of New York,
The Capitol, Albany, New York, for the Defendants.

Patrick F. MacRae, Assistant Attorney General, of
counsel.

MEMORANDUM-DECISION AND ORDER

SHARPE, J.

I. Introduction

*1 Plaintiff pro se Roberto Ciaprazi brings this action
pursuant to 42 U.S.C. § 1983. Ciaprazi alleges that the
defendants violated his First, Eighth, and Fourteenth
Amendment rights. Pending are Ciaprazi's objections to
Magistrate Judge David E. Peebles'
Report-Recommendation. Upon careful consideration of
the arguments, the relevant parts of the record, and the
applicable law, the court adopts the
Report-Recommendation in its entirety. [FN1]

FN1. The Clerk is hereby directed to attach the

Report-Recommendation to constitute a
complete record of the court's decision in this
matter.

II. Procedural History

Ciaprazi commenced this action on July 15, 2002. Dkt.
No. 1. On February 27, 2003, the defendants moved for
summary judgment. Dkt. No. 39. On March 14, 2004,
Judge Peebles issued a Report-Recommendation which
recommended that the defendants' motion for summary
judgment be granted in part, and denied in part. Dkt. No.
47. Ciaprazi objected. Dkt. No. 48. His objections are now
before this court.

III. Discussion [FN2]

FN2. The court adopts the factual summary in
Magistrate Judge Peebles'
Report-Recommendation and assumes familiarity
with the facts alleged in Ciaprazi's Complaint.
Dkt. Nos. 47,1.

A. Standard of Review

When objections to a magistrate judge's
Report-Recommendation are lodged, the Court makes a
"de novo determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." See 28 U.S.C. § 636(b)(1). After such
a review, the court may "accept, reject, or modify, in
whole or in part, the findings or the recommendations
made by the magistrate judge." Id. Having reviewed the
unobjected to portions of the Report-Recommendation, the
court adopts them in their entirety because they are not
clearly erroneous.

B. Report-Recommendation

Although Judge Peebles examined the merits of the case

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

and found that many of Ciaprazi's claims were meritless, this court only conducts *de novo* review of the objected to portions of the Report-Recommendation. Specifically, Judge Peebles found no evidence tending to establish that the adverse actions taken against Ciaprazi were motivated by disciplinary animus, and thereby recommended dismissing Ciaprazi's First Amendment retaliation claim. *Report and Recommendation, pp. 13-23, 45, Dkt. No. 47.* He further found that Ciaprazi lacked standing to bring a cause of action challenging the Tier III disciplinary system under the Eighth Amendment. *Id. at 27.* Lastly, Judge Peebles dismissed both of Ciaprazi's claims under international law and his personal involvement claim against defendant Goord. *Id. at 41, 43-4.*[FN3]

> **FN3.** Ciaprazi also makes several procedural objections. For instance, he asserts that defendants' motion is procedurally defective since none of the moving papers are signed, as required by FRCP 11. Second, Ciaprazi objects to the defendants' alteration of the case caption. Third, Ciaprazi objects to the defendants' use of a name that did not appear in the original complaint. These arguments are without merit and this court adopts Judge Peebles articulated reasons for their denial. *See Report Recommendation p. 10-11 n. 5, Dkt. No. 47.*

C. *Objections*

1. *First Amendment Claim*

First, Ciaprazi contends that his retaliation claim under the First Amendment should not have been dismissed because the defendants did not satisfy their initial evidentiary burden. *Pl. Objs. pp. 1-7, Dkt. No. 48.* Specifically, he argues that Judge Peebles did not properly consider the falsity of a misbehavior report as evidence of retaliation by the defendants.

The court rejects Ciaprazi's argument because as Judge Peebles noted, a prisoner does not have a right to be free from false misbehavior reports. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). As Judge Peebles further noted, the defendants have shown sufficient evidence to

establish that there is no specific link between Ciaprazi's grievances and the defendants' actions. Accordingly, Ciaprazi's retaliation claim is dismissed.

2. *Eighth Amendment*

**\*2** Next, Ciaprazi objects to Judge Peebles' finding that he did not have standing to challenge the disciplinary authority of the Tier III system. *Pl. Objs. p. 7, Dkt. No. 48.* This objection is without merit. As Judge Peebles noted, since the length of Ciaprazi's disciplinary confinement was within the bounds of constitutionally acceptable levels, he has no standing to sue. Second, as Judge Peebles further noted, any generalized complaints Ciaprazi has against the Tier III system are more appropriately addressed as part of his due process claims. Accordingly, Ciaprazi's claims against the Tier III system are dismissed.

3. *Human Rights Claims*

Ciaprazi also objects to Judge Peebles' finding that he did not have claims under the Universal Declaration of Human Rights (UDHR) and the International Covenant on Civil and Political Rights (ICCPR). Ciaprazi's contention is without merit. As Judge Peebles noted, Ciaprazi has failed to establish that these treaties provide private causes of action. *See Report Recommendation p. 41, Dkt. No. 47.* Accordingly, Ciaprazi's claims under international law are dismissed.

4. *Personal Involvement*

Ciaprazi also objects to Judge Peebles' dismissal of his personal involvement claim against defendant Goord. As Judge Peebles noted, Ciaprazi merely made allegations against Goord in his supervisory capacity. Accordingly, the personal involvement claim against Goord was properly dismissed.

IV. *Conclusion*

Having reviewed the objected-to portions of the Report

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

and Recommendation *de novo,* the remainder under a clearly erroneous standard, and Ciaprazi's objections, this court accepts and adopts the recommendation of Judge Peebles for the reasons stated in the March 14, 2004 Report-Recommendation.

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that defendants' summary judgment motion (Dkt. No. 39) be GRANTED in part, and that all of plaintiff's claims against defendant Goord, and all of plaintiff's claims against the remaining defendants except his procedural due process and Eighth Amendment conditions of confinement causes of action, be DISMISSED, but that to the extent of those claims, with respect to which triable issues of fact exist, the defendants' motion be DENIED.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION

PEEBLES, Magistrate J.

Plaintiff Roberto Ciaprazi, a New York State prison inmate who by his own account has frequently lodged complaints against prison officials and been openly critical of their practices, has commenced this proceeding against the Commissioner of the New York State Department of Correctional Services ("DOCS") and several of that agency's employees pursuant to 42 U.S.C. § 1983, complaining of constitutional violations occurring during the course of his confinement. In his complaint, Ciaprazi alleges that 1) a misbehavior report was filed against him in retaliation for his having previously engaged in protected activity; 2) he was deprived of procedural due process during the course of the hearing and resulting adverse finding associated with that misbehavior report; and 3) the conditions which he faced while in disciplinary confinement, following that hearing, were cruel and unusual. Plaintiff asserts claims pursuant to the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as under certain international human rights accords.

**\*3** Currently pending before the court is a motion by the defendants seeking summary judgment dismissing plaintiff's complaint in its entirety. Having carefully reviewed the record in light of Ciaprazi's claims and defendants' arguments, I find that many of plaintiff's causes of action are devoid of merit, as a matter of law, and thus subject to dismissal. Because I find the existence of genuinely disputed issues of material fact surrounding certain of plaintiff's claims, however, including notably his due process claim against defendants Melino, Kohl, Graham, Fitzpatrick, and Rogers, I recommend denial of defendants' motion seeking dismissal of plaintiff's claims against them.

I. *BACKGROUND*

At the times relevant to his complaint, Ciaprazi was a prisoner entrusted to the custody of the DOCS. Plaintiff alleges that after having been confined within the Clinton Correctional Facility since February, 1997, he was transferred into the Coxsackie Correctional Facility in April of 1998. Complaint (Dkt. No. 1) ¶ 3. Ciaprazi asserts that while at Coxsackie he was administered more than a dozen allegedly false misbehavior reports, resulting in disciplinary cell confinement of over 200 days as well as other "deprivations" of an unspecified nature. *Id.* ¶ 3. Plaintiff contends that the issuance of those misbehavior reports was motivated by his having filed multiple complaints involving conduct of corrections workers and staff at Coxsackie.

At the heart of plaintiff's claims in this action is an incident which occurred at Coxsackie on July 31, 1999. On that date, Ciaprazi and various other prisoners were taken to an enclosed holding area to provide specimens for use in conducting drug screening urinalysis testing. As a result of an interaction occurring during the course of that testing between the plaintiff and defendant Fitzpatrick, a corrections lieutenant at the facility, plaintiff was placed in keeplock confinement and issued a misbehavior report on the following day, charging him with creating a disturbance (Rule 104.13), interference with a prison employee (Rule 107.10), harassment (Rule 107.11), refusal to obey a direct order (Rule 106.10), and making threats (Rule 102.10). [FN1] Defendants' Motion (Dkt. No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

39) Exh. A.

> FN1. Keeplock confinement is defined by regulation to include restriction to one's prison room or cell. *See, e.g.,* 7 N.Y.C.R.R. 251-2.2.

On July 31, 1999, following the underlying events and the imposition of keeplock confinement but prior to receiving the misbehavior report, plaintiff filed a grievance regarding the incident; plaintiff followed the filing of that grievance with a request on August 3, 1999 for prehearing release from confinement. Complaint (Dkt. No. 1) ¶ 19. Plaintiff received no response to that grievance. *Id.*

A Tier III disciplinary hearing in connection with the charges stemming from the July 31, 1999 incident was conducted by defendant Melino, a corrections counselor at Coxsackie, beginning on August 4, 1999, and concluding on August 10, 1999. Defendants' Motion (Dkt. No. 39) Exh. A at 2; *id.* Exh. B at 17, 152.[FN2] Defendant Cole, who according to the plaintiff is a civilian employee working at Coxsackie, was assigned as plaintiff's inmate assistant in connection with that hearing. The evidence adduced at that hearing included the misbehavior report, as well as testimony from the plaintiff, Corrections Lieutenant Fitzpatrick, Corrections Officer Marshal, Corrections Counselor Cole, Corrections Officer Rogers, Corrections Officer Simonik, Corrections Lieutenant McDermott, and Corrections Officer Phillips. Defendants' Motion (Dkt. No. 39) Exh. B.

> FN2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

**\*4** At the conclusion of the hearing, plaintiff was found guilty on all five counts, and a penalty of ten months of disciplinary confinement within the Coxsackie Special Housing Unit ("SHU"), with a corresponding loss of commissary, telephone and package privileges, was imposed.[FN3] Defendants' Motion (Dkt. No. 39) Exh. A at 00. Ciaprazi was not present when Hearing Officer Melino read her decision into the record, having previously been removed from the proceeding for engaging in what the hearing officer regarded as disruptive behavior. *See* Defendants' Motion (Dkt. No. 39) Exh. B at 152. Plaintiff appealed the hearing officer's decision to Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, who on September 27, 1999 affirmed the determination. Complaint (Dkt. No. 1) ¶ 51.

> FN3. Of those sanctions, five months were suspended and deferred for a to tal of one hundred eighty days. Defendants' Motion (Dkt. No. 39) Exh. A at 00. The record is unclear regarding the amount of disciplinary confinement actually served by the plaintiff as a result of the hearing determination.

On August 20, 1999, plaintiff was transferred into the Upstate Correctional Facility, where he was apparently placed in SHU confinement to serve his disciplinary sentence. Complaint (Dkt. No. 1) ¶ 52. Plaintiff asserts that during that period, as well as while in keeplock confinement at Coxsackie, he was subjected to significant deprivations, which are described in summary fashion in his complaint, until September 16, 1999 when he was transferred into Clinton and exposed to similarly unpleasant conditions. *Id.* ¶¶ 53-55; Ciaprazi Aff. (Dkt. No. 46) ¶¶ 54-57. Plaintiff describes the keeplock confinement conditions at Coxsackie as even more unpleasant than those experienced in SHU, having included the deprivation of certain personal items such as food and snacks, toiletries, musical instruments, and other similar amenities. Ciaprazi Aff. (Dkt. No. 46) ¶ 54. The deprivations experienced by the plaintiff while in keeplock confinement at Coxsackie also entailed being subjected to "loud and non-stop noise from other frustrated prisoners yelling and banging on the doors," as well as the denial of access to the law library, books and other reading materials, and various programs available to those in general population. *Id.* ¶ 55. While at Upstate, plaintiff contends that he was exposed to cell lighting between 6:00

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

am and 1:00 am; he was denied reading materials; his medical requests "were ignored"; and he experienced cold conditions and the inability to participate in available recreation due to the lack of warm clothing. *Id.* ¶ 57; Complaint (Dkt. No. 1) ¶ 53. Similar conditions were experienced by the plaintiff while at Clinton, including exposure to cold and lack of warm clothing and blankets, together with the deprivation of medical and mental health services. Ciaprazi Aff. (Dkt. No. 46) ¶ 57; Complaint (Dkt. No. 1) ¶ 54..

## II. *PROCEDURAL HISTORY*

The plaintiff, who is proceeding *pro se* and *in forma pauperis,* commenced this action on July 15, 2002. Dkt No. 1. Named as defendants in plaintiff's complaint are New York DOCS Commissioner Glenn S. Goord; Ellen J. Croche, Chair of the New York State Commission of Correction; Fred Lamey, a member of the New York Commission of Correction; Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program; Corrections Counselor Melino, whose first name is unknown; Cole, another DOCS employee whose complete name is unknown to the plaintiff; H.D. Graham, Deputy Superintendent for Security at Coxsackie; Corrections Lieutenant Fitzpatrick; and Corrections Officer Rogers. *Id.* In his complaint, plaintiff asserts nine separate causes of action, including claims 1) against defendants Rogers and Fitzpatrick, for infringement of his First Amendment right to free speech, and due process and equal protection violations under the United States Constitution, as well as under the Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights ("ICCPR"); 2) against defendant Graham, for failure to investigate plaintiff's grievance and to take actions to prevent infringement of his constitutional rights; 3) against defendant Cole, for failing to properly perform his duties as Ciaprazi's inmate assistant; 4) against defendant Melino, for deprivation of due process, based upon her conduct and bias during the disciplinary hearing; 5) of retaliation against defendant Melino, asserting that her actions were taken in response to the filing of complaints and grievances by the plaintiff; 6) against defendants Goord and Selsky, based upon their failure to overturn plaintiff's disciplinary conviction and remediate the constitutional deprivations suffered by him; 7) against defendants Goord and Selsky for retaliation, based on plaintiff's prior filing of complaints and grievances; 8)

against defendants Croche, Lamey and Goord, in their supervisory capacities, for failure to properly oversee DOCS employees and enact policies to prevent such abuses; and 9) against defendants Goord, Croche and Lamey, for maintaining and fostering a policy of widespread and disportionate disciplinary punishments within the state's prison system. Complaint (Dkt. No. 1) at 14-16. Plaintiff's complaint seeks both injunctive and monetary relief. *Id.*

**\*5** Following the filing of an answer on behalf of the eight defendants who have been served in the action on December 3, 2002, generally denying plaintiff's allegations and setting forth various affirmative defenses, Dkt. No. 13, and pretrial discovery, on February 27, 2004 those defendants moved seeking entry of summary judgment on various bases.[FN4] Dkt. No. 39. Aided only by plaintiff's complaint, the record related to the relevant internal disciplinary proceedings against the plaintiffs, and answers by plaintiff to defendants' interrogatories, and without the benefit of either a transcript of plaintiff's deposition or any affidavits, other than from their counsel, defendants have moved for summary judgment seeking dismissal of plaintiff's claims on various grounds. *Id.* In their motion, defendants argue that 1) plaintiff has failed to offer proof from which a reasonable factfinder could conclude that cognizable constitutional violations have occurred; 2) defendants Goord and Selsky lack the requisite personal involvement in the constitutional violations alleged; and 3) plaintiff should be denied the injunctive relief which he seeks. *Id.* Plaintiff has since submitted papers in opposition to defendants' summary judgment motion.[FN5] Dkt. No. 46. Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

FN4. There is no indication on the docket sheet that defendant Fitzpatrick has been served in the action. While plaintiff requested and obtained the entry of that defendant's default on June 20, 2003, *see* Dkt. Nos. 20, 21, his default was subsequently vacated by order issued by District Judge David N. Hurd on January 13, 2004, based upon plaintiff's failure to prove that defendant Fitzpatrick had in fact been served. *See* Dkt. No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

35.

FN5. In his papers in opposition to defendants' summary judgment motion, plaintiff has raised several procedural objections to defendants' motion papers. In addressing those objections I am mindful of the preference that matters before the court, whenever possible, be decided on their merits rather than on the basis of technical procedural shortcomings. *See, e.g., Upper Hudson Planned Parenthood, Inc. v. Doe, 836 F.Supp. 939, 943 n. 9 (N.D.N.Y.1993)* (McCurn, S.J.). In any event, plaintiff's procedural objections are not well-founded.

In his opposition papers, plaintiff asserts that defendants' motion is procedurally defective since none of the moving papers are signed, as required under Rule 11 of the Federal Rules of Civil Procedure. *See* Plaintiff's Memorandum (Dkt. No. 46) at 1. While not bearing signatures in the traditional sense, all of defendants' original moving papers, which were filed electronically with the court in accordance with this court's case management and electronic case filing requirements (*see* Northern District of New York Local Rule 5.1.2 and General Order No. 22), were properly signed.

Plaintiff also complains of alterations by the defendants to the caption of the case as set forth in his complaint. Specifically, Ciaprazi challenges defendants' addition of the word "unknown" in relation to defendants Melino and Cole, who are identified in plaintiff's complaint only by last names. Since it is well established that the caption of a pleading is not substantive in nature, and therefore does not control, the addition of that word does not provide a basis to reject defendants' motion papers. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1321 (3d ed. 2004) ("Although helpful to the district court ... the caption is not determinative as to the identity of the parties to the action"); *see also Prisco v. State of New York, 804 F.Supp. 518, 521 (S.D.N.Y.1992)* (citing an earlier edition of Wright & Miller).

As plaintiff notes, defendants' Local Rule 7.1(a)(3) statement of uncontested, material facts, submitted along with the various other papers in support of their motion, indicates that it is submitted on behalf of a defendant Landry, even though there is no person by that name identified as a defendant in plaintiff's complaint. Because this is an obvious typographical error, and the contents of the statement obviously relate to the facts of this case, I decline plaintiff's invitation to reject and treat the statement as a nullity on this basis. *See* Dkt. No. 39.

I note that Ciaprazi, who appears to be well versed in the applicable requirements of the federal and local rules, himself has overlooked the important requirement that legal memoranda submitted in connection with motions to not exceed twenty-five pages in length. Northern District of New York Local Rule 7.1(a)(1). Plaintiff's memorandum, which is thirty-four pages in length, has been accepted by the court, without objection by the defendants, despite his failure to obtain prior permission to file an oversized brief. Plaintiff is admonished that in the future, just as he seeks to hold defendants to the requirements of the governing rules, he too must conform to those requirements.

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Anderson v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

*Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4;*Security Insurance,* 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. [FN6]Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553;*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. When deciding a summary judgment motion, the court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [nonmovant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

> FN6. A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

B. *Plaintiff's First Amendment Retaliation Claim*

*6 Plaintiff's complaint asserts several claims of unlawful retaliation. In his first cause of action, plaintiff asserts that the actions of defendants Rogers and Fitzpatrick in confining him to a cell and issuing, or directing the issuance of, misbehavior reports were taken in retaliation for his having filed prior grievances and complaints regarding DOCS officials, including those working at Coxsackie. Complaint (Dkt. No. 1) First Cause of Action. Plaintiff's second claim alleges that defendant Rogers' failure to investigate plaintiff's complaint regarding the allegedly false misbehavior report, and to order his release from confinement pending a disciplinary hearing, were similarly retaliatory. *Id.* Second Cause of Action. Plaintiff further alleges in his fifth cause of action that the actions of Hearing Officer Melino, including in finding him guilty on all five counts, were motivated by Ciaprazi's filing of prior grievances and complaints. *Id.* Fifth Cause of Action. Plaintiff's seventh claim similarly attributes the failure of defendants Goord and Selsky to reverse the hearing officer's determination, on appeal, to retaliation for his having engaged in protected activity. *Id.* Seventh Cause of Action. Defendants maintain that these retaliation claims are legally deficient, and that the record contains no evidence upon which a factfinder could conclude that unlawful retaliation occurred.

Claims of retaliation like those asserted by the plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *See id.* at 81-83. Because of the relative ease with which claims of retaliation can be incanted, however, as exemplified by plaintiff's claims in this action, the courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

[t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992 (2002).

In order to state a *prima facie* claim under section 1983 for unlawful retaliation in a case such as this, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct or speech at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492). If the plaintiff carries this burden, the defendants must then show, by a preponderance of the evidence, that they would have taken action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

*7 As can be seen, evaluation of claims of retaliation is a particularly fact-laden exercise, since such claims revolve around both the engaging in protected conduct and establishment of a nexus between that conduct and the adverse action ultimately taken. In making the required analysis in this case, however, the court is somewhat disadvantaged by virtue of the fact that defendants' summary judgment motion is not particularly enlightening as to the basis for their claim that the court is positioned to find, as a matter of law, that plaintiff's retaliation claims are lacking in merit.

In their motion the defendants, in the context of the now-familiar standard governing analysis of First Amendment retaliation claims, acknowledge that the

plaintiff, who has lodged formal complaints of prison conditions and treatment of inmates, has engaged in protected activity. That plaintiff has filed an unusually large number of grievances and lawsuits, and taken other steps to complain publicly about matters associated with his confinement by the DOCS, is both apparent from the record before the court, and not controverted by the defendants. Indeed, in his response to defendants' summary judgment motion, plaintiff proudly states that he has "systematically exposed, vehemently criticized, and even ridiculed the inappropriate and arbitrary policies and actions of the staff at Coxsackie, including the actions of defendant Goord and of the Superintendent and Deputy Superintendents of Coxsackie." [FN7] Plaintiff's Affidavit (Dkt. No. 46) ¶ 32. Plaintiff has therefore established, at least for purposes of the instant motion, that he was engaged in protected activity sufficient to trigger First Amendment rights against acts taken in retribution for having voiced those types of complaints. *Graham,* 89 F.3d at 80;*Morello v. James,* 810 F.2d 344, 346-47 (2d Cir.1987).

> FN7. Plaintiff has referred to his efforts in this regard as a "blitz of grievances and complaints[.]" Plaintiff's Aff. (Dkt. No. 46) ¶ 52.

Defendants argue, however, that the record is lacking in evidence to establish the requisite connection between that protected activity and the adverse actions taken against Ciaprazi by prison officials. Defendants' legal position is advanced, in part, in an affidavit from their counsel, Patrick F. MacRae, Esq., outlining the evidence relied upon by the defendants in making their motions.[FN8] Defendants also note, in further support of their motion, the requirement that retaliation claims rest upon more than mere conclusory allegations regarding the state of mind of prison officials. *See* Dkt. No. 39 at 8-9; *e.g., Flaherty,* 713 F.2d at 13.

> FN8. The attorney's affirmation in and of itself is, of course, of no evidentiary value in determining the motion for summary judgment since none of the facts upon which such a finding would ostensibly be based are within his personal knowledge. *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011-12 (2d Cir.1986).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

As plaintiff correctly notes, the applicable pleading requirements, including Rule 8 of the Federal Rules of Civil Procedure, provide for mere "notice" pleading, and do not require that complaints contain every detail associated with a plaintiff's claims except in categories not applicable to this case. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-69, 113 S.Ct. 1160, 1162-63 (1993).* Accordingly, the mere fact that the plaintiff's retaliation claims are pleaded in non-specific, conclusory terms does not alone entitle defendants to summary dismissal of those claims.

**\*8** In this case the defendants have satisfied their initial, modest threshold burden of establishing the lack of evidentiary support for plaintiff's retaliation claims. Though conventional wisdom might dictate the submission of affidavits from the primary actors, including notably defendants Rogers and Fitzpatrick, disavowing any retaliatory motives associated with their actions, defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's retaliation claims, including through plaintiff's responses to defendants' interrogatories as well as the proceedings associated with the underlying disciplinary matter, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims. *Celotex, 477 U.S. at 323-34, 106 S.Ct. at 2553;see also Anderson, 477 U.S. at 249, 106 S.Ct. at 2511.* There is no requirement under Rule 56 of the Federal Rules of Civil Procedure or otherwise that a party affidavit be submitted to support such a motion, which instead can be based upon any admissible evidence. *Id.*

To demonstrate that a reasonable factfinder could discern a nexus between plaintiff's filing of grievances and the disciplinary matters associated with the incident at issue, Ciaprazi essentially makes two arguments. First, he contends that the manifest falsity of the misbehavior report as well as testimony proffered during the disciplinary hearing give rise to an inference that the disciplinary matters were motivated toward retaliatory animus. Secondly, plaintiff argues that the sheer number of grievances and formal complaints lodged by him, including some close in temporal proximity to the underlying incident, similarly gives rise to a legitimate inference of retaliatory motivation. *See* Ciaprazi

Memorandum (Dkt. No. 46) at 14.

Plaintiff's argument in this regard is significantly diluted by the sheer number of complaints lodged by him over time. By his own admission, plaintiff has regularly and openly complained of prison policies and practices and during the relevant time period prior to the July 31, 1999 incident, and indeed had filed many formal complaints regarding his treatment while at Coxsackie. Yet, plaintiff has submitted no evidence that any of those complaints related to defendants Rogers or Fitzpatrick, the two principal actors in this case, nor has he pointed to any collaboration between those named in his prior complaints and Fitzpatrick and Rogers. At best, plaintiff has argued that prior to July 31, 1999 he "filed complaints and/or grievances against Lieutenants Sweeney, Armstrong, Skrocky and McDermott, all colleagues of defendant Fitzpatrick of the same rang [sic] with defendant Fitzpatrick." *Id.* ¶ 32.

In an equally tenuous attempt to link his protected activity with the issuance of a misbehavior report, plaintiff notes that on May 26, 1999 he filed a grievance for harassment against an employee named Fitzpatrick, who was assigned to assist him in connection with another Tier III disciplinary hearing, stating his naked belief, lacking in evidentiary support, that the employee named in that complaint "may be and apparently is a relative of defendant Fitzpatrick." *Id.* ¶ 33, Exh. 39. Plaintiff also notes that on July 21, 1999 he filed a grievance accusing defendant Goord of "gross abuse of power", requesting an investigation of defendant Goord by the New York State Police and federal authorities, and that five days later, on July 26, 1999, he filed a complaint with various agencies including the United States Department of Prisons complaining of mistreatment. *Id.* ¶¶ 34, 35.

**\*9** While there is some appeal to finding the requisite fact issue to avoid the entry of summary judgment on plaintiff's retaliation claims based upon the timing of these events, that factor is undermined by the steady stream of grievances filed by him on a regular and continuing basis. Were the plaintiff someone who had rarely if ever complained about prison conditions, but shortly before being issued a misbehavior report had lodged a formal complaint against or implicating the conduct of the officer who issued the disciplinary citation, a very different set of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

circumstances would be presented, and summary judgment would not be warranted. In this case, however, plaintiff can point to no complaints lodged by him against or implicating the conduct of defendant Fitzpatrick, who issued the disputed misbehavior report. Accordingly, I find that the defendants have established that they are entitled to summary dismissal of plaintiff's retaliation claims based upon plaintiff's failure to establish a basis on which a reasonable factfinder could find the requisite connection between plaintiff's grievance activities and the issuance of the misbehavior report and subsequent disciplinary hearing.[FN9] *E.g., Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 389 (W.D.N.Y.1998).

FN9. Prior to the Second Circuit's recent decision in *Gill,* defendants perhaps could have effectively argued that defendants' actions were not likely to deter, and in fact have not chilled, plaintiff's exercise of his First Amendment rights, and therefore do not give rise to a retaliation claim. *E.g., Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002); *Curley v. Village of Suffern,* 268 F.3d 65, 72-73 (2d Cir.2001); *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). In its recent decision in *Gill,* however, the Second Circuit clarified that such a finding does not end the inquiry, since the critical focus is not upon the subjective element, but is instead objective, examining whether the retaliatory conduct alleged "would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030 (2d Cir. Feb. 10, 2003)).

C. *Plaintiff's Eighth Amendment Cruel And Unusual Punishment Claim*

In his complaint Ciaprazi, in somewhat indiscriminate fashion, asserts that the actions taken against him by the various defendants resulted in his exposure to cruel and unusual punishment, in violation of the Eighth Amendment.[FN10] Plaintiff's cruel and unusual punishment claims appear to center upon the conditions which he faced as a result of the disciplinary proceedings against him and resulting in SHU confinement initially at

Coxsackie, and later at Upstate and at Clinton. In their motion, defendants assert that these claims are similarly deficient as a matter of law.

FN10. That amendment provides, in pertinent part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). The Eighth Amendment does not mandate comfortable prisons, but yet it does not tolerate inhumane ones either; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J .) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978;*Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

**\*10** Plaintiff's cruel and unusual punishment claim challenges the fact that 1) he was placed in a double bunk cell at Upstate; 2) was placed in isolation and exposed to light except for five hours each night; 3) was deprived of such amenities such as writing paper and envelopes, proper access to the law library, medical care, access to newspapers, magazines and books, access to the courts, and legal papers; 4) was exposed to loud and boisterous behavior on the part of other inmates; 5) was denied essential clothing and bedding as well as personal hygiene materials, radios or headphones, books, newspapers and magazines; and 6) was exposed to cold conditions, leading him to suffer at least one case of the flu. Complaint (Dkt. No. 1) ¶¶ 52-56; *see also* Plaintiff's Affidavit (Dkt. No. 46) ¶¶ 53-57. To counter these allegations, defendants have submitted nothing to reflect the lack of a basis upon which a reasonable factfinder could conclude that plaintiff was exposed to cruel and unusual punishment while in disciplinary isolation as a result of the Tier III determination now at issue. Instead, defendants' motion focuses upon a narrow aspect of plaintiff's Eighth Amendment claim, in which they assert that the lack of policies guaranteed to result in uniformity throughout the DOCS system of punishments to result in a Eighth Amendment violation.

As skeptical as perhaps one may be regarding plaintiff's ability to ultimately persuade a factfinder that the admittedly unpleasant conditions to which he was apparently exposed and the deprivations suffered while in disciplinary confinement rise to a constitutionally significant level, I am unable to state, based upon the record as currently constituted, that no reasonable factfinder could so conclude. I therefore recommend denial of defendants' motion to dismiss plaintiff's Eighth Amendment cruel and unusual punishment claim relating to the conditions of his confinement.[FN11]

FN11. In their motion, defendants have not argued lack of personal involvement with regard to their Eighth Amendment claims. It therefore remains to be seen whether plaintiff can establish the defendants' participation in the Eighth Amendment violations alleged.

Included within his Eighth Amendment claim, though more appropriately grouped with his due process cause of action, is plaintiff's contention that because the Tier III hearing officer was provided the unfettered discretion, in the event of finding of guilt, to impose a penalty of whatever magnitude seen fit, the disciplinary scheme in place at the DOCS is constitutionally infirm. In plaintiff's case, however, the imposed penalty of ten months of disciplinary confinement, 180 days of which were deferred, fell comfortably within the bounds of acceptable levels under the Eighth Amendment. Consequently, whatever may be said about plaintiff's arguments regarding the discretion affording to hearing officers, he lacks standing to raise such a claim. *See Trammell v. Mantello,* No. 90-CV-382, 1996 WL 863518, at \*8-\*9 (W.D.N.Y. June 10, 1996) (Tier III regulations pass constitutional muster).

D. *Plaintiff's Procedural Due Process Claim*

In their motion, defendants also challenge plaintiff's contention that he was denied procedural due process during the course of the disciplinary hearing which resulted in his disciplinary confinement for a period of five months. In support of their motion, defendants argue both that plaintiff was not deprived of a constitutionally cognizable liberty interest, and that even assuming he was, he was afforded the requisite process due under the Fourteenth Amendment in connection with that deprivation.

**\*11** To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658;*Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996).

1. *Liberty Interest*

Addressing the first of these required showings, in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84, 115 S.Ct. at 2300;*Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

Defendants challenge the applicability of both of these factors. Initially, defendants question whether New York has, by statute or otherwise, created a protected liberty interest in prisoners remaining free from segregation, including for disciplinary reasons, arguing that it has not. Defendants' Memorandum (Dkt. No. 39) at 14. The cases cited in support of that proposition, however, which relate to whether there is a constitutional or liberty interest in being assigned to a particular program, job assignment, or facility, are inapposite. *See, e.g., Klos v. Haskell,* 48 F.3d 81, 87-88 (2d Cir.1995) (involving revocation of assignment to "shock incarceration" program); *Hall v. Unknown Named Agents of N.Y. State Dept. for Corr. Servs. for APPU Unit at Clinton Prison,* 825 F.2d 642, 645-46 (2d Cir.1987) (involving assignment to Assessment Program and Preparation Unit); *see also Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547 (1976) (no constitutional right of inmate to be placed in any particular facility); *Frazer v. Coughlin,* 81 F.3d 313, 318 (2d Cir.1996) ("no protected liberty interest in a particular job assignment"). Despite defendants' assertion to the contrary, it is now firmly established that through its regulatory scheme, New York State has created a liberty interest in prisoners remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004) (citing *Welch v. Bartlett,* 196 F.3d 389, 394 n. 4 (2d Cir.1999); *see also LaBounty v. Coombe,* No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N .Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.).

Having rejected defendants' contention that the State has not created such an interest, I next turn to examination of whether the conditions of plaintiff's disciplinary confinement, as alleged by him, rise to the level of an atypical and significant hardship under *Sandin.* Atypicality in a *Sandin* inquiry normally presents a question of law.[FN12]*Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). When determining whether a plaintiff possesses a cognizable liberty interest, district courts must examine

the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey,* 197 F.3d at 586;*Arce v. Walker,* 139 F.3d 329, 335-36 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 48-49 (2d Cir.1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[FN13]*Hynes,* 143 F.3d at 658;*Arce,* 139 F.3d at 336.

> FN12. In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v.. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

> FN13. While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin.* *Colon,* 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see id.* at 232 n .5), the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not. *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure). In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

**12** Given that plaintiff has shown that he was subjected to disciplinary confinement for a period of five months, and has alleged his exposure to conditions beyond those normally associated with such SHU confinement, as described in the applicable regulations, at this juncture I am unable to conclude, as a matter of law, that he was not deprived of a constitutionally significant liberty interest as a result of the disciplinary proceeding at issue. I therefore

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

recommend against summary dismissal of plaintiff's due process claims on this basis.

2. *Due Process*

The procedural protections to which a prison inmate is entitled before being deprived of a recognized liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell, 418 U.S. 539, 564-67, 94 S.Ct. 2963, 2978-80 (1974).* Under *Wolff,* the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff, 418 U.S. at 564-67, 94 S.Ct. at 2978-80;see also Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir.1988).*

Plaintiff's procedural due process claim is multi-faceted. In that claim, Ciaprazi maintains that 1) he was denied meaningful assistance by defendant Cole, who refused his request to interview potential witnesses identified by the plaintiff; 2) Hearing Officer Melino effectively denied the plaintiff access to witnesses since witness waiver forms, not to plaintiff's liking in form, were allegedly presented by an unknowledgeable corrections officer to those inmates whose testimony was requested by Ciaprazi, following which those inmates apparently refused to sign the waiver forms and appear to testify on his behalf; 3) the hearing officer was biased and partial, and demonstrated open hostility toward the plaintiff; 4) the hearing officer's disciplinary determination was not supported by the evidence; and 5) the hearing officer refused plaintiff's suggestion to administer polygraph tests to defendants Rogers and Fitzpatrick, as well as to Ciaprazi. Also implicit in plaintiff's due process claim is his contention that his constitutional rights were violated through the issuance of a false misbehavior report.[FN14]

FN14. Among the due process violations alleged in plaintiff's complaint is the claim that by taking into account his prior disciplinary record when

determining the appropriate punishment to be imposed based upon the finding of guilt, hearing officer Melino violated the constitutional guaranty against double jeopardy. Since it is well established that the double jeopardy clause does not apply in the prison disciplinary setting, this claim lacks merit. *Bolanos v. Coughlin, No. 91 Civ. 5330, 1993 WL 762112, at *13 (S .D.N.Y. Oct. 15, 1993).* Plaintiff's contention that the hearing officer's actions in this regard also violated an unspecified New York regulation fares no better, since such an allegation does not automatically support a claim of civil rights violations under *42 U.S.C. § 1983. Alnutt v. Cleary, 913 F.Supp. 160, 168 (W.D.N.Y.1996).*

Plaintiff's arguments relating to the sufficiency of evidence supporting the hearing officer's finding of guilt can be swiftly discounted. The Constitution, including its Due Process Clause, requires only that there be some evidence of guilt supporting a prison disciplinary determination. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774 (1985).* Having reviewed the record of plaintiff's disciplinary proceeding in light of his submissions, I find that this standard has been met.

**\*13** Plaintiff's claims regarding the allegedly false misbehavior report also lack merit. It is well established that in the absence of other aggravating factors, an inmate enjoys no constitutional right against the issuance of a false misbehavior report.[FN15]*Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986), cert. denied,485 U.S. 982, 108 S.Ct. 1273 (1988).* The rationale supporting this general rule is that an inmate's procedural due process rights are adequately safeguarded by the opportunity to challenge and present evidence to rebut the false accusations at a disciplinary hearing. *Freeman, 808 F.2d at 953.*

FN15. Unquestionably, a prisoner does enjoy a substantive due process right against the issuance of a false misbehavior report as retribution for having engaged in protected activity. *Jones v. Coughlin, 45 F.3d 677, 679-80 (2d Cir.1995).* In light of my finding of no connection between plaintiff's complaints and the issuance by defendant Fitzpatrick of the misbehavior report,

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

however, such a claim does not lie in this action.

As for plaintiff's contention that his due process rights were violated when polygraph tests were not administered to key corrections officials, as requested by him, plaintiff has cited no cases-nor is the court aware of any-which require the administering of polygraph tests in connection with parties and witnesses in the context of an inmate disciplinary determination. *See Hinebaugh v. Wiley,* 137 F.Supp.2d 69, 79 (N.D.N.Y.2001) ("some evidence" does not require independent examination of credibility and therefore "certainly does not require" court to order personnel to submit to polygraph to ascertain if hearing testimony was truthful). This issue, then, provides no basis for finding the existence of a procedural due process violation.

Plaintiff's allegations regarding the ineffectiveness of his assigned assistant provide a greater basis for pause. While the requirements associated with the provision of such assistance are modest, they are not non-existent. Under *Wolff,* an inmate facing a Tier III disciplinary hearing is entitled to meaningful assistance in preparing his or her defense. *Eng,* 858 F.2d at 897-98. In this case, plaintiff asserts that while he was assigned an assistant, he was denied meaningful assistance from that individual. In support of this contention, plaintiff alleges that he identified certain witnesses critical to his defense, but that his assistant refused to interview those witnesses with an eye toward requesting their testimony during the hearing. Complaint (Dkt. No. 1) ¶¶ 20-21; Ciaprazi Aff. (Dkt. No. 46) ¶ 40. This, if true, could establish a due process violation based on the inadequacy of the inmate assistance provided to the plaintiff. *See Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998).

In light of my inability to find, as a matter of law, that plaintiff did not suffer the deprivation of a liberty interest as a result of his five month period of disciplinary confinement, and additionally to conclude that no reasonable factfinder could find the existence of a due process violation associated with that disciplinary confinement, I recommend denial of the portion of defendants' summary judgment motion which seeks dismissal of plaintiff's due process claims.

**F.** *Equal Protection*

In his complaint plaintiff also complains of the alleged deprivation of equal protection. Defendants contend that this claim is also subject to dismissal as a matter of law.

**\*14** "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tx. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985) (citation omitted). The general rule is that a policy is presumed to be valid and will be sustained if the classification drawn by that policy is rationally related to a legitimate state interest. *Id.* at 440, 105 S.Ct. at 3254. One exception to that rule, however, is when a policy classifies by race, alienage, or national origin-"[t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy-a view that those in the burdened class are not as worthy or deserving as others." *Id.* For this reason, these policies are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *Id.* The essence of a cognizable equal protection claim includes a showing of "clear and intentional discrimination." *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401 (1944) (internal quotation and citations omitted).

The apparent basis for plaintiff's equal protection claim is his contention that in light of his national origin, he was treated differently than United States citizen counterparts.[FN16] In the face of defendants' summary judgment motion, it was incumbent upon the plaintiff to come forward with evidence which could support a claim that he was treated differently than other inmates, and that the difference in treatment could properly be attributed to his status as a Romanian. As such evidence, plaintiff offers only a statement made to him by defendant Fitzpatrick at one point, in substance, that plaintiff had "now ... learned to speak English." *See* Plaintiff's Memorandum (Dkt. No. 46) at 29. Beyond this slender reed, plaintiff offers no evidence to support his claim that he was treated differently than inmates not of his national origin, and indeed acknowledges mere speculation on his part as to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

this premise, arguing that "discrimination based on national origin *may* ... have placed [sic] a role in defendants' unlawful actions[.]" Plaintiff's Memorandum (Dkt. No. 46) at 29 (emphasis added). Instead, plaintiff's equal protection claims consist of mere surmise and speculation, and are subject to dismissal on this basis. *See, e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) ( "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

        FN16. Plaintiff is a Romanian citizen. Complaint (Dkt. No. 1) at 3.

Despite being obligated to do so at this juncture, plaintiff has failed to adduce any evidence to show either that he was treated differently than his non-Romanian counterparts, and that the difference in treatment was based upon his national origin. I therefore recommend dismissal of plaintiff's equal protection claims as a matter of law.

G. *United Nations Resolutions*

**\*15** Each of plaintiff's eight causes of action is based, in part, upon two international agreements, including the Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights ("ICCPR"). Defendants maintain that as a matter of law, those provisions do not support claims under section 1983.

Section 1983 provides, in pertinent part, for a right of action on behalf of any person deprived of "any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Plaintiff argues that because the United States is a signatory to these two treaty-like provisions, they have the force of law and can be implemented, and individual treaty violations can give rise to recourse, under section 1983.

It is true that violation of a treaty entered into by the United States can serve as a basis for a claim for damages under section 1983, provided that the treaty allows for a

private right of action to redress any alleged violations of its provisions. *Standt v. City of New York,* 153 F.Supp.2d 417, 422-30 (S.D.N.Y.2001) (finding private right of action under section 1983 for violation of the Vienna Convention on Consular Relations, 21 U.S.T. 77, 101 T.I.A .S. No. 6820, 596 U.N.T.S. 261 (April 24, 1963)). To the extent that the defendants argue otherwise, and contend that treaties-as distinct from constitutional and other types of federal statutory provisions-cannot support a claim for section 1983 liability, *see* Defendants' Memorandum (Dkt. No. 39) at 17-18, that position therefore lacks support.

As can be seen, analysis of the sufficiency of plaintiff's claims under the cited treaty provisions turns upon whether those international agreements confer individual rights of action. In order to be found deserving of enforcement under section 1983 as a "law", a treaty ratified by the Senate must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress. *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1298 (3d Cir.1979).

Since plaintiff has pointed to no applicable implementing legislation, nor is the court aware of any, the availability of the ICCPR to support plaintiff's section 1983 claim depends upon whether it is self-executing. The majority of the courts addressing this issue, however, including within the Second Circuit, have concluded that it is not.[FN17]*See, e.g., Poindexter v. Nash,* 333 F.3d 372, 379 (2d Cir.2003); *Murray v. Warden, FCI Raybrook,* No. 9:01-CV-255, 2002 WL 31741247, at *11 n. 10 (N.D.N.Y. Dec. 5, 2002) (Sharpe, M.J.) (citing *U.S. ex rel. Perez v. Warden, FMC Rochester,* 286 F.3d 1059, 1063 (8th Cir.2002) and *Reaves v. Warden,* No. Civ. A3:01-CV-1149, 2002 WL 535398, at *9 (M.D.Pa. Mar. 22, 2002). Similarly, the UDHR has been characterized by the Second Circuit as "non-binding." *Flores v. Southern Peru Copper Corp.,* 343 F.3d 140, 167-68 (2d Cir.2003).

        FN17. Even in one of the cases relied heavily upon by the plaintiff, *Maria v. McElroy,* 68 F.Supp.2d 206, 231 (E.D.N.Y.1999)-a case which has since been effectively overruled on other grounds, *see Restrepo v. McElroy,* 369 F.3d 627 (2d Cir.2004)-the court recognized that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

the ICCPR was not "self-executing". 68 F.Supp.2d at 231.

**\*16** Based upon the foregoing, and without deciding whether the evidence in the record demonstrates a genuine issue of material fact as to whether those provisions were violated by defendants' alleged actions toward the plaintiff, I find that Ciaprazi's claims under the ICCPR and UDHR are legally deficient as a matter of law. I therefore recommend dismissal of plaintiff's claims which are dependent on those two international agreements.

H. *Personal Involvement*

Defendants claim that plaintiff's claims against defendants Goord and Selsky are legally deficient, in that the record fails to establish their requisite personal involvement in the constitutional violations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,*434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson,* 347 F.3d at 435;*Wright,* 21 F.3d at 501;*Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

The basis for asserting liability against defendant Selsky arises exclusively from plaintiff's appeal from his disciplinary determination. That appeal was addressed by defendant Selsky, whose review of that appeal sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations. *See, e.g., Gilbert v. Selsky,* 867 F.Supp. 159, 166 (S.D.N.Y.1994).

Plaintiff's claim against defendant Goord is far more tenuous. Plaintiff asserts that because his appeal was mailed directly to defendant Goord who, consistent with his established practice, then referred it to defendant Selsky for review, the Commissioner "presumably read [its] contents." *See* Plaintiff's Memorandum (Dkt. No. 46) at 32. This, coupled with his contention that as the ultimate supervisor of the DOCS defendant Goord was positioned to remedy the violations which he suffered, forms the sole basis for his claims against defendant Goord. These are merely claims against defendant Goord in his supervisory capacity; to sanction them would be to allow for *respondeat superior* liability. Since it is well established that such liability does not lie under section 1983, and there is no other discernible basis to conclude defendant Goord's awareness of or involvement in the matters alleged in plaintiff's complaint, I recommend that defendants' motion be granted and plaintiff's claims against defendant Goord be dismissed based upon lack of personal involvement. *Richardson,* 347 F.3d at 435 (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim"); *Scott v. Coughlin,* 78 F.Supp.2d 299, 312 (S.D.N.Y.2000) (Commissioner's act of forwarding appeals addressed to him to Selsky insufficient to establish personal involvement; citing, *inter alia, Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1991)).

IV. *SUMMARY AND RECOMMENDATION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

**\*17** The plaintiff, an experienced and well-versed *pro se* litigant, has commenced this action asserting various claims arising out of the issuance of a disciplinary misbehavior report and the process which followed, including the punishment received. Upon examination of the record, I find no evidence tending to demonstrate that the adverse actions taken against the plaintiff were motivated by disciplinary animus, and thereby recommend the entry of summary judgment dismissing his retaliation claim. I do, however, find the existence of triable issues of fact regarding whether or not Ciaprazi was deprived of a constitutionally significant liberty interest, and whether the assistance provided to the plaintiff in anticipation of his hearing was constitutionally adequate, and therefore recommend against summary dismissal of plaintiff's procedural due process claims.

Addressing plaintiff's Eighth Amendment claims I find, particularly in view of the lack of any evidence to the contrary, that the conditions described by the plaintiff could lead a reasonable factfinder to conclude that they amounted to cruel and unusual punishment, and therefore recommend against the entry of summary judgment dismissing plaintiff's Eighth Amendment claim. I further find, however, no basis to conclude that a reasonable factfinder could find an Eighth amendment violation based on the Tier III regulatory scheme, a violation of the Equal Protection Clause of the Fourteenth Amendment, or that the international treaty provisions cited give rise to a private right of action. Accordingly, I recommend dismissal of those claims.

Finally, I recommend dismissal of plaintiff's claims against defendant Goord based upon the lack of his personal involvement, but against dismissal of plaintiff's claims against defendant Selsky on this basis. It is therefore hereby

RECOMMENDED that defendants' summary judgment motion (Dkt. No. 39) be GRANTED in part, and that all of plaintiff's claims against defendant Goord, and all of plaintiff's claims against the remaining defendants except his procedural due process and Eighth Amendment conditions of confinement causes of action, be DISMISSED, but that to the extent of those claims, with

respect to which triable issues of fact exist, I recommend that defendants' motion be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have TEN days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Fed.R.Civ.P. 6(a), 6(e), 72; 28 U.S.C. § 636(b)(1); *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citations omitted); and it is further hereby

ORDERED that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

N.D.N.Y.,2005.
Ciaprazi v. Goord
Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.