IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NELSON RODRIGUEZ,

                    Plaintiff,

                                                    Civil Action No.
                                                    9:07-CV-0432 (LEK/DEP)

          v.

DONALD SELSKY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR THE PLAINTIFF:

NELSON RODRIGUEZ, *Pro Se*
88-A-5497
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR THE DEFENDANT:

HON. ERIC T. SCHNEIDERMAN            AARON M. BALDWIN, ESQ.
Attorney General of the State        Assistant Attorney General
  of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Nelson Rodriguez, a New York state prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.   In his complaint, as amended, Rodriguez alleges that prison officials at the facility in which he was confined at the relevant times issued him two fabricated misbehavior reports ("MBRs") falsely accusing him of violating prison rules and denied him procedural due process during the course of the ensuing disciplinary hearing.[1]  Plaintiff attributes those actions to retaliation for his having filed a civil action against a corrections employee who was not named as a defendant in his complaint.

The sole remaining claim in this action is asserted against defendant Donald Selsky, the former Director of Special Housing and Inmate Disciplinary Programs for the New York State Department of Correctional Services ("DOCS"), alleging deprivation of procedural due process arising out of plaintiff's disciplinary hearing and defendant Selky's review of the resulting determination.

---

[1]   As originally constituted, plaintiff's complaint recited other purportedly unlawful conduct, alleging that he was subjected to ongoing harassment, retaliation, and interference with his access to the courts.  As a result of a series of court interventions the claims in this action, which was commenced elsewhere but later transferred to this district, have been significantly narrowed.

Currently pending before the court is defendant's motion for summary judgment dismissing plaintiff's amended complaint.  In his motion, defendant argues that 1) he was not sufficiently involved in the constitutional deprivation alleged to support a finding of liability; 2) plaintiff was afforded procedural due process in connection with the disciplinary proceedings at issue, and 3) in any event he is entitled to qualified immunity from suit.  For the reasons set forth below, I recommend a finding that plaintiff was not deprived of procedural due process, and that his complaint therefore be dismissed.

I.     BACKGROUND[2]

Plaintiff is a prison inmate entrusted to the custody of the DOCS; at the times relevant to his due process claim plaintiff was housed at the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York.  Amended Complaint (Dkt. No. 7) ¶ 3; Selsky Decl. (Dkt. No. 62-3) ¶ 15.

As a result of an incident involving another inmate occurring on December 30, 2003, plaintiff was issued two MBRs.  Amended Complaint (Dkt. No. 7) ¶¶ 12-15.  Selsky Decl. (Dkt. No. 62-3) ¶ 16.  The first, issued

_____

[2]     In light of the procedural posture of the case the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

on December 30, 2003 and authored by Corrections Officer Goosby, charged Rodriguez with fighting and refusal to obey a direct order.  Selsky Decl. (Dkt. No. 62-3) ¶ 17 and Exh. A (Dkt. No. 62-4).  The second, issued on January 2, 2004 by Corrections Lieutenant Wright, addressed the same incident and accused Rodriguez of fighting, engaging in violent conduct, and participating in a demonstration detrimental to the order of the facility.  Selksy Decl. (Dkt. No. 62-3) ¶ 18 and Exh. A (Dkt. No. 62-4).

The parties differ as to when the two MBRs were served upon Rodriguez.  Plaintiff and defendant appear to be in agreement that the second MBR was served upon him on January 2, 2004.  Selsky Decl. (Dkt. No. 62-3) ¶ 19 and Exh. A (Dkt. No. 62-4); Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 68) ¶ 16.  While defendant asserts that both MBRs were served on January 2, 2004, *see* Selsky Decl. (Dkt. No. 62-3) ¶ 19 and Exh. A (Dkt. No. 62-4), plaintiff denies that he received the December 30, 2003 MBR until the commencement of his disciplinary hearing.[3]  Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 68) ¶ 16.

The two MBRs were consolidated, over plaintiff's objection, and a Tier III disciplinary hearing was conducted, beginning on January 7, 2004,

---

[3]      As will be seen I have assumed, as I must at this juncture, that plaintiff's version of the facts is correct.  *See* pp. 21 – 32, *post.*

4

to address the charges set forth within them.[4,5]  Amended Complaint (Dkt. No. 7) ¶ 15; Selsky Decl. (Dkt. No. 62-3) ¶ 21 and Exhs. A (Dkt. No. 62-4) and B (Dkt. Nos. 62-5 and 62-6).  In advance of the hearing plaintiff was given the opportunity to express his preferences for an assistant, and based upon his selection Corrections Counselor Roddy was assigned to assist him.  Selsky Decl. (Dkt. 62-3) ¶ 20 and Exh. A (Dkt. No. 62-4).

Following its commencement on January 7, 2004, the hearing officer twice adjourned the hearing, initially to January 8, 2004, and again

---

[4]     The DOCS conducts three types of inmate disciplinary hearings.  *See* 7 N.Y.C.R.R. § 270.3.  Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[5]     Plaintiff's disciplinary hearing was originally scheduled to start on January 5, 2004, in order to meet the requirements of a state regulation mandating that a disciplinary hearing commence within seven days of a prisoner's confinement in a facility's SHU, 7 N.Y.C.R.R. § 251-5.1(a) (1983).  Selsky Decl., Exh. B (Dkt. No. 62-5) pp. 18-19.  While plaintiff assigns significance to the failure of prison officials to meeting the seven-day requirement, the record reveals that an extension was granted because plaintiff's assistant was unable to meet with him prior to January 5, 2004.  *Id.* In any event, the violation of state regulations is not cognizable under 42 U.S.C. § 1983. *Cusamano v. Sobek*, 604 F. Supp.2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases).  Plaintiff's claim of undue delay is instead subject to constitutional standards, which require only that the hearing be held within a "reasonable time" and not within any prescribed number of days.  *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process."); *Donato v. Phillips,* No. 9:04-CV-1160, 2007 WL 168238, at *6 (N.D.N.Y. Jan. 18, 2007) (McAvoy, J.) (hearing that started nine days after plaintiff's confinement in the SHU was reasonable).

from January 8, 2004 to January 13, 2004, to allow the plaintiff an opportunity to prepare his defense.  Selsky Decl. (Dkt. No. 62-3) and Exh. B (Dkt. No. 62-5) pp. 4-20, 20-58.  During the course of the hearing plaintiff was permitted to call at least eleven witnesses to testify on his behalf, and also to introduce documentary evidence in his defense  Selsky Decl. (Dkt. No. 62-3) ¶ 44 and Exh. A (Dkt. No. 62-4); Exh. B (Dkt. No. 62-5) at pp. 60-86, 94-115, 136-83, 185-209, and Exh. B (Part 2) (Dkt. No. 62-6) at pp. 2-12, 30-43, 59-71, 72-78, 76-83, 105-111, 111-117, 117-21,122-26, 128-39.  Two inmate witnesses listed by the plaintiff declined to testify, and executed refusal forms stating that they did not wish to be involved in the matter.  Selsky Decl. (Dkt. No. 62-3) ¶ 42 and Exh. A (Dkt. No. 62-4).  The hearing officer rejected plaintiff's request that he be permitted to adduce testimony from two other witnesses, his wife and his attorney, concluding that the testimony would not be relevant to the issues involved in the hearing.  Selsky Decl., Exh. B (Part 2) (Dkt. No. 62-6) pp. 98-99.

At the conclusion of hearing, plaintiff was found guilty of fighting (one count), refusing to obey a direct order, engaging in violent conduct, and participating in a demonstration, but was acquitted on the second count of fighting.  Selsky Decl. (Dkt. No. 62-3) ¶ 22 and Exh. A (Dkt. No.

62-4).  Based upon his findings, which were both noted in writing and stated orally at the hearing, the hearing officer imposed a penalty that included twenty-four months of disciplinary SHU confinement and a corresponding loss of package, commissary and telephone privileges. Selsky Decl. (Dkt. No. 62-3) ¶ 23;  *see also* Exh. A (Dkt. No. 62-4) and Exh. B (Part 2) (Dkt. No. 62-6) pp. 156-58.

On February 11, 2004, plaintiff appealed the disciplinary determination to defendant Selsky's office.  *See* Amended Complaint (Dkt. No. 7) ¶ 21; Selsky Decl. (Dkt. No. 62-3) ¶ 26 and Exh. C (Dkt. No. 62-7). Plaintiff also submitted a supplemental appeal on or about March 12, 2004.  Selsky Decl. (Dkt. No. 62-3) ¶¶ 26-27, Exhs. C (Dkt. No. 62-7) and D (Dkt. No. 62-8).  Defendant Selsky issued a determination on behalf of the DOCS Commissioner on April 8, 2004, modifying the results of the hearing by dismissing the charge of engaging in a demonstration and reducing the penalty imposed to twelve months of SHU confinement with a corresponding loss of privileges.[6]  Selsky Decl. (Dkt. No. 62-3) ¶ 28 and Exh. E (Dkt. No. 62-9).  That determination was based upon defendant

---

[6]        Plaintiff's SHU term of disciplinary confinement and corresponding loss of privileges was further reduced to eighth months and nine days, ending on September 9, 2004, as a result of a discretionary time cut on or about July 14, 2004, occurring while plaintiff was housed at the Southport Correctional Facility.  Selsky Decl. (Dkt. No. 62-3) ¶ 53.

Selsky's finding that the nature of the incidents giving rise to the MBRs did not warrant the full extent of the penalty imposed and that the charge of engaging in a demonstration was not substantiated.  *Id. at* ¶ 28 and Exh. E (Dkt. No. 62-9).  Based upon his review, however, Selsky concluded that plaintiff received all of the procedural due process mandated under the Fourteenth Amendment and that there was evidence in the record substantiating the charges for which Rodriguez was found guilty.  *Id.* at ¶ 29.

II.   <u>PROCEDURAL HISTORY</u>

This action was commenced on April 11, 2007 in the Southern District of New York, but was subsequently transferred to this district by order issued by Chief District Judge Kimba M. Wood on April 11, 2007.[7] Dkt. Nos. 1, 3. Plaintiff's original complaint challenged not only the MBRs issued and the disciplinary action that ensued, but also chronicled alleged continued harassment and acts of retaliation that he experienced following his transfer into the Attica Correctional Facility, naming as defendants several DOCS employees including Donald Selsky.  *See* Complaint (Dkt. No. 1).

---

[7]      While plaintiff's complaint was not filed in the Southern District until April 11, 2007, the transfer order issued by Chief Judge Wood noted that the complaint was received in that district on February 26, 2007.  *See* Dkt. No. 3, n.1.

Upon transfer of the case to this district and the court's initial review of plaintiff's complaint and accompanying request for leave to proceed *in forma pauperis* ("IFP"), by order dated May 17, 2007, Senior District Judge Lawrence E. Kahn granted plaintiff IFP status but directed that he file an amended complaint, noting several deficiencies in the original pleading including, *inter alia*, the apparent untimeliness of certain of his claims. Dkt. No. 5. In accordance with the court's directive, plaintiff filed an amended complaint on June 26, 2007. Dkt. No. 7. Upon review of that pleading District Judge Kahn issued an order on July 19, 2007 accepting the amended complaint for filing, but dismissing plaintiff's claims against the majority of the defendants as time-barred and further directing dismissal of plaintiff's claims against a newly-added defendant, Corrections Sergeant Corcran, without prejudice to plaintiff's right to file a separate action against that defendant in the Western District of New York.[8] As a result, Donald Selsky was left as the sole remaining defendant in the action.

---

[8]   District Judge Kahn explained that "[s]ince the alleged wrongdoing by Defendant Corcran occurred in the Western District of New York, and Plaintiff's claims against Defendant Corcran are very recent, and thus not in jeopardy of being time-barred at this time, the Court will dismiss Defendant Corcran from the action, without prejudice to Plaintiff filing his claims against Defendant Corcran in the Western District of New York." Decision and Order (Dkt. No. 8) at p. 3.

After filing an answer generally denying plaintiff's allegations against him and asserting various affirmative defenses, *see* Dkt. No. 10, defendant Selsky moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, urging dismissal of plaintiff's amended complaint on the ground that it failed to allege the requisite degree of his personal involvement in any wrongdoing to support a finding of liability.  Dkt. No. 47.  The motion resulted in my issuance of a report on February 25, 2010 recommending that the motion be denied.  Dkt. No. 54.  That recommendation was adopted by District Judge Lawrence E. Kahn by order issued on September 13, 2010.  Dkt. No. 67.

On June 18, 2010, defendant again moved, this time for summary judgment dismissing plaintiff's complaint.  Dkt. No. 62.  In his motion defendant reiterates his claim of lack of personal involvement, and additionally asserts that in any event plaintiff's due process claim lacks merit since the plaintiff was afforded all of the procedural safeguards required under the Fourteenth Amendment, and further that he is entitled to qualified immunity from suit.  *Id.*  Plaintiff has since responded in opposition to defendant's motion, Dkt. No. 68, and defendant has submitted a reply memorandum addressing plaintiff's arguments and further supporting his motion.  Dkt. No. 74.

Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a

11

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.   Personal Involvement

In his motion defendant Selsky renews an argument previously made and rejected – that his limited involvement in reviewing the disciplinary determination in question based upon plaintiff's appeal of that decision is insufficient to support a finding of liability for any procedural due process violation which may have occurred in the context of that hearing. In response, plaintiff counters that the record reveals facts from which a reasonable factfinder could conclude that the defendant personally participated in the due process violation, including by conducting an inadequate review of the disciplinary hearing record.

It seems clear, particularly in light of the Supreme Court's relatively recent decision in *Ashcroft v. Iqbal,* ___ U.S. ___ 129 S. Ct. 1937, 1948-

13

49 (2009), that to be held accountable for a constitutional deprivation under section 1983 a defendant must have had personal involvement in the conduct giving rise to the deprivation. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (*citing Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S. Ct. 1282 (1978); *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.") (quoting *McKinnon*).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

As was noted in my prior report and recommendation, the question of whether defendant Selsky's review of an allegedly infirm disciplinary hearing provides grounds for establishing his personal involvement is one that has divided the courts.  Some courts have found the mere allegation that Selsky has reviewed and affirmed a hearing determination that was the product of a due process deprivation is insufficient to establish liability for the underlying violation.  *See, e.g., Abdur-Raheem v. Selsky*, 598 F.

Supp. 2d 367, 370 (W.D.N.Y. 2009) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU.... That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord*, No. 05-CV-47A, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("[t]he fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part.");[9] *see also Odom v. Calero*, No. 06 Civ. 15527, 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (concluding that a due process violation is complete upon the hearing officer rendering a decision, even when the liberty interest deprivation persists, and therefore is not "ongoing" when an appeal is taken to Donald Selsky).

On the other hand, other courts have found that the act of reviewing and affirming a determination on appeal can provide a sufficient basis to find the necessary personal involvement of a supervisory employee like defendant Selksy. *See, e.g., Bennett v. Fischer,* No. 9:09-CV-1236, 2010

---

[9]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

WL 5525368 (N.D.N.Y. Aug 17, 2010) (Peebles, M.J.) (finding questions of fact regarding Commissioner Fischer's personal involvement in disciplinary precluding summary judgment), *Report and Recommendation Adopted,* 2011 WL 13826 (N.D.N.Y. Jan. 4, 2011) (Scullin, S. J.); *Baez v. Harris,* No. 9:01-CV-807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (fact that defendant Selsky responds personally to all disciplinary appeals by inmates found sufficient to withstand summary judgment motion based on lack of personal involvement); *Cepeda v. Coughlin*, 785 F. Supp. 385, 391 (S.D.N.Y. 1992) ("The Complaint alleges that '[t]he Commissioner and/or his designee entertained plaintiff[']s appeal and also affirmed.' ... [T]he allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal participation.  Assuming that this allegation is true, as this court must on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ..., Cepeda has pleaded personal involvement by Commissioner Coughlin sufficiently to withstand this motion.") (citations omitted); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001) (finding that plaintiff's complaint had sufficiently alleged personal involvement of Superintendent and Commissioner to withstand motion to dismiss because plaintiff alleged that both defendants had actual or constructive

notice of the defect in the underlying hearing); *Ciaprazi v. Goord*, No. 9:02-CV-0915, Report-Recommendation, 2005 WL 3531464, at *16 (N.D.N.Y. Mar. 14, 2004) (Peebles, M.J.) (recommending that Selsky's motion for summary judgment for lack of personal involvement be denied because Selsky's review of plaintiff's disciplinary hearing appeal "sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations."), *adopted,* 2005 WL 3531464, at *1-2 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.).

In support of his argument regarding personal involvement defendant cites *Tafari v. McCarthy*, 714 F. Supp. 2d 317 (N.D.N.Y. My 24, 2010), in which another magistrate judge of this court, in a report and recommendation adopted by the assigned district judge, wrote that "[t]he affirming of a disciplinary conviction does not constitute personal involvement in a constitutional violation." *Tafari*, 714 F. Supp. 2d at 383. (citing *Joyner v. Greiner,* 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002)). I respectfully disagree with my esteemed colleague and maintain that the cases holding that Selsky's affirmance, or that of someone in his corresponding position, of a constitutionally defective disciplinary determination at a time when the inmate is still serving his or her

17

disciplinary sentence, and the violation can therefore be abated, falls within the *Colon* factors articulated in the Second Circuit for informing the supervisory liability analysis.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In any event, this case is distinguishable from *Tafari* since here plaintiff has alleged that through his own conduct in inadequately reviewing the underlying determination defendant Selsky committed a due process violation, *see* Amended Complaint (Dkt. No. 7) ¶ 21, thereby satisfying the Supreme Court's admonition that a defendant can only be held liable for his or own conduct for purposes of a civil rights violation. *Iqbal*, 129 S. Ct. at 1948.

As I noted in my prior report, I believe that those cases concluding that a plaintiff's allegation that defendant Selsky reviewed and upheld an allegedly constitutionally-suspect disciplinary determination is enough to show his personal involvement in the alleged violation appear to be both better reasoned and more consonant with the Second Circuit's position regarding personal involvement.  *See Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to establish his personal involvement).  While it

may be true that the due process violations cited by Rodriguez occurred and were no longer ongoing when his appeal was taken to defendant Selsky, because it appears that the sentence imposed was still being served at the time of his review, the liberty interest deprivation allegedly effectuated without due process was therefore ongoing, and defendant Selsky was in a position to remedy the violation, at least in part, at a time when his intervention would still have been meaningful.

### C.   Merits of Plaintiff's Due Process Claim

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  Defendant concedes that plaintiff's eight months of SHU disciplinary confinement "at least arguably" impacted a protected liberty interest, *see* Defendant's Memorandum (Dkt. No. 62-14) at p. 3, and I agree.  *See Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000) (finding that disciplinary confinement for a period of 305 days is "a sufficient departure from the ordinary incidents of prison life to require procedurally

due process protections.").  Plaintiff's claim, then, boils down to whether he was provided the procedural safeguards guaranteed under the Fourteenth Amendment prior to that deprivation.[10]

The procedural rights to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).[11]  Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-67, 94

---

[10]      It should be noted that in this case plaintiff goes beyond merely alleging defendant Selsky's failure to rectify a past due process violation.  In his complaint plaintiff also alleges that defendant Selsky participated in or furthered the violation by failing to conduct an appropriate review.  Amended Complaint (Dkt. No. 7) ¶ 21.

[11]      Many of the points raised in support of plaintiff's due process claim surround the alleged failure of prison officials to meet the requirements prescribed by regulation for disciplinary hearings.  It is well established, however, that a violation of a state regulation is not actionable under section 1983.  *Cusamano*, 604 F. Supp. 2d at 482 .

S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  In addition, to pass muster under the Fourteenth Amendment the hearing officer's disciplinary determination must garner the support of at least "some evidence".  *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985).

          1.    <u>Notice of Charges</u>

     The record now before the court, when interpreted in a light most favorable to the plaintiff, suggests that while the second of the two MBRs addressed at plaintiff's disciplinary hearing was served on Rodriguez on January 2, 2004, the earlier report was not received by him until the date on which the hearing was to begin.[12]  Under *Wolff*, an accused inmate is entitled to meaningful advance written notice of the charges against him; in this circuit, a minimum of twenty-four hours of advance notice is generally considered to be required.  *Sira v. Morten*, 380 F.3d 57, 70 (2d Cir. 2004).  The purpose of the notice requirement is to place the inmate on notice of the charges faced in order to permit the preparation of an adequate defense.  *Id.* (citing *Taylor v. Rodriguez*, 238 F.3d 188, 192-93

---

      [12]    As was previously noted, defendant disputes plaintiff's claim in this regard and asserts instead that both misbehavior reports were served on the plaintiff on January 2, 2004 by Corrections Officer Ferguson on January 2, 2004.  Selsky Decl. (Dkt. No. 62-3) ¶ 19 and Exh. A.

(2d Cir. 2001); *see also Martin v. Mitchell,* No. 92-CV-716, 1995 WL 760651, at *2 (N.D.N.Y. Nov. 24, 1995) (McAvoy, J.) (citing *Wolff*, 418 U.S. at 564, 94 S. Ct. at 2978) (holding that the purpose of the twenty-four hour notice rule is to provide inmates with sufficient time to prepare a defense, "not to hold hearing officers to a rigid and useless requirement that they only may call an inmate into a hearing room once they are positive that the inmate received a copy of the misbehavior report at least twenty-four hours earlier").

In this instance, any failure on the part of prison officials to provide plaintiff with notice of the charges lodged against him prior to the scheduled hearing was harmless in light of the hearing officer's agreement to adjourn the hearing, initially from January 7, 2004 to January 8, 2004, and then again to January 13, 2004, in order to allow the Rodriguez to prepare his defense.  The record clearly reflects that, during those intervening periods, he was afforded the opportunity to prepare a defense to both charges before any testimony was taken.  *See* Plaintiff's Memorandum (Dkt. No. 68-1) at p. 5 (admitting that plaintiff was served with the first misbehavior report at the hearing prior to any testimony having been taken).

The notice requirements of *Wolff* were therefore satisfied in this

22

case, and no reasonable factfinder could conclude otherwise.

### 2.    Assistance in Preparation of a Defense

Under *Wolff* and its progeny, a prisoner is entitled to an "employee assistant" to aid in the preparation for a disciplinary hearing when the inmate is illiterate, confined to the SHU, or unable to grasp the complexity of the issues involved.  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993); *see also Eng*, 858 F.2d at 897.  The Supreme Court has made it clear, however, that the assistance due prisoners is limited and is not equivalent of the right of a criminally accused legal counsel.  *Wolff*, 418 U.S. at 570, 94 S. Ct. at 2981.  An assistant is only required to act as the inmate's "*surrogate*–to do what the inmate would have done were he able."  *Silva*, 992 F.2d at 22 ("The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel.")

Because Rodriguez had been relegated to SHU confinement by the time of the disciplinary hearing he was entitled to and was in fact assigned an employee assistant, Ms. Roddy, to help him prepare for the hearing. Rodriguez asserts that the assistant, however, refused to provide him with requested documents and threatened to "write him up" if he requested further assistance.  Plaintiff's Memorandum (Dkt. No. 68–1) at pp. 14-17.

Specifically, plaintiff claims that he was refused access to documents that would have helped prove his innocence, including a list of officers involved in the incidents involved, letters written by another inmate, video footage of a different inmate being led to the SHU, all misbehavior reports concerning other inmates' involvement in the incidents, and all pertinent "To/From" memoranda produced by staff or inmates with knowledge of the relevant events. *Id*. at p. 15.

A careful review of the assistant forms and attachments in the record shows that the assigned assistant fulfilled her duty as plaintiff's surrogate. Plaintiff provided several lists of documents requested to prepare his defense.[13] Selsky Decl., Exh. A (Dkt. No. 62-4) pp. 46-49, 54-61. Ms. Roddy indicated on the assistant form that she pursued all of plaintiff's requests and provided him with at least twenty pages of documents. *Id*. at pp. 17-18. On the handwritten lists, Ms. Roddy noted which documents were provided to plaintiff and gave brief explanations as to why some of the requested documents could not be produced. It was noted, for example, that plaintiff was denied access to the handwritten notes of another inmate, several requested "To/From" forms simply did not

---

[13]   It is noted that plaintiff did not request that Ms. Roddy interview any inmates or other persons as potential witnesses and refused to sign the assistant form. Selsky Decl., Exh. A (Dkt. No. 62–4) p. 17.

exist, and that the video footage would be available for viewing at the hearing if deemed pertinent to the pending charges. *Id*. at pp. 46-49.

There is no indication that any documents were withheld from plaintiff without justification or as a result of Ms. Roddy's ineffective assistance. Ms. Roddy's role as plaintiff's assistant was limited to acting as his surrogate; if he was not permitted to receive certain documents, Ms. Roddy likewise could not access them. Even assuming plaintiff's claim that Ms. Roddy was rude and hostile toward him is accurate, such conduct in and of itself does not violate his federal due process rights. *See Gates v. Selsky*, No. 02 CV 496, 2005 WL 2136914, at * 7 (W.D.N.Y. Sept. 02, 2005) (noting that the duty owed by an employee assistant is the provision of requested services in good faith and in the best interest of the inmate and to perform as instructed by the inmate). In short, there is no evidence now before the court from which a reasonable factfinder could conclude that plaintiff was denied effective assistance in preparing his defense to the pending disciplinary charges.

### 3.    Opportunity to Present Evidence

The due process clause of the Fourteenth Amendment plainly guarantees the right of an accused inmate to present a defense to disciplinary charges. *Wolff*, 418 U.S. at 555-56, 94 S. Ct. at 2974. That

right, however, is not unfettered and does not apply to the same extent as

the constitutional guarantee to a criminally accused defendant of the right

to present a meaningful defense.  *Hernandez v. Selsky*, 572 F. Supp. 2d

446, 454 (S.D.N.Y. 2008) (citing *Wolff*).  Instead, in order to keep a

disciplinary hearing to within reasonable limits, a hearing officer "must

have the necessary discretion . . . to refuse to all witnesses that may

create a risk of reprisal or undermine authority" *Wolff,* 418 U.S. at 566, 94

S. Ct. at 2980.

An inmate's request to have specific witnesses called to testify may

be refused if the hearing officer reasonably finds that such witnesses'

testimony would be duplicative, non-probative, or would interfere with

correctional goals.  *See Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994).

"[A] hearing officer does not violate due process by excluding irrelevant or

unnecessary testimony."  *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d

Cir. 1999).

In support of his claim that he was denied the opportunity to present

a meaningful defense plaintiff first points to the hearing officer's refusal to

allow him to call his mother and attorney as witnesses.  According to the

plaintiff, both would have substantiated his claim of retaliatory motives on

the part of correctional officials.  Plaintiff's Memorandum (Dkt. No. 68-1) at

p. 8; *see also* Selsky Decl., Exh. B (Dkt. No. 62-6) pp. 98-99.  Neither witness, however, was present in the prison during any of the events giving rise to plaintiff's claims.  The only testimony those individuals could have offered would not only have been hearsay, but would have come directly from Rodriguez himself, who was present to testify.  Accordingly, the hearing officer properly determined that such testimony would have been irrelevant or unnecessarily redundant.

Plaintiff also challenges the hearing officer's failure to submit written questions to two fellow inmates who refused to testify at the hearing. Despite plaintiff's claim to the contrary, a hearing officer is under no affirmative duty to compel a response from an inmate who refuses to testify at a disciplinary hearing.  If a witness has indicated that he or she will not testify if called, it would be futile and unnecessary to pursue his or her testimony further.  *Silva*, 992 F.2d at 22; *see also Johnson v. Doling*, No. 9:05-CV-376, 2007 WL 3046701, at *7 (N.D.N.Y. Oct. 17, 2007) (McAvoy, J. and Treece, M.J.) (the failure to summon the testimony of a witness who refuses to testify does not violate due process); *Dumpson v. Rourke*, No. CIVA96CV621, 1997 WL 610652, at *5 (N.D.N.Y. Sept. 26, 1997) (Pooler, J. and DiBianco, M.J.) (a hearing officer's failure to investigate why an inmate refused to testify does not constitute a due

process violation).

Here, inmates Colon and Berrios flatly refused to testify at plaintiff's disciplinary hearing, signing the appropriate refusal forms on January 14, 2004.  Selsky Decl., Exh. A (Dkt. No. 62-4) pp.110-11.  Colon explained his refusal by noting that he had not witnessed the incident, and Berrios likewise claimed to have no relevant information because he was sleeping in his cell at the relevant times.  *Id*.  Requesting further information from these inmates would have been futile and unnecessary since they claimed not to have actually witnessed the events that led to Rodriguez's charges. It was therefore not a violation of plaintiff's due process rights for the hearing officer to refuse to inquire further into their involvement.

4.     Impartial Hearing Officer

Among the due process dictates arising under the Fourteenth Amendment is the requirement that a hearing officer assigned to address a disciplinary charge against an inmate be unbiased.  *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996); *see also Davidson v. Capuano*, No. 78 Civ. 5724, 1988 WL 68189, at *8 (S.D.N.Y. June 16, 1988) (citing *McCann v. Coughlin*, 698 F.2d 112, 122 n.10 (2d Cir. 1983)).  While the reality is that most hearing officers serving in that capacity are prison officials, and a prison hearing officer's impartiality generally does not have to mirror that

of judicial officers, nonetheless the result of a disciplinary hearing should not be "arbitrary and adversely predetermined."  *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989).  Here again, the inquiry focuses on whether plaintiff was afforded basic due process.  *See Wright v. Conway*, 584 F. Supp. 2d 604, 609 (W.D.N.Y. 2009).  Within that context, an impartial hearing officer is one who "does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990).

It should be noted that a plaintiff's disagreement with a hearing officer's rulings alone does not give rise to a finding of bias.  *See Johnson*, 2007 WL 3046701, at *10 (hostile exchanges between plaintiff and the hearing officer throughout the proceeding and adverse rulings did not constitute bias where plaintiff was otherwise provided the opportunity to testify, call witnesses, and raise objections).  Similarly, the mere involvement of a hearing officer in related investigations or proceedings does not evidence bias.  *See Vega v. Artus*, 610 F. Supp. 2d 185, 200 (N.D.N.Y. 2009) (failing to find bias where the hearing officer conducted both the disciplinary proceeding and the investigation into the inmate's grievance against the involved corrections officer).

Because prison officials serving as adjudicators enjoy a rebuttable

29

presumption that they are unbiased, *Allen*, 100 F.3d at 259, plaintiff's

conclusory allegations of bias in this case are insufficient to overcome this

presumption.  Plaintiff claims that Hearing Officer Ewanciw was biased

because he sought assistance from Lt. Wright, who authored one of the

two MBRs in issue.  Plaintiff's Memorandum (Dkt. No. 68–1) at pp. 18-20.

However, Rodriguez fails to explain how this evidences bias against him,

reflects a predetermination on the hearing officer's part, or impacted the

outcome of the proceeding.  The record reflects that the hearing officer

disclosed to the plaintiff that he had consulted with Lt. Wright, the

"disciplinary lieutenant," for the purpose of ascertaining whether plaintiff

was permitted to receive copies of redacted investigation documents.

Selsky Decl., Exh. B (Dkt. No. 62-5) p. 130.

During the hearing plaintiff suggested that the hearing officer and Lt.

Wright are friends outside of work.  Selsky Decl., Exh. B (Dkt. No. 62-5)

pp. 131-32.  While the allegation denied by Hearing Officer Ewanciew,

even if true this fact does not show that he was predisposed to rule

against plaintiff.

In sum, plaintiff has failed to adduce evidence from which a

reasonable factfinder could conclude that the hearing officer assigned to

preside over plaintiff's disciplinary hearing was biased, or had prejudged

plaintiff's guilt prior to considering the evidence presented at the hearing.

### 5.   Determination Supported by "Some Evidence"

In addition to repeated verbal explanations of his rulings throughout the hearing and of his ultimate findings, Hearing Officer Ewanciw provided plaintiff with a written explanation of the evidence relied upon in reaching his conclusion.  Selksy Decl., Exh. A (Dkt. No. 62-4)  pp. 3-4.  In his written explanation, Hearing Ewanciw acknowledged that he relied in part on information from confidential witnesses.  Selksy Decl., Exh. A (Dkt. No. 62-4) p. 4.   The question next presented is whether these findings were supported by at least some credible evidence.

The "some evidence" standard is extremely tolerant and is satisfied if "there is any evidence in the record that supports" the disciplinary ruling. *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).  Nonetheless to pass constitute muster, the supporting evidence must be reliable.  *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001).  The Second Circuit has made clear that "the reliability of evidence is always properly assessed by reference to the totality of the circumstances and that an informant's record for reliability cannot, by itself, establish the reliability of bald conclusions or third-party hearsay." *Sira*, 380 F.3d at 82; *see also Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 614 (S.D.N.Y. 2009) ("*Sira*

clearly established that an independent assessment is necessary to satisfy the 'some evidence' standard when a disciplinary decision is based solely on confidential information.").

The hearing transcript reflects that the hearing officer did not make an independent inquiry into the reliability of the confidential inmate witnesses himself, but instead relied on Lt. Wright's independent finding of reliability.  Selsky Decl., Exh. B (Dkt. No. 62-5) p. 128.  Had the disciplinary decision been based solely on such confidential information, an issue of material fact might have been presented as to whether the "some evidence" standard was met.   With defendant Selsky's reversal of plaintiff's conviction on the demonstration charge contained within the January 2, 2004 MBR, the remaining charges for which he was found guilty included fighting, refusing a direct order, and violent conduct.  To support his finding of guilt on those counts Hearing Officer Ewanciw relied on a correctional officer's assertion that he witnessed plaintiff raise his fists, throw punches, and fail to stop fighting when instructed to do so – an account that was corroborated by another officer's investigation – as well as the results of an investigation into the incident and evidence found in plaintiff's cell tying him to the relevant events.  There was therefore sufficient reliable evidence on which to base a disciplinary decision related

to the charges, independent of the confidential witness statements, and no reasonable factfinder could conclude otherwise.

## IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff has failed to establish the existence of a genuine issue of material fact regarding his procedural due process claim.  Rodriguez received sufficient notice of the charges against him as well as adequate assistance in preparing a defense, and had ample opportunity to appear, call witnesses, and present evidence in his defense.  In addition, the record fails to disclose any basis for concluding that Hearing Officer Ewanciw was biased, and the record before the court proves that he provided plaintiff with a written explanation of the reasons for his decision, which was supported by at least some reliable evidence.  I therefore recommend dismissal of plaintiff's due process claim against defendant Selsky on the merits, and in light of this recommendation find it unnecessary to address defendant's claim of qualified immunity.  It is therefore respectfully

RECOMMENDED, that defendant's motion for summary judgment (Dkt. No. 62) be GRANTED, and that the complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.


Dated:     January 25, 2011
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

34



Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

David DONATO, Plaintiff,

v.

Michael PHILLIPS, Commissioner Hearing Officer, Donald Selsky, Director Inmate Grievance Program and Floyd Bennett, Superintendent, Elmira Correctional Facility, Defendants.

No. 9:04-cv-1160.

Jan. 18, 2007.

Anthony C. Ofodile, Office of Anthony C. Ofodile, Brooklyn, NY, for Plaintiff.

Steven H. Schwartz, Office of Attorney General, Albany, NY, for Defendants.

### DECISION and ORDER

THOMAS J. McAVOY, Senior United States District Judge.

**\*1** Plaintiff David Donato commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that he was denied his procedural due process rights in connection with discipline imposed upon him while incarcerated at the Elmira Correctional Facility. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the Complaint in its entirety.

### I. FACTS

On October 19, 2000, Plaintiff provided a urine sample for a urinalysis. Plaintiff was selected for a urine test based on a computer printout from the New York State Department of Correctional Services' Central Office in Albany that randomly selects from inmates who have had drug-related misconduct within the past two years, twice a year. The urinalysis tested positive for cannabinoids. The urine sample was collected in the presence of Officer Reisdorf. Reisdorf took the sample and placed it in the refrigerator. Officer Brannen obtained the specimen from the refrigerator and performed the urinalysis. A second urinalysis was performed on October 20, 2000. This test also came back positive for cannabinoids. As a result of the urinalysis, Plaintiff was issued an inmate behavior report dated October 20, 2000. The report charged Plaintiff with a violation of rule 113.24 that prohibits inmates from using, or being under the influence of, any narcotics or controlled substance unless prescribed by a health services provider. Plaintiff disputed the results of the test because he was tested on October 13 and October 31, both of which were negative for cannabinoids. Plaintiff, therefore, believed that the positive test results on the 19th and 20th were the result of a contaminated urine sample or the result of medications he may have been taking.

Defendants contend that a hearing was commenced on the misbehavior report on October 26, 2000. Plaintiff

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

denies that the hearing began on that date, but claims that the hearing actually commenced at a later time. Defendant Michael Phillips acted as the hearing officer. During the hearing, Plaintiff requested that Officer Reisdorf be called as a witness. Plaintiff did not list Officer Reisdorf as a witness on his Assistant Form. After considering the misbehavior report and the evidence submitted at the hearing, including evidence of Plaintiff's history of nine prior drug/alcohol-related matters, Phillips concluded that Plaintiff violated rule 113.24. Phillips imposed a penalty of twenty-four months in the Special Housing Unit ("SHU") with a corresponding loss of privileges and recommended loss of 36 months of good time.

Plaintiff appealed the hearing to the Commissioner. Upon considering the appeal, Defendant Donald Selsky, Director of the Department of Correctional Services' Special Housing/Inmate Disciplinary Program advised Plaintiff that his penalty had been reduced to twelve months in SHU, twenty-four months loss of privileges, and thirty-six months of recommended loss of good time.

**\*2** Thereafter, Plaintiff commenced an Article 78 proceeding challenging the disciplinary disposition. On September 14, 2001, the Washington County Court issued an order annulling the hearing officer's determination, ordering it expunged from Plaintiff's file, and ordering that Plaintiff be released from any penalties related to the hearing officer's determination. The basis for the court's determination was that "the hearing officer failed to give a reason why C.O. Reisdorf was not presented for testimony as is required by section 254.5 of Title 7 of the New York Codes, Rules and [Regulations (hereinafter, 'NYCRR')." Washington County Court concluded that Defendants' "violation of their own regulation under the circumstances here was also a violation of [Plaintiff's] constitutional right to call witnesses." FN1

FN1. The state court did not indicate whether its finding was made under the state or federal

constitution. For the reasons stated below, this Court finds that the violation of section 254.5 for failure to state the reasons for refusing to allow an inmate to call a witness does not necessarily implicate federal due process concerns. The United States Supreme Court has stated that the hearing officer must provide an explanation for his rulings either at the time of the disciplinary hearing or subsequently in court. *See Ponte v. Real,* 471 U.S. 491, 499, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

On October 5, 2001, Plaintiff was transferred to general population at Elmira Correctional Facility. Neither Defendants Selsky nor Bennett were involved in deciding where, or when, Plaintiff would be transferred.

Plaintiff commenced the instant action contending that Defendants denied his due process rights by failing to allow certain documentary evidence; failing to commence the hearing within seven days; being sarcastic, condescending, and biased during the hearing process; and denying Plaintiff's right to call a witness.

## II. STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 592 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002). However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d. Cir.1998).

## III. DISCUSSION

**\*3** The primary issues presented are whether Plaintiff was denied his due process rights because: (1) he was unable to have Officer Reisdorf and Inmate Harrison testify at his disciplinary hearing; and (2) the hearing did not commence within seven days.

Plaintiff first contends that he was denied his due process rights because the hearing officer failed to required Officer Reisdorf to testify. Defendants contend that Plaintiff waived the right to have Officer Reisdorf testify. For the following reasons, the Court finds that Plaintiff waived his right to have Officer Reisdorf testify and that, in the alternative, the failure to have Officer Reisdorf testify did not constitute a denial of Plaintiff's due process rights.

"An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action." *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986). "An inmate has a due process right to summon witnesses in his defense at a prison disciplinary hearing...." *Bedoya v. Coughlin,* 91 F.3d 349, 352 (2d Cir.1996). "[A]n inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing." *Id.* Moreover, "if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his failure to do so will not constitute a violation of the prisoner's constitutional rights." *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). Prison officials have the discretion to keep the hearing within reasonable limits and, as such, may refuse to call a witness for "irrelevance [or] lack of necessity." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

On his Assistant Form, Plaintiff failed to request that Officer Reisdorf testify at the hearing. During the hearing, Plaintiff requested that Reisdorf testify. *See* Def.'s Ex. B at 65. Phillips attempted to contact Reisdorf by telephone, but was unable to reach him because Reisdorf was not working that day. *Id.* Upon learning of Reisdorf's unavailability, Plaintiff did not ask for an adjournment until such time as Reisdorf would be available. *Id.* [FN2] It, thus, may be argued that Plaintiff waived his right to call Reisdorf.

> **FN2.** Although Plaintiff did later request to call as a witness the officer who took the urine sample on October 12, the October 12 sample was, and remains, irrelevant to the positive test conducted on October 19 that was the subject of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

the misbehavior report.

Assuming Plaintiff did not waive the right to call Reisdorf, Plaintiff has failed to demonstrate that he has been prejudiced by the failure to call or interview Reisdorf. In his memorandum of law, Plaintiff argues that "[t]he foremost purpose of Plaintiff Donato calling Reisdorf as a witness was (to the knowledge of Defendant Phillips) to establish that there must have been an inappropriate/sinister interference with the chain of custody of the urine sample which resulted in the false positive." Pl.'s Mem. of Law at 13. This contention is unsupported by any record evidence, and no fair-minded trier of fact could reasonably conclude otherwise. The record is clear that Plaintiff did not request Reisdorf to testify for this purpose. Rather, Plaintiff sought Reisdorf's testimony to explain *why* he was obligated to give a urine sample on October 19. *See e.g.,* Def.'s Ex. B at 63-65.[FN3] At page 91 of the hearing transcript, for example, Plaintiff renewed his request that Reisdorf be called to testify. The reason for this request, however, was to "conduct an investigation and, and also find out exactly why [he] was ordered to give this urine specimen." *See* Def.'s Ex. B at 91. As noted *supra* at note 2, the reason why Plaintiff gave a urine sample was, and remains, irrelevant to whether he tested positive for illegal drugs. Further, as Phillips concluded, Reisdorf's testimony as to the reason why Plaintiff was obligated to provide a urine specimen would have been cumulative because Correction Lieutenant Miller testified concerning the reason for the urine test. Def.'s Ex B at 10, 28, 64-68. Miller testified that Plaintiff was directed to provide a urine sample based on a "random prior" list sent from DOCS in Albany.[FN4] Even if Reisdorf would have contradicted Miller's testimony, as discussed, that factual issue was irrelevant.

FN3. Plaintiff contended that he was informed by Reisdorf that the test was "confidential" rather than a random test ordered by the Department of Correctional Services out of Albany. Def.'s Ex. B at 62-65. Whether the test was "confidential", conducted pursuant to a random testing program, or conducted for some other reason is irrelevant to Plaintiff s argument as to whether there was a break in the chain of custody from the time the urine sample was collected until the time the urinalysis was performed. Plaintiff never argued that the urine sample was unlawfully collected or that Defendants were not otherwise authorized to collect the urine. Rather, it was Plaintiff s contention that the test results were pre-determined and that he was misinformed as to the reason for the test.

FN4. A "random prior" means that the inmate had previously tested positive as a result of a random test.

**\*4** With respect to Plaintiff's chain of custody argument, he never challenged any chain of custody issues while the urine sample was in Reisdorf's possession. *Id.* at 30-31, 78. Rather, Plaintiff's allegations concerned Officer Brannan's handling of the urine once he removed the sample from the refrigerator. *Id.* Although Plaintiff contends that, at page 77 of the hearing transcript, he expressed his belief that something may have gone wrong with the chain of custody concerning his urine sample, Plaintiff never indicated that Officer Reisdorf was necessary for such a defense. To the contrary, Plaintiff's allegations concerning any mishandling of the urine sample focused on handling by Officer Brannen. Def's Ex. B at 77-79. Plaintiff fails to point to any evidence in the record suggesting that he sought to call Officer Reisdorf regarding any mishandling of the urine sample.

For the foregoing reasons, the Court finds that Phillips had a justifiable reason for refusing to have Reisdorf testify because: (1) Plaintiff did not request Reisdorf on his assistance form; (2) Reisdorf was unavailable and Plaintiff failed to request an adjournment; (3) Plaintiff never articulated to Phillips that he wanted Reisdorf to testify with respect to chain of custody issues,

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

thereby precluding Phillips from addressing the need to call Reisdorf for that purpose, *see Scott v. Kelly,* 962 F.2d 145, 147 (2d Cir.1992) (noting that where the inmate fails to advise the hearing officer what the testimony would be, the hearing officer has "no reason to believe that the testimony would be relevant or that it would affect his decision."); (4) as Phillips found, Reisdorf's testimony concerning the reason for the test (confidential v. random) would have been cumulative to the testimony of Miller who testified that the test was in conjunction with the random testing procedures; and (5) the reason for the test was irrelevant to any chain of custody issues or the propriety of the test itself.

Plaintiff next contends that Phillips violated his due process rights by failing to call Inmate Harrison to testify at the hearing. This argument, too, must be rejected. Plaintiff sought to call Harrison to corroborate Plaintiff's claim that Officer Sears told Plaintiff that the urine sample was being collected for "confidential" purposes and that he was in "trouble." Sears testified at the hearing that he made no such statement to Plaintiff. As Phillips stated at the hearing:

Let's presume for the sake of argument that Officer Sears ... did, in fact, tell you that ah, you had to go for a urinalysis test and that you were in trouble. Bottom line is, so what? Let's presume again ... that he did write you a pass.... Presuming what you're telling me is the truth, ... I don't care if he told you that that was the case because you know as well as I, that ... Lieutenant Miller, came in here, he testified that your name came up on a random prior screen from Albany, and he introduced a document which has your name on it, which has a date of 10/17/2000 on it, which directed that you be tested.

**\*5** Def.'s Ex. B at 75-76. Phillips reasonably was entitled to determine that Miller's testimony, as substantiated by the documentary evidence, was credible and that any testimony concerning the reasons given to

Plaintiff for the test were irrelevant to whether he, in fact, tested positive for marihuana use. Phillips also reasonably concluded that any testimony by Harrison would be redundant to Plaintiff's own claims about what he told to Officer Sears. *See Scott,* 962 F.2d at 147; *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994) (a prison disciplinary hearing officer may refuse to allow willing witnesses to testify where their testimony would be cumulative). For reasons previously discussed, Phillips reasonably concluded that the reason why Plaintiff's urine was tested was irrelevant to the misbehavior report. *See* Phillips Aff. at ¶ 13; *see also Ponte,* 471 U.S. at 499 (the hearing officer must provide an explanation for his rulings either at the time of the disciplinary hearing or subsequently in court). Accordingly, the failure to call Inmate Harrison did not prejudice Plaintiff and did not deprive him of his right to due process of law.

The final issue is whether Plaintiff's procedural due process rights were violated because the disciplinary hearing was not commenced within seven days of Plaintiff's placement in SHU. New York State regulations require disciplinary hearings to commence within seven days after the inmate is placed in SHU. *See* 7 N.Y.C.R.R. § 251-5(a); *Tellier v. Fields,* 280 F.3d 69 (2d Cir.2000); *Wright v. Smith,* 21 F.3d 496 (2d Cir.1994). The misbehavior report was dated October 20, 2000. Plaintiff was served with the report on October 21, 2000. Def.'s Ex. B at 1. On October 26, 2000, the parties convened to conduct a hearing on the misbehavior report. *Id.* Because Phillips determined that Plaintiff was not provided with certain documents, he adjourned the hearing. *Id.* at 5. Plaintiff did not enter a plea to the charge until on or about October 31, 2000. After various other adjournments, the hearing concluded on November 2, 2000.

Plaintiff contends that Defendants violated the requirement that the hearing commence within seven days because he did not enter his plea until October 31. As an initial matter, Plaintiff waived, or failed to exhaust this claim, because he did not raise this issue on appeal to the Superintendent or raise it otherwise before the instant

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

litigation. *Khalild v. Reda,* 2003 WL 42145, at *5 (S.D.N.Y.2003). In any event, this claim fails. The failure to provide a hearing precisely within the time specified in the regulations does not form the basis of a constitutional violation. This is so for several reasons. First, confinement in SHU creates a liberty interest only insofar as such confinement imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Connor,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). There is no evidence in the record that the days Plaintiff spent in SHU pending the commencement of the hearing imposed an atypical and significant hardship on him. See *Sandin v. Connor,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Forman v. Morales,* 112 F.3d 503 (2d Cir.1996) (unpublished decision); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). It, therefore, follows that the failure to provide a hearing within this time frame cannot implicate due process concerns. See *Forman,* 112 F.3d at *1; see also *Williams v. Kane,* 1997 WL 527677, at *7-8 (S.D.N.Y.1997). If there is no affront to an inmate's rights of due process where an inmate is not provided any hearing for placement in SHU or keeplock or periods of 30 days or less, there can be no due process violation for a hearing that occurs within two weeks of placement in SHU.

**\*6** Second, the seven-day rule in the New York regulations are not constitutional requirements. As previously noted, "[a]n inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action." *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986). Here, Plaintiff was provided advance written notice of the charges and an opportunity to be heard, to call witnesses, and to present rebuttal evidence. Moreover, the hearing was held within a reasonable time. As one court has stated:

Plaintiff's contention regarding the time frame of the hearing does not raise a constitutional claim. Plaintiff argues that the hearing did not occur until his ninth day of SHU confinement, which is in violation of New York State regulations that require hearings be held within seven days of confinement. See 7 N.Y.C.R.R. § 251-5.1(a). However, "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990). Those standards require only that the hearing be held within a "reasonable time" and not within any number of days. "What is considered a 'reasonable time' will depend upon the particular situation being examined." *Id.*

Plaintiff's hearing began nine days after he began SHU confinement, which is within the time period courts have held to be reasonable. *Russell v. Coughlin,* 774 F.Supp. 189, 197 (S.D.N.Y.1991) (eleven day delay not unreasonable where defendants provided reasons); *Bolanos v. Coughlin,* No. 91 Civ. 5330, 1993 WL 762112, *15 (S.D.N.Y. Oct.15, 1993) (eight day delay).... Such minor delays do not rise to the level of a constitutional violation of plaintiff's due process rights.

*Shell v. Brzezniak,* 365 F.Supp.2d 362, 376 (W.D.N.Y.2005); see also *Odom v. Keane,* 1998 WL 720671 (S.D.N.Y.1998) (hearing commenced on 8th day did not violate prisoner's due process rights); *Garcia v. Coughlin,* No. 92 Civ. 0392, 1993 WL 177819, at *2 (S.D.N.Y. May 17, 1993) ("Specific time limits imposed by state procedural requirements do not give rise to federally protected constitutional rights."), aff'd, 17 F.3d 391 (2d Cir.1993); see also *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990); *Foxworth v. Selsky,* 1998 WL 59448 (N.D.N.Y.1998); *Johnson v. Coughlin,* 1997 WL 431065 (S.D.N.Y.1997); *Kingwood v. Coombe,* 1997 WL 323913 (S.D.N.Y.1997). Here, it is evident that several adjournments were provided to allow Plaintiff a meaningful opportunity to defend himself on the misbehavior report. For example, Phillips adjourned the meeting to allow Plaintiff to review certain documents and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

(Cite as: 2007 WL 168238 (N.D.N.Y.))

find various witnesses to testify. Accordingly, the Court finds no due process violation with respect to the timing of the hearing.

**\*7** With respect to Plaintiff's claims that Phillips failed to allow certain documents into evidence, Plaintiff has failed to point to what evidence was not admitted and why the failure to admit such evidence was prejudicial to him. Having reviewed the hearing transcript, the Court finds that the documentary evidence excluded by Phillips was irrelevant to Plaintiff's defense. Plaintiff has similarly failed to point to sufficient evidence of sarcasm or bias on the part of Phillips such that he was denied a fair hearing.

Finally, to the extent Plaintiff challenges the length of time he remained in SHU following the order of the Washington County Court annulling the hearing officer's determination, Plaintiff has failed to demonstrate that any of the named Defendants were personally involved in the decision to continue his placement in SHU or transfer him to another non-SHU facility. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate the violation of any constitutional rights. Accordingly, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED.

IT IS SO ORDERED.

N.D.N.Y.,2007.

Donato v. Phillips

Not Reported in F.Supp.2d, 2007 WL 168238 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Michael F. RAMSEY, Plaintiff,
v.
Glenn S. GOORD, Donald Selsky, Mr. Ryerson,
Thomas G. Eagen, John H. Nuttall, Michael McGinnis,
Paul Chapius, A. Bartlett, M. Sheahan, J. Irizarry, J.
Hale, J. Cieslak, Sgt. Litwilder, J. Ames, C.O. Clark,
C.O. Held, and P. Klatt, Defendants.
No. 05-CV-47A.

Aug. 13, 2005.

Michael F. Ramsey, Clinton Correctional Facility,
Dannemora, NY, pro se.

DECISION and ORDER

SKRETNY, J.

INTRODUCTION

*1 Plaintiff, an inmate formerly incarcerated at the Elmira
and Southport Correctional Facilities (hereinafter "Elmira"
and "Southport"), has brought this action pursuant to 42
U.S.C. § 1983, and seeks permission to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915. Plaintiff's
complaint sets forth five claims alleging violations of his
constitutional and statutory rights. The first and second
claims set forth in the complaint relate to a July, 2002
administrative hearing that was conducted on disciplinary
charges brought against him during his sojourn at Elmira,
and principally allege a violation of plaintiff's due process
rights. Plaintiff's third and fourth claims allege violations
of his right to practice his religious beliefs by correctional
employees and supervisory personnel at Southport
between February, 2004 and January, 2005. Plaintiff's fifth
claim asserts that prison officials at Southport interfered

with his First and Fourteenth Amendment rights when they
deprived him of paper and other materials necessary to his
prosecution of legal actions that he had previously filed.
Plaintiff seeks declaratory and injunctive relief as well as
compensatory and punitive damages with respect to each
claim.

Plaintiff's application to proceed *in forma pauperis* is
granted. For the reasons set forth below, several of
plaintiff's claims are now dismissed pursuant to 28 U.S.C.
§§ (e)(2)(B) and 1915(A), and service by the U.S. Marshal
is directed with respect to the remaining claims.

DISCUSSION

Section 1915(e)(2)(B) of 28 U.S.C. provides that the
Court shall dismiss a case in which *in forma pauperis*
status has been granted if the Court determines that the
action: (I) is frivolous or malicious; (ii) fails to state a
claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief. In addition, 28 U.S.C. § 1915A(a) requires the
Court to conduct an initial screening of "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity," *id.*, regardless of whether or not the
inmate has sought *in forma pauperis* status under 28
U.S.C. § 1915.

In evaluating the complaint, the Court must accept as true
all factual allegations and must draw all inferences in
plaintiff's favor. See *King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957). "This rule applies with particular
force where the plaintiff alleges civil rights violations or
where the complaint is submitted *pro se."Chance v.
Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Based on its
evaluation of the amended complaint, the Court finds that
several of plaintiff's claims must be dismissed pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because
they fail to state a claim upon which relief may be granted.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

*1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)*

*(a) Due Process*

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that

following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Goord administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

**\*3** It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and a § 1983 cannot lie "unless ... the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. *Id.* at 487. The Supreme Court further held in *Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

imposed a loss of six months good time, his complaint is not barred under *Preiser* and *Heck* because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding in New York State Supreme Court.[FN1] *See, e.g.,Odom v. Pataki,* 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y.2001) ("[A]n inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

> FN1. Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection. The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that determination from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[FN2] (Compl. p. 5).

> FN2. The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.[FN3] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S.Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *SeeMiller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) (holding that, while *Sandin* did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

> FN3.*Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id. at 486, 115 S.Ct. at 2301,* and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487, 115 S.Ct. at 2302.

*4 Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g.,Welch v. Bartlett,* 196 F.3d 389, 393-95 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 8-9;*Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997). Several factors should be considered when assessing whether the particular

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

restrictions imposed on the prisoner are atypical and significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. *Wright,* 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. *Id.* Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a " 'detailed record' of the conditions of confinement relative to ordinary prison conditions." *Id.* at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). The Court in *Palmer* further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." *Id.* (citing *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of *Sandin.* In light of the Second Circuit's directive that the district court must develop a detailed record concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of atypicality," *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y.2004), the Court concludes that the complaint sufficiently alleges that plaintiff was deprived of a liberty interest.

*5 To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654. Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In light of the plaintiff's allegations, noted above, concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[FN4]

> **FN4.** The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his due process rights. A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). Under this requirement, there may be liability if:

(1) the defendant participated directly in the alleged

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. Montero v. Travis, 171 F.3d 757, 761-62 (2d. Cir.1999) (citing Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997)); see Neitzke v. Williams, 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement. Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against defendants Selsky and Goord. Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky responded on Goord's behalf, advising him that his appeal was denied. In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing. Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing. (Compl. pp. 6-7). Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and Goord with respect to plaintiff's due process claims.[FN5]

FN5. While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff. Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

**6 It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement. Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir.1995); see also Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."). Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part. Page v. Breslin, 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y.2004); Foreman v. Goord, 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y.2004). In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal involvement on the part of Goord. See Lunney v. Brureton, 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at *45-46 (S.D.N.Y.2005) (citing Sealy v. Giltner, 116 F.3d 47, 51 (2d cir.1997)) ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

*(b) Malicious Prosecution, First Amendment, Equal Protection*

In addition to his due process arguments, plaintiff's first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir.1996) (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991)). Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983. Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir.2004) (citing Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. Id. at 315.

*7 The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, see Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."), and plaintiff alleges no violation of Fourth Amendment rights. Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selsky denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl.P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. See, e .g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. See Colon, 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," Colon, 58 F.3d at 872, requiring " 'detailed fact pleading ... to withstand a motion to dismiss.' " Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983) (quoting Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir.1981)). To survive a motion to dismiss, such claims must be " 'supported by specific and detailed factual allegations,' " and should not be stated " 'in wholly conclusory terms.' " Friedl, 210 F.3d at 85-86 (quoting Flaherty, 713 F.2d at 13); see also Graham, 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir.1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (cited with approval in *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). See*Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (on remand, district court must consider the "serious question" of "whether the alleged acts of retaliation ... were more than *de minimis"* in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes,* 239 F.3d at 492.

**\*8** There is nothing in plaintiff's complaint to support his claim that his appeal from July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord beyond: (1) the temporal proximity between his filing of his complaint and the denial of his appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and Selsky in a second letter that he sent to Goord following the denial of his appeal. Plaintiff fails, however, to point to anything said or otherwise communicated to him by Goord or Selsky or by any other prison official or employee that supports his claim that defendants' denial of his appeal was intended to retaliate against him for exercising his First Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly conclusory and therefore that his First Amendment claims (free speech, right to petition) should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and second claims that would support his allegation that defendants Goord and Selsky violated his equal protection rights, and those claims must likewise be dismissed.

*2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)*

Plaintiff's third and fourth claims principally allege that prison officials took actions that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in

accordance with the prescribed kosher rules. Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu. (Compl. p. 8). Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates. Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices." He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.[FN6]

> FN6. Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983. Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights. Instead, plaintiff seeks to sue them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002); *Villante v. N.Y. State Dep't of Corr. Servs.,* 96-CV-1484, 2001 U.S. Dist. LEXIS 25208, at \*17 (N.D.N.Y.2001). This point was well-stated in *Joyner v. Greiner,* in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

**\*9** The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.

195 F.Supp.2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. *See,e.g.,Breslin,* 2004 U.S. Dist. LEXIS at \*21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); *Foreman,* 2004 U.S. Dist. LEXIS at \*21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29,

2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[FN7] Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

FN7. Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination. Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

**\*10** The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt, Clark, Held, Irizarry, McGinnis, and Sheahan.[FN8]

FN8. While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim *supra* ), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of religious discrimination and denial of due process. As explained by the Court in addressing plaintiff's third claim, *supra,* the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish requisite personal involvement in an alleged denial of a plaintiff's constitutional rights. *See, e.g.,Joyner v. Greiner,* 195 F.Supp. at 506. Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. *SeeSealey,* 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

*3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)*

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected. Plaintiff filed grievances with respect to these alleged interferences with his rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. *Ramsey v. Coughlin,* No. 94-CV-9S( F), 1 F.Supp.2d 198, 204-205 (W.D.N.Y.1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

**11** However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Chapius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. *See, e.g.,Page v. Breslin,* 2004 U.S. Dist. LEXIS at *21-22; *Foreman v. Goord,* 2004 U.S. Dist. LEXIS, at 19-22; *Joyner v. Greiner,* 195 F.Supp.2d at 15.

*CONCLUSION*

In accordance with the foregoing, the Court determines that:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

*ORDER*

IT HEREBY IS ORDERED that plaintiff's claims against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*12** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2005.
Ramsey v. Goord
Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

**C**   Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jonathan ODOM, Plaintiff,
v.
Ana E. CALERO, et al., Defendants.
**No. 06 Civ. 15527(LAK)(GWG).**

July 10, 2008.

*REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate
Judge.

**\*1** Jonathan Odom, currently an inmate at the Auburn
Correctional Facility, brings this suit *pro se* under 42
U.S.C. §§ 1983 and 1985 against employees of the New
York State Department of Correctional Services
("DOCS"). After the defendants filed a motion to dismiss,
the undersigned issued a Report and Recommendation
recommending that the motion be granted. Following
objections by plaintiff, the district judge granted the
defendants' motion to dismiss some of the claims but
sustained Odom's objection to dismissing two of the
claims on statute of limitations grounds. Thus, the instant
Report and Recommendation addresses the alternative
grounds raised in the motion to dismiss with respect to the
remaining two claims.

In the remaining causes of action, Odom alleges that, in
retaliation for testifying in 2001 regarding the assault of a
fellow inmate at the Sing Sing Correctional Facility ("Sing
Sing"), Correction Officers W. Perez and Brian McCoy
filed false misbehavior reports against him, and that
Hearing Officer Ana E. Calero violated his right to due
process through her conduct at his disciplinary hearings.
Following the hearings, Odom was sentenced to various
amounts of time in the Special Housing Unit ("SHU") at
Sing Sing. Odom further alleges that Brian Fischer, the

Superintendent of Sing Sing, and Donald Selsky, the
Director of the Special Housing/Inmate Disciplinary
Program, violated his right to due process by affirming the
decisions made at those hearings.

Defendants Perez and McCoy have never been served.
Defendants Calero, Fischer, and Selsky move to dismiss
Odom's claims for failure to state a claim and on qualified
immunity and Eleventh Amendment immunity grounds.
For the reasons stated below, the defendants' motion
should be granted in part and denied in part.

I. *BACKGROUND*

A. *Facts*

On this motion to dismiss, the Court assumes that the facts
alleged in Odom's complaint, amended complaint, and
affirmation in opposition to the motion are true. *See, e.g.,*
*Burgess v. Goord,* 1999 WL 33458, at \*1 n.1 (S.D.N.Y.
Jan. 26, 1999) (" 'the mandate to read the papers of *pro se*
litigants generously makes it appropriate to consider
plaintiff's additional materials, such as his opposition
memorandum' " (quoting *Gadson v. Goord,* 1997 WL
714878, at \*1 n.2 (S.D.N.Y. Nov. 17, 1997))); *accord*
*Torrico v. IBM Corp.,* 213 F.Supp.2d 390, 400 n.4
(S.D.N.Y.2002). In addition, "[d]ocuments that are
attached to the complaint or incorporated in it by reference
are deemed part of the pleading and may be considered."
*Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007).

Odom's allegations stem from an incident on May 27,
2001, in which he alleges that he witnessed Perez and
"other[ ] prison officials" assault another inmate. *See*
Amended Complaint, filed May 24, 2007 (Docket # 10)
("Am.Compl."), ¶ 12. Odom was issued approximately ten
misbehavior reports both before and after he testified at
the other inmate's disciplinary hearing. *Id.* ¶ 16; *see id.* ¶
¶ 24-25, 43-44. All of the charges against Odom were
dismissed at disciplinary hearings or on appeal before
Selsky, except for the charges considered at disciplinary
hearings held on June 7, 2001 and July 16, 2001. *Id.* ¶ 17.
Those charges resulted in Odom being sentenced to 455

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

days in the SHU. *Id.* ¶ 18. The charges considered at these hearings were ultimately dismissed on June 17, 2005, and December 30, 2005. *Id.* ¶ 17; *see* Exs. A, F to Am. Compl.

**\*2** In his first and second causes of action, Odom alleges violations of his due process rights. *Id.* ¶ 27; *see id.* ¶¶ 38; 56. Two Correction Officers, Perez and McCoy, filed misbehavior reports in retaliation for Odom's testifying about the assault of a fellow inmate in 2001. *See id.* ¶¶ 24-25, 44-45. Fischer caused Odom to be subjected to misbehavior reports and unfair disciplinary hearings, and he also assigned Calero as the hearing officer in order to violate Odom's due process rights. *Id.* ¶¶ 14, 28, 43, 46. Calero undertook "to act as [his] inmate assistant, and then did nothing to help assist [him]," *id.* ¶ 29; *see id.* ¶ 47; asked prison officials leading questions and "then provided most of their answers," *id.* ¶ 30; *see id.* ¶ 48; and "refused to allow [Odom] to call witnesses and precluded [him] from presenting a defense, resulting in him being found guilty with no evidence to support the charges," *id.* ¶ 31; *see id.* ¶ 49; Affirmation in Opposition to Defendants' Motion to Dismiss, filed Sept. 7, 2007 (Docket # 25) ("Pl.Aff."), ¶ 9 (Calero failed "to obtain the testimony of the witnesses requested by the plaintiff during his June 7, 2001 and July 16, 2001 disciplinary hearings"). Following one of the hearings, Calero told plaintiff to "mind his business next time." Am. Compl. ¶ 14.

Odom filed appeals with Fischer and Selsky after the disciplinary hearings. *Id.* ¶ 15. While neither Fischer nor Selsky "commit[ted] the due process violations," *id.* ¶ 32, 50, Fischer and Selsky "both became responsible for them[ ] when they ... failed to correct them in the course of their supervisory responsibilities," *id.* ¶ 32; *see id.* ¶ 50. They "refus[ed] to overturn [his] disciplinary conviction and expunge it, despite their knowledge of the ... due process violations." *Id.* ¶ 34; *accord id.* ¶¶ 50-52.

B. *Procedural History*

The original complaint was received by the Pro Se Office on June 27, 2006, and was filed on December 29, 2006. (Docket # 1). After submitting a "Supplemental Complaint" (filed May 4, 2007 (Docket # 7)), Odom filed the Amended Complaint on May 24, 2007, *see* Am.

Compl.

Defendants Calero, Fischer, and Selsky filed their motion to dismiss and supporting papers on August 22, 2007. *See* Notice of Motion, filed Aug. 22, 2007 (Docket # 20) ("Def.Not."); Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Aug. 22, 2007 (Docket # 21) ("Def.Mem."); Declaration of Jeb Harben, filed Aug. 22, 2007 (Docket # 22). Odom responded with an affirmation, *see* Pl. Aff., and the defendants filed a reply brief, *see* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Sept. 21, 2007 (Docket # 28) ("Def.Reply").

On February 19, 2008, the undersigned issued a Report and Recommendation recommending that all claims be dismissed. *Odom v. Calero,* 2008 WL 449677 (S.D.N.Y. Feb. 19, 2008). The district judge granted the defendants motion to dismiss claims three, four, five and six in the Amended Complaint, sustained Odom's objection to the dismissal of claims one and two on statute of limitations grounds, and referred the motion back to the undersigned to address the alternative grounds in defendants' motion to dismiss. *See* Order, filed Mar. 25, 2008 (Docket # 40). Odom responded to this order, *see* Affirmation in Reply to Judge Lewis A. Kaplan's March 27, 2008 Court Order, dated April 14, 2008 (Docket # 51), and defendants filed a motion for reconsideration, *see* Motion for Reconsideration, filed Apr. 9, 2008 (Docket # 42), which was denied, *see* Order, filed Apr. 15, 2008 (Docket # 45).

**\*3** Shortly before the denial of the motion for reconsideration, Odom submitted a motion for summary judgment. *See* Notice of Motion for Summary Judgment, dated April 14, 2008 (Docket # 48) ("S.J.Motion"); Plaintiff's Affirmation in Opposition to Defendants' Motion for Reconsideration and in Support of the Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 49); Brief in Support of Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 50); Statement of Undisputed Facts, dated April 14, 2008 (Docket # 52). As discussed below, the summary judgment motion should be denied for procedural reasons. Nonetheless, we have considered Odom's submissions in support of the summary judgment motion to the extent they are relevant to his opposition to the defendants' motion to dismiss.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

In addition to arguing for dismissal on statute of limitations grounds, Calero, Fischer, and Selsky moved to dismiss the complaint for failure to state a claim or "insufficient pleadings," qualified immunity, failure to allege a conspiracy, and Eleventh Amendment immunity. Def. Mem. at 5-17.

II. *DISCUSSION*

A. *Law Governing a Motion to Dismiss for Failure to State a Claim*

Under Fed.R.Civ.P. 8(a)(2), a pleading is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (some internal quotation marks and citation omitted). On a motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n.1 (2002).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and brackets omitted); *see also id.* at 1966 (pleading must "possess enough heft to show that the pleader is entitled to relief") (internal quotation marks, citation, and brackets omitted). Thus, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007).

For purposes of deciding a motion to dismiss, "[a]

document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks and citations omitted); *accord Boykin v. KeyCorp,* 521 F.3d 202, 213-14 (2d Cir.2008).

**\*4** Calero, Fischer, and Selsky argue that Odom has failed to "allege sufficient specific facts to support the stated causes of action," Def. Mem. at 7, by which they apparently mean to argue that he has failed to state a claim under Fed.R.Civ.P. 12(b)(6), *see* Def. Mem. at 4-5, 7 (citing *Bell Atl. Corp.*), 9-11; Def. Not. We now consider whether Odom's Amended Complaint states a claim against any of these defendants.

B. *Section 1983* Claims

To assert a claim under 42 U.S.C. § 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution or federal law by a defendant acting under the color of state law. 42 U.S.C. § 1983; *see West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights, but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999) (citations omitted), namely in the Constitution or federal statutes. Here it is undisputed that the defendants were acting under color of law. The only question is whether plaintiff has shown that they committed a violation of plaintiff's federal rights. In this case, the only violations that the complaint may be fairly read to assert are violations of the Due Process clause of the Fourteenth Amendment.

A party asserting a due process claim " 'must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)), *cert. denied,* 543 U.S. 1187 (2005). Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Hanrahan v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

Doling, 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.2004) (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998)).

"Segregation of longer than 305 days in standard SHU conditions is sufficiently atypical to require procedural due process protection under Sandin." Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir.2007). Odom alleges that he was sentenced to 455 days in the SHU as a result of the disciplinary hearings on June 7, 2001 and July 16, 2001, Am. Compl. ¶ 18, and defendants do not contest that Odom's confinement implicates a liberty interest. Thus, for the purposes of this motion we assume that Odom's sentence of confinement in the SHU implicates a liberty interest.

**\*5** We next address each defendant's arguments regarding whether Odom was deprived of his liberty through insufficient process.

*1. Calero*

As previously noted, Odom alleges that Calero violated his due process rights by the manner in which she conducted disciplinary hearings with respect to misbehavior reports on June 7, 2001 and July 16, 2001. *See* Am. Compl. ¶¶ 4, 17, 27-31, 46-49. Specifically, he alleges that "Calero ... violated the plaintiff's due process rights by failing (without rational explanation) to obtain the testimony of the witnesses requested by the plaintiff during his June 7, 2001 and July 16, 2001 disciplinary hearings." Pl. Aff. ¶ 9; *see* Am. Compl. ¶ 31 (Calero "refused to allow plaintiff to call witnesses and precluded the plaintiff from presenting a defense"); *accord id.* ¶ 49. Odom asserts that in one of the hearings he requested that Calero call "several inmates as witnesses" for him and "provided their cell locations," Declaration in Support of Plaintiff's Motion for Summary Judgment, dated Apr. 14, 2008 (attached to S.J. Motion), ¶ 3, but that she refused to

call them on the ground that "staff reports gave a 'full picture' of the incident," *id.* ¶ 4. "The evidence at the hearing consisted solely of the written report of defendant Perez, inmate Hurt's and my neighbor W16 cell and my testimony" [sic]. *Id.* ¶ 5.

In addition, Odom alleges that he was not afforded "the right to a fair and impartial hearing officer" in his disciplinary hearings. Am. Compl. ¶ 27; *accord id.* ¶ 48. Specifically, he alleges that Calero asked prison officials leading questions and provided "most of their answers." *Id.* ¶ 30; *accord id.* ¶ 48.

According to the Second Circuit:

The due process protections afforded a prison inmate do not equate to "the full panoply of rights" due to a defendant in a criminal prosecution. *Wolff v. McDonnell,* 418 U.S. at 556, 94 S.Ct. 2963. Notably, there is no right to counsel or to confrontation at prison disciplinary hearings. *See id.* at 567-70, 94 S.Ct. 2963. Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *See id.* at 563-67, 94 S.Ct. 2963; *accord Luna v. Pico,* 356 F.3d at 487; *Kalwasinski v. Morse,* 201 F.3d at 108.

Sira v. Morton, 380 F.3d 57, 69 (2d Cir.2004).

Construing the complaint in the manner most favorable to plaintiff, Odom's allegations that he was not given a reasonable opportunity to call witnesses and that Calero "provided answers" to questions asked at the hearings are sufficient to state a claim for violation of his due process rights. The defendants' argue that the allegations are infirm because Odom does not give sufficient factual details such as the names of witnesses that he would have called or the evidence he would have presented. Def. Mem. at 7. At this stage of the litigation, however, when only a "short and plain statement" of a claim is required by Fed.R.Civ.P. 8(a)(2), and where the plaintiff is proceeding *pro se,* such

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

factual detail is not required in the complaint.

**\*6** The defendants also argue that Odom has failed to state
a claim because there was some evidence on which Calero
could reasonably relied in making her decisions at
the disciplinary hearings. Def. Mem. at 10; Def. Reply at
4. Certainly, a hearing decision will be upheld if there is
"any evidence" in the record to support it. *Friedl v. City of
New York,* 210 F.3d 79, 85 (2d Cir.2000) (emphasis
omitted). But this argument fails for two reasons. First, it
requires the Court to look outside the record on a motion
to dismiss. Second, it does not address the question of
whether Calero committed a due process violation. By
asking the Court to judge the decision based on the record
that Calero allowed to be created, the defendants ignore
the allegations that Odom was not given a reasonable
opportunity to call witnesses in order to create a proper
record in the first place.

2. *Fischer and Selsky*

The defendants argue that Odom has failed to allege the
personal involvement of Fischer and Selsky in any
constitutional violation. Def. Mem. at 9. "It is well settled
in this Circuit that personal involvement of defendants in
alleged constitutional deprivations is a prerequisite to an
award of damages under § 1983." *Farrell v. Burke,* 449
F.3d 470, 484 (2d Cir.2006) (internal quotation marks and
citation omitted). In addition, personal liability under
section 1983 cannot be imposed upon a state official based
on a theory of *respondeat superior. See, e.g., Hernandez
v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) ( "supervisor
liability in a § 1983 action depends on a showing of some
personal responsibility, and cannot rest on *respondeat
superior*" ), *cert. denied,*543 U.S. 1093 (2005); *accord
Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).
According to the Second Circuit,

The personal involvement of a supervisor may be
established by showing that he (1) directly participated
in the violation, (2) failed to remedy the violation after
being informed of it by report or appeal, (3) created a
policy or custom under which the violation occurred, (4)
was grossly negligent in supervising subordinates who
committed the violation, or (5) was deliberately
indifferent to the rights of others by failing to act on

information that constitutional rights were being
violated.

*Iqbal,* 490 F.3d at 152-53 (citing *Colon v. Coughlin,* 58
F.3d 865, 873 (2d Cir.1995)).

Odom's central allegation is that Fischer and Selsky
violated his rights by not overturning Calero's decisions
when he appealed the disciplinary hearing decisions to
them. Odom argues that Fischer and Selsky "both became
responsible" for the due process violations committed at
the hearings "when they ... failed to correct [the violations]
in the course of their supervisory responsibilities." Am.
Compl. ¶¶ 32, 50. He alleges that they "refus[ed] to
overturn [his] disciplinary conviction and expunge it,
despite their knowledge of the ... due process violations."
*Id.* ¶ 34; *accord id.* ¶¶ 50-52. While the source of that
knowledge is not identified, the context of allegations
make clear that it could only have been derived from their
review of Odom's assertions as part of the appeal process
itself. Indeed, in another submission, Odom asserts that he
"identified the due process violations in his discretionary
appeal and direct appeal letters," and that as a result
"Fischer and Selsky both knew just what to look for." Pl.
Aff. ¶ 12.

**\*7** These allegations are insufficient to show personal
involvement in the due process violation alleged to have
been committed by Calero. Odom concedes that neither
Fischer nor Selsky "commit[ted] the due process
violations" themselves. Am. Compl. ¶¶ 32, 50. Rather,
Calero is alleged to have committed the alleged due
process violation. Once the hearing was over and her
decision was issued, the due process violation was
completed. The only opportunity that Fischer or Selsky
had to rectify this violation was through the appeal process
itself.

The only method outlined by the Second Circuit by which
personal involvement may be shown potentially relevant
here is that Fischer and Selsky, "after being informed of
the violation through [the appeals], failed to remedy the
wrong." *Colon,* 58 F.3d at 873. This method does not
apply here, however, because-as has been noted in a
related context-"affirming the administrative denial of a
prison inmate's grievance by a high-level official is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca,* 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citing, *inter alia, Foreman v. Goord,* 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement.")). As was noted in *Thompson v. New York,* 2001 WL 636432 (S.D.N.Y. Mar. 15, 2001), "[w]ere it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Id.* at *7 (internal citations omitted). The reference in case law to an official who "fails to remedy" a violation logically applies only to ongoing, and therefore correctable, constitutional violations-not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded. As was held in *Harnett v. Barr,* 538 F.Supp.2d 511 (N.D.N.Y.2008), "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Id.* at 524;*accord Thompson,* 2001 WL 636432, at *7 ("The Second Circuit's reference to the failure by a supervisor to remedy a known wrong seems to have a different focus. As worded, it appears to address cases involving continuing unconstitutional prison conditions that the warden may be proven or assumed to know about, and a refusal by the warden to correct those conditions."). In this case, any constitutional violation allegedly committed by Calero was concluded by the time Fischer and Selsky were called upon to review it. Accordingly, they were not "personally involved" in committing the alleged due process violations.[FN1]

FN1. Odom has made other allegations against Fischer that are too vague and conclusory to state a claim for a due process violation, such as the assertion that Fischer "subjected" Odom to four of the misbehavior reports after Odom testified at the other inmate's disciplinary hearing. Am. Compl. ¶ 43. Another assertion-that Fischer intentionally assigned Calero as the hearing officer at both hearings in order to violate Odom's due process rights, *id.* ¶¶ 14, 28, 46-is insufficient to show personal involvement inasmuch as it was Calero's responsibility to act

as an impartial hearing officer. To fault Fischer, as a supervisory official, for giving her this assignment is tantamount to arguing that he failed in his supervisory responsibilities. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

C. *Qualified Immunity*

**8** The defendants assert that they are entitled to qualified immunity. Def. Mem. at 11. The doctrine of qualified immunity precludes civil liability where prison officials performing discretionary functions " 'did not violate clearly established rights or if it would have been objectively reasonable for the official[s] to believe [their] conduct did not violate plaintiff's rights.' " *Reuland v. Hynes,* 460 F.3d 409, 419 (2d Cir.2006) (quoting *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003)), *cert. denied,* 128 S.Ct. 119 (2007); *accord Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (qualified immunity ensures that defendants have "fair notice" that their conduct is unlawful before being exposed to liability, and "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' " (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987))). A qualified immunity defense may be asserted as part of a motion under Fed.R.Civ.P. 12(b)(6) if it is based on facts appearing on the face of the complaint, though defendants asserting the defense at this stage face a "formidable hurdle." *McKenna v. Wright,* 386 F.3d 432, 434-35 (2d Cir.2004).

With respect to Calero, the defendants' brief makes no argument that the rights of a prisoner to due process at a disciplinary hearing under the standard set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not clearly established at the time of Odom's hearings. *See* Def. Mem. at 11-12. Instead, they seem to argue that Calero's actions were objectively reasonable. *Id.* But their only support for this argument is material outside the record, *see id.* at 11, and their claim that the decision on the disciplinary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

hearings must have been justified by the evidence presented at the hearing. As noted previously, however, the issue is whether the complaint alleges that Calero committed a due process violation-not whether the decision was justified by record.

"In analyzing whether the defense of qualified immunity may be successfully invoked on a motion to dismiss, the court need look no further than the complaint's allegations regarding the specific procedural protections allegedly denied the plaintiff. If the entitlement to those protections was 'clearly established' at the time of the administrative hearing ... then the defense is unavailable." *Wright v. Dee,* 54 F.Supp.2d 199, 207 (S.D.N.Y.1999). Calero does not contest that it was clearly established at the time of Odom's hearings that he was entitled to call witnesses on his behalf, *see, e.g., Sira,* 380 F.3d at 69, and that he was entitled to an impartial hearing officer, *see, e.g., Allen v. Cuomo,* 100 F.3d 253, 259 (1996). Odom alleges that these procedural protections were denied him. Thus, Calero has not shown that the complaint establishes that she is entitled to qualified immunity for Odom's due process claims.[FN2]

> FN2. While it is clear in the Amended Complaint that Odom is alleging that Perez and McCoy filed the misbehavior reports in retaliation for Odom's testifying at another inmate's disciplinary hearing, Am. Compl. ¶¶ 24-25, 44-45, no retaliation claim has been asserted against Calero. To the extent the complaint could be construed as making such a claim against Calero, it would have to be dismissed because it is not clearly established in this Circuit that a prisoner has a constitutional right to testify in a disciplinary hearing of another inmate. *See Pettus v. McGinnis,* 533 F.Supp.2d 337, 340 (W.D.N.Y.2008) ("This Court has found no authority ... that even today clearly establishes within this circuit whether an inmate's testimony on behalf of another inmate at the other inmate's disciplinary hearing is constitutionally protected.") (dismissing claim of retaliation) (emphasis omitted).

D. *Claims Under 42 U.S.C. § 1985*

*9 Odom also purports to assert conspiracy claims under 42 U.S.C. § 1985. *See* Am. Compl. at 1. "To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." *Porter v. Selsky,* 287 F.Supp.2d 180, 187 (W.D.N.Y.2003) (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)), *aff'd on other grounds,* 421 F.3d 141 (2d Cir.2005). There are no explicit allegations of conspiracy in the Amended Complaint, however. When this issue was raised by defendants in their motion, Odom's response, *see* Pl. Aff. ¶ 46, pointed to scattered allegations in the Amended Complaint that particular defendants "acted alone and/or in conjunction with another named defendant." *See, e.g.,* Am. Compl. ¶¶ 28, 31, 32, 46, 50. Nothing in Odom's allegations, however, shows that the elements of a section 1985 claim, quoted above, have been met.

E. *Eleventh Amendment*

The defendants argue that "[i]f claims are being made against defendants in their positions of authority within DOCS, those claims are essentially claims against DOCS or the State of New York and are barred." Def. Mem. at 17. Odom does not address this argument.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the language of the Eleventh Amendment is not literally applicable to suits brought by citizens of the state being sued, the Supreme Court has long held that it bars such suits as well. *See, e.g., Employees of Dep't of Pub. Health and Welfare v. Dep't of Pub. Health and Welfare,* 411 U .S. 279, 280 (1973). Thus, "[i]t is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (citations omitted). The Supreme Court has also explicitly held that 42 U.S.C. § 1983 is not a statute that abrogates the States' sovereign

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
(Cite as: 2008 WL 2735868 (S.D.N.Y.))

immunity. *See Quern v. Jordan,* 440 U.S. 332, 340-45 (1979).

The bar imposed by the Eleventh Amendment "remains in effect when State officials are sued for damages in their official capacity ." *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Thus, the Eleventh Amendment bars suits against individual employees of the State who are named as defendants in their official capacities. *See, e.g., Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003); *Eng v. Coughlin,* 858 F.2d 889, 894 (2d Cir.1988). Accordingly, to the extent that Odom intends to state claims for money damages against Calero or any other defendant in their official capacities, such claims must be dismissed.

E. *Odom's April 14, 2008 Motion for Summary Judgment*

**\*10** Odom recently filed a motion for summary judgment (Docket # 48). This motion should be denied for two reasons. First, its statement of material facts (Docket # 52) violates Local Civil Rule 56.1(d) inasmuch as none of the statements are "followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Second, discovery has not yet begun in this case. Thus, a motion for summary judgment is premature and would merely result in a denial pursuant to Fed.R.Civ.P. 56(f). Odom previously filed a motion for summary judgment and it was denied for precisely this reason. *See* Order, filed Nov. 30, 2007 (Docket # 36) (available at: *Odom v. Calero,* 2007 WL 4191752 (S.D.N.Y. Nov. 28, 2007)).

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the first and second causes of action (Docket # 20) should be granted in part and denied in part, with the only claim to proceed being the due process claim against Calero. Odom's motion for summary judgment (Docket # 48) should be denied.

*PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2008.
Odom v. Calero
Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.

Delville BENNETT, Plaintiff,

v.

Brian FISCHER, Dale Artus, and H. Martin, Defendants.

Civil Action No. 9:09-CV-1236 (FJS/DEP).

Aug. 17, 2010.

Delville Bennett, Stormville, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Adam W. Silverman, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Delville Bennett, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against the Commissioner of the New York State Department of Correctional Services ("DOCS") and two other DOCS employees, alleging violation of his constitutional rights. In his complaint, plaintiff alleges that as a result of his participation in a congregate religious service he was issued a false misbehavior report accusing him of creating a disturbance, engaging in an unauthorized demonstration, and refusing a direct order, leading to a disciplinary hearing and a finding of guilt on two of the three charges. Plaintiff maintains that defendants' actions violated his First Amendment right to freely exercise his chosen religion, and additionally asserts violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. As relief, plaintiff seeks recovery of compensatory and punitive damages in the amount of $500,000 each.

Currently pending before the court is defendants' pre-answer motion for summary judgment dismissing plaintiff's claim based upon his failure to exhaust available administrative remedies and additionally, as against two of the named defendants, on the ground that they were not personally involved in the violations alleged. Having carefully reviewed the record in light of defendants' motion, which plaintiff has opposed, I recommend that it be granted in part.

I. *BACKGROUND*[FN1]

FN1. In light of the procedural posture of the case the following recitation is derived from the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

record now before the court with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

Plaintiff is a New York State prison inmate entrusted to the care and custody of DOCS. *See generally* Complaint (Dkt. No. 1). At the times relevant to the claims set forth in his complaint, Bennett was designated to the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York. *Id.*

Plaintiff's claims grow out of his September 21, 2008 attendance at a Pentecostal Christian service held at Clinton, during which he served as a member of the choir and participated in dancing and singing associated with the event.[FN2] *Id.* at ¶¶ 6-7. Plaintiff alleges that after the conclusion of the service he continued "singing and dancing like 'KING DAVID' did ... approximately 6 to 7 feet from the alter in the isles as the Spirit of the Lord led him", Bennett Aff. (Dkt. No. 16) ¶ 4, and that as he exited the chapel area following the service he was confronted by defendant H. Martin, a corrections officer, and asked to produce his identification card, which the officer then confiscated. Complaint (Dkt. No. 1) ¶¶ 8-9. Plaintiff further alleges that he was then placed in keeplock confinement, and that defendant Martin later issued a misbehavior report accusing Bennett of creating a disturbance, participating in an unauthorized demonstration, and refusing to obey direct order.[FN3] *Id.* at ¶ 10; Bennett Aff. (Dkt. No. 16) ¶ 6.

FN2. Plaintiff's complaint is equivocal as to whether the relevant occurrences giving rise to his claims occurred in September of 2008, or instead one year later. *See, e.g.* Complaint (Dkt. No. 1) ¶ 6 (alleging that the relevant events were set in motion on September 21, 2009) and ¶ 11 (alleging that the resulting disciplinary hearing occurred on September 25, 2008). Plaintiff's

prison records reflect that he was designated to the Clinton Correctional Facility, where the relevant events took place, from January of 2008 through April of 2009. *See* Brousseau Aff. (Dkt. No. 14-2) ¶ 12. Accordingly, it appears that the incidents upon which plaintiff's claims are based occurred in September of 2008.

FN3. Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens; Tinsley v.. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

A Tier II I disciplinary hearing was conducted on September 25, 2008 to address the charges set forth in the misbehavior report.[FN4] Complaint (Dkt. No. 1) ¶ 11; *see also* Bennett Aff. (Dkt. No. 16) Exhs. D and E. At the conclusion of that hearing plaintiff was found guilty of creating a disturbance and refusing to obey a direct order, but was acquitted of the demonstration charge.[FN5]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

Complaint (Dkt. No. 1) ¶ 11; Bennett Aff. (Dkt. No. 16) ¶ 10.

FN4. The DOCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments, such as the loss of recreation privileges. Tier II hearings involve more serious infractions and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

FN5. The record now before the court does not disclose the penalty imposed by the hearing officer based upon his finding of guilt.

II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on November 4, 2009. Complaint (Dkt. No. 1). As defendants, plaintiff's complaint names DOCS Commissioner Brian Fischer; Dale Artus, the Superintendent at Clinton; and Corrections Officer H. Martin. *Id.* The causes of action asserted by the plaintiff include violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution. *See generally id.*

Following some initial procedural activity, including the granting of plaintiff's request for leave to proceed *in forma pauperis* and approval of plaintiff's complaint for filing, Dkt. Nos. 4, 8, but prior to answering the complaint, on February 25, 2010 the defendants moved for summary judgment dismissing plaintiff's complaint.[FN6] Dkt. No. 14. In their motion, defendants assert that plaintiff's claims are subject to dismissal on the procedural ground that he failed to satisfy his obligation to exhaust available administrative remedies before commencing the action. *See* Dkt. No. 14, at pp. 4-9. In addition, defendants Fischer and Artus maintain that plaintiff's claims against them are subject to dismissal based upon their lack of personal involvement in the constitutional violations alleged. *Id.* On March 22, 2010, plaintiff's submission in opposition to defendants' motion was received and filed by the court. Dkt. No. 16. Defendants have since replied in response to that submission and in further support of their summary judgment motion. Dkt. No. 17.

FN6. Unlike its Rule 12(b) dismissal motion counterpart, a summary judgment motion does not have the effect of automatically staying the requirement of answering a plaintiff's complaint. *Compare* Fed.R.Civ.P. 12(b)(6) *with* Fed.R.Civ.P. 56. Despite the lack of a specific rule recognizing such a stay, some courts have deemed the interposition of a pre-answer summary judgment motion as an act of defending in the case, negating a finding of default, while others have not. *Compare Rashidi v. Albright,* 818 F.Supp. 1354, 1355-56 (D.Nev.1993) *with Poe v. Christina Copper Mines, Inc.,* 15 F.R.D. 85, 87 (D.Del.1953). In this instance, exercising my discretion, I will *sua sponte* order a stay of defendants' time to answer plaintiff's complaint until twenty days after a final determination is issued with respect to defendants' motion, in the event that the action survives summary judgment. *See Snyder v. Goord,* 9:05-CV01284, 2007 WL 957530 at \*5 (N.D.N.Y. Mar. 29, 2007) (McAvoy, S.J. and Peebles, M.J.).

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*3** When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is

no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. *Failure to Comply with Local Rule 7.1(a)(3)*

In support of their motion, defendants have submitted a statement of four material facts alleged by them not to be in dispute, as required under Rule 7.1(a)(3) of this court's local rules.[FN7] Dkt. No. 53-7. While plaintiff has filed papers in opposition to defendants' motion, he did not include among them a response to defendants' Local Rule 7.1(a)(3) Statement.

FN7. That rule provides, in pertinent part, that "[a]ny motion for summary judgment shall contain a Statement of Material Facts [which] shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

listed shall set forth a specific citation to the record where the fact is established...." N.D.N.Y.L.R. 7.1(a)(3).

This court's local rules require that any party opposing a motion for summary judgment must file a response to the moving party's statement of material facts, mirroring the statement and specifically admitting or denying each of the numbered paragraphs. N.D.N.Y.L.R. 7.1(a)(3). The rule goes on to provide that "any facts set forth in the Statement Material Facts shall be deemed admitted unless specifically controverted by the opposing party." *Id.* (emphasis omitted). Plaintiff was reminded of the requirements of Local Rule 7.1(a)(3) in a form notice pursuant to Local Rule 56.2 that accompanied defendants' notice of motion. *See* Dkt. No. 14.

Plaintiff's papers in opposition to the defendants' summary judgment motion fail to comply with this meaningful requirement. Courts in this district have uniformly enforced Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts set forth in a moving party's statement to have been admitted in similar circumstances, where the party opposing the motion has failed to properly respond. *See, e.g., Elgamil v. Syracuse Univ.,* No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases) [FN8]; *see also Monahan v. New York City Dep't. Of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)). In light of plaintiff's demurrer in connection with defendants' Local Rule 7.1(a)(3) Statement, I recommend that the court consider each of the facts asserted in it to have been deemed admitted by the plaintiff for purposes of the instant motion.

FN8. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

## C. *Failure to Exhaust Administrative Remedies*

**\*4** In their motion, defendants allege that a search of grievance records at Clinton has revealed that although plaintiff filed nine grievances while at that facility, none involved the September, 2008 incident now forming the basis for his claims.[FN9] As a threshold procedural matter, defendants contend that plaintiff is therefore precluded from judicial pursuit of his claims based upon his failure to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a).

FN9. In support of their motion, defendants have submitted an affidavit from Tara Brousseau, the Inmate Grievance Supervisor at Clinton, disclosing that nine grievances were filed by the plaintiff while incarcerated at Clinton from January 2008 through April 2009, addressing various subjects, including (1) deadline access (6/11/08), (2) outgoing mail delay (6/18/08), (3) denture repair (7/2/08), (4) missing property (12/23/08), (5) being singled out by a C.O. (1/5/09), (6) being told to quiet down (1/8/09), (7) headcove ring/d reads (1/8/09), (8) adequate medical treatment (2/17/09), and (9) retaliation by a C.O. (3/16/09). Brousseau Aff. (Dkt. No. 14-2) ¶ 13 and Exh. B.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits," *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see* *Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382 (2006); *Hargrove v.. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 914-15 (2007) (citations omitted); *see also Woodford,* 548 U.S. at 91-92, 126 S .Ct. at 2386; *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

In the event a defendant named in a prisoner action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See* *Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94-95, 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford).* While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F .3d at 43 (quoting *Johnson,* 380 F.3d at 697-98) (emphasis omitted).

**\*5** New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[FN10] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia,* *Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

> FN10. The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

In the face of defendants' submissions, plaintiff offers an affidavit in which he claims to have filed a grievance with the IGRC at Clinton regarding the matters alleged in the complaint. *See* Bennett Aff. (Dkt. No. 16) ¶ 7 and Exh. D and E. This allegation is squarely in conflict with the defendants' submissions, and in particular with that portion of the Brousseau affidavit reflecting that grievances filed with the IGRC are logged in and electronically stored, and a search of those records has failed to substantiate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

plaintiff's claim. Brousseau Aff. (Dkt. No. 14-2) ¶¶ 8-11.

It is unclear from plaintiff's submission whether what plaintiff has referred to as a grievance may actually have been an appeal to the superintendent from his Tier III hearing and its results, or if he claims to have pursued both. The exhibits attached to plaintiff's affidavit in opposition to defendants' motion include a form document entitled "Appeal Form to the Commissioner from Superintendent's Hearing" (the "Appeal Form"), which is signed by Bennett and dated October 20, 2008, and which refers to a hearing date of September 25 and 26, 2008, Bennett Aff. (Dkt. No. 16) Exh. D. Under the specific grounds for the appeal, the form states "please see attached." Attached to Appeal Form is a typewritten document labeled "grievance", dated October 9, 2008, and signed by Bennett as "grievant"; the document is not addressed to any specific individual or entity within the facility. *Id.* Exhs. D-1 and D-2. In essence, the stated basis for the grievance relates to the manner in which the hearing officer conducted the hearing as well as his ultimate determination.

**\*6** The second document attached to the Appeal Form is a separate typewritten document, also labeled "Appeal Form to Commissioner Superintendent's Hearing".[FN11] *Id.* at Exhs. E1 and E2. This document, which is dated October 20, 2008, does not appear to be written in a standard DOCS form, but instead is seemingly a document typewritten by or for the plaintiff setting forth in a narrative fashion the basis for his appeal. *See id.* This second document expressly states that Bennett is appealing from the decision made by Hearing Officer Barton, and in it plaintiff specifically requests that the DOCS Commissioner reverse the hearing officer's determination and dismiss the charges and expunge them from his record. *Id.* at E2.

> FN11. There is no information in the record now before the court as to the outcome of any such appeal.

1. *Plaintiff's First and Eighth Amendment Claims*

To the extent plaintiff contends that he exhausted his administrative remedies with respect to his First and Eighth Amendment claims by pursuing his disciplinary appeal, the argument is unavailing. It is well-established that while placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense," an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson,* 380 F.3d at 697-98 (emphasis omitted). "An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance." *LaBounty v. Johnson,* 253 F.Supp.2d 496, 501-502 (W.D.N.Y.2003) (citing *McNair v. Sgt. Jones,* No. 01 Civ. 3253, 2002 WL 31082948, \*7 (S.D.N.Y. Sept. 18, 2002) (dismissing § 1983 where plaintiff failed to exhaust administrative remedies despite having appealed from disciplinary hearing on the same facts alleged in support of his excessive force claim).

While referencing his First Amendment Rights, plaintiff's disciplinary appeal does not mention any claim of cruel and unusual punishment. Moreover, while plaintiff's articulation of his religious exercise claim during his disciplinary proceedings may have represented substantive exhaustion of his First Amendment claim, by raising it in defense of the misbehavior report at issue plaintiff did not fulfill his obligation to procedurally exhaust available remedies with regard to this claim. The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials. *Hairston v. LaMarche,* No. 05 Civ. 6642, 2006 WL 2309592, at \*10 (S.D.N.Y. Aug. 10, 2006). Here, Bennett did not fulfill his procedural exhaustion requirement that by "compl[ying] with the system's critical procedural rules." *Woodford,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

548 U.S. at 95, 126 S.Ct. at 2388; *Macias,* 495 F.3d at 43; *see also Johnson,* 380 F.3d at 697-98. The mere utterance of his claims during the course of a disciplinary hearing does not obviate the requirement that he file a grievance setting forth a claim which is based upon the same or closely related facts. *Revnoso v. Swezey,* 423 F.Supp.2d 73, 74-75 (W.D.N.Y.2006). FN12 For these reasons, plaintiff's argument that he exhausted his First and Eighth Amendment claims by way of his disciplinary appeal must fail.

> FN12. In this regard the circumstances of this case are materially distinguishable from other instances where the raising of constitutional claims during a disciplinary hearing has resulted in thorough investigation of the matter by prison officials. *See, e.g., Hairston,* 2006 WL 2309592, at *8-11. In this case, there is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights were in any way investigated by prison officials.

**\*7** Turning to the separate question of whether plaintiff adequately exhausted his administrative remedies through the grievance process, insofar plaintiff claims the grievance attached to his affidavit was filed with the IGRC, there is a factual dispute since defendants' deny this contention. Ordinarily such a conflict would preclude summary judgment. In this instance, however, though plaintiff makes reference to a response from the superintendent, *see* Plf.'s Memorandum (Dkt. No. 16) ¶ 12, there is no indication that the alleged grievance concerning the matter was pursued by the plaintiff to the CORC, a requirement in order to properly exhaust administrative remedies and thereby satisfy the PLRA's exhaustion requirements. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). As a result, I have concluded that plaintiff has failed to exhaust administrative remedies with regard to his First and Eight Amendment claims.

In his opposition papers, plaintiff has raised another matter which gives room for pause. Plaintiff's submission alleges that, upon being relocated on December 9, 2008 from Clinton to the Clinton Correctional Facility Annex, certain of his personal property, which included grievance files, was misplaced. Bennett Aff. (Dkt. No. 16) ¶ 8. Under ordinary situations this could plausibly serve to satisfy the "special circumstances" test for excusing the applicable PLRA exhaustion requirement. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004).FN13 When examining the third, catch-all factor of the three-part exhaustion rubric announced by the Second Circuit in a series of decisions rendered in 2004, a court should consider whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir.2004); *Hargrove,* 2007 WL 389003, at *10.

> FN13. The question of whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford,* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* No. 04-CV-395, 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.)

The relevant chronology in this case fails to support plaintiff's claim that through special circumstances, principally due to his lost files, he was precluded from pursuing his grievance to completion to the CORC. Plaintiff claims that he exhausted his grievance up to the superintendent's level. Plaintiff's Memorandum (Dkt. No. 16) ¶ 5. Assuming the grievance submitted by the plaintiff in fact constitutes a grievance that was submitted to but denied by the IGRC, while his appeal to the superintendent is not date stamped, as ordinarily would be the case upon receipt of an inmate's appeal of the IGRC determination, *see* 7 N.Y.C.R.R. § 701.5(c)(3), the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

documents are dated October 9, 2008; presumably, it was submitted to Superintendent Artus on or about that date. Under the New York IGP in a matter such as this, which does not involve creation or revision of a department policy or directive, the superintendent is required to answer the appeal within twenty calendar days of its receipt, *see* 7 N.Y.C.R.R. § 701.5(c)(3)(i), and any appeal from such a determination must be taken within seven calendar days after receipt of the superintendent's response. *Id.* § 701.5(d)(1)(i). Accordingly, under this time frame both the superintendent's response and plaintiff's appeal to the CORC would have been completed prior to December 9, 2008, when, plaintiff maintains, his grievance papers were lost or stolen.[FN14] Accordingly, plaintiff's circumstances do not qualify as "special" under Hemphill.

> FN14. Even if the Appeal Form, the second document attached to plaintiff's affidavit, was actually intended as an appeal of the grievance denial to the superintendent, and not a disciplinary appeal to the Commissioner, the chronology still would not support plaintiff's position because the Appeal Form is dated October 20, 2008; once again, any response by the superintendent would have been received by plaintiff on or about November 9, 2008 and the deadline for an appeal to the CORC would have been November 16, 2008, at least three weeks before plaintiff's transfer and the loss of his property.

*8 Because in the face of defendants' submissions, plaintiff has failed to establish that he filed and pursued to completion a grievance pursuant to the New York IGP relating to his religious exercise and cruel and unusual punishment claims, I recommend that these claims be dismissed on this procedural basis.

2. *Plaintiff's Due Process Claim*

Although plaintiff's complaint makes only passing reference to the Fourteenth Amendment and provides no allegations of fact that might support a procedural due process claim, when it is construed liberally in light of his motion response, it appears that plaintiff may also be making a claim for violation of his right to due process with respect to the disciplinary hearing. This claim, in contrast to plaintiff's First and Eighth Amendment claims, cannot so easily be dispensed with on exhaustion grounds.

Under the special circumstances exception to exhaustion, "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding."[FN15] *Murray v. Palmer,* No. 9:03-CV-1010, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, D.J.) (emphasis omitted) (citing *Giano,* 380 F.3d at 678-79; *Johnson,* 380 F.3d at 697). An appeal from a disciplinary hearing that raises the precise procedural infirmities raised in the section 1983 action, for example, may be sufficient to exhaust administrative remedies. *LaBounty,* 253 F.Supp.2d at 502 n. 5 (citing and quoting *Flanagan v. Maly,* 99 Civ. 12336, 2002 WL 122921, *2 (S.D.N.Y. Jan. 29, 2002)). In *Flanagan,* the court declined to dismiss the plaintiff's due process claim for failure to exhaust, reasoning that

> FN15. Notably, " 'an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable.' " *Murray,* 2010 WL 1235591, at * 3 (quoting 7 N.Y.C.R.R. § 701.3(e)(2)).

[t]o require Flanagan to file an administrative grievance in these circumstances would be absurd, and Congress cannot have intended such a requirement. When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

separate grievance instead of or in addition to his ordinary appeal. Pursuit of the appellate process that the state provides fulfills all the purposes of the exhaustion requirement of § 1997a(e), by giving the state an opportunity to correct any errors and avoiding premature litigation. Once the alleged deprivation of rights has been approved at the highest level of the state correctional department to which an appeal is authorized, resort to additional internal grievance mechanisms would be pointless.

*Flanagan,* 2002 WL 122921, at * 2. Although the Second Circuit has not squarely addressed the issue, at least one court within this Circuit has endorsed the court's reasoning in *Flanagan* and refused to require exhaustion where an inmate has pursued his disciplinary appeals to the highest levels without success and then claimed due process violations with respect to the disciplinary hearing in the context of a section 1983 action. *Khalid v. Reda,* No. 00 Civ. 7691, 2003 WL 42145, at * 4 (S.D.N.Y. Jan. 23, 2003) (citing *Samuels v. Selsky,* No. 01 CIV.8235, 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002)).

**\*9** Here, as discussed above, in opposition to defendant's motion plaintiff has submitted what appears to be an appeal of his disciplinary determination. For Tier III superintendent hearings, the appeal is to the Commissioner, or his designee, Donald Selsky, DOCS Director of Special Housing/Inmate Disciplinary Program. *Murra* y, 2010 WL 1235591, at *2 (citing 8 N.Y.C.R.R. § 254.8). The document attached to plaintiff's affidavit in opposition to defendant's motion, Dkt. No. 16, the Appeal Form, appears to be an appeal to the Commissioner of the determination after the superintendent's disciplinary hearing, and it thus seems at least plausible that plaintiff appealed to the highest level available within the DOCS. [FN16] In that document, as grounds for his appeal plaintiff asserts objections to the hearing officer's conduct of the hearing as well as his ultimate determination, claims a violation of his First Amendment rights, and requests reversal of the hearing officer's determination and expungement of the proceeding from his disciplinary record.

[FN16.] Defendants make much of the fact that although this document is dated October 20, 2008, it was notarized on March 17, 2010, implying that the disciplinary appeal was not filed until March 17, 2010. Notably, however, defendants have not submitted anything in evidentiary form refuting plaintiff's claim that he timely pursued this appeal. Plaintiff's affidavit in opposition to defendants' motion, to which the disciplinary appeal is attached, is dated March 12, 2010, but was notarized on March 17, 2010. Thus, it seems clear that in addition to notarizing the plaintiff's affidavit on that date, the notary also inadvertently notarized the attachment thereto.

Unfortunately, the record is not fully developed with respect to the procedures followed with regard to plaintiff's disciplinary hearing and the ultimate disposition of the charges or the appeal, and defendants have completely failed to address the merits of plaintiff's apparent assertion that he exhausted his administrative remedies via the disciplinary appeal. Instead, relying upon their Rule 7.1(a)(3) Statement, defendants contend that plaintiff did not dispute their statement that he failed to file a grievance regarding the constitutional claims made in this lawsuit. In their Rule 7.1(a)(3) Statement, however, defendants merely state that "[p]rior to filing the Complaint, the plaintiff chose not to file a grievance regarding what he now describes as violations of his First, Eighth, and Fourteenth Amendment rights." Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 15) ¶ 1. [FN17] Defendants' Rule 7.1(a)(3) Statement does not allege that plaintiff failed to pursue a disciplinary appeal on due process grounds. When affording plaintiff every favorable inference, defendants' reliance upon their Rule 7.1(a)(3) Statement is misplaced.

[FN17.] Defendants' Rule 7.1(a)(3) Statement

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

appears to be incorrectly numbered; this statement is actually the last and should be numbered "4" instead of 1.

As was previously noted, the basis for plaintiff's due process claim in this lawsuit is not well-defined. It is also not clear whether any of the named defendants participated in the conduct giving rise to the deprivation. Plaintiff's submission on this motion nonetheless raises unresolved questions of fact as to whether plaintiff fully exhausted his administrative remedies by way of the disciplinary appeal with regard to the due process claims alleged in this judicial proceeding.

D. *Personal Involvement*

In their motion defendants Fischer and Artus assert their lack of personal involvement in the relevant events giving rise to plaintiff's claims as an alternative basis for dismissal of plaintiff's claims against them.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*10** Neither Commissioner Fischer nor Superintendent Artus is alleged to have been directly involved in the events giving rise to plaintiff's claims. Instead, it appears that they are named as defendants based

upon their supervisory positions and plaintiff's allegation that they were "grossly negligent in training and supervising their subordinates." *See* Complaint (Dkt. No. 1) ¶ 14. It is well-established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Culpability on the part of a supervisor for a civil rights violation can be established only if one of five circumstances exist, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007), *rev'd on other grounds sub nom.; Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

In this instance, the evidence in the modest record now before the court regarding the actions of defendants Fischer and Artus is scant. Neither has submitted an affidavit in support of defendants' summary judgment motion reflecting their lack of involvement and to the extent to which, if at all, they have been participants in the supervision and training of corrections officers such as defendant H. Martin at Clinton. For his part, plaintiff has provided nothing other than his raw allegation that the two were grossly negligent in their training and supervision of subordinates.

Clearly, neither Fischer nor Artus was a direct participant in the challenged conduct. It may be, however, that defendant Artus, who presumably learned of the misbehavior report and resulting disciplinary hearing based upon plaintiff's appeal, could be deemed to have failed to remedy the alleged wrong once learning of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

violation. I therefore recommend against summary dismissal of plaintiff's claims against defendant Artus based upon lack of personal involvement.

With regard to Commissioner Fischer, there is no indication in the record now before the court that defendant Fischer had any awareness of the specific events giving rise to plaintiff's First and Eighth Amendment claims. Nor has plaintiff alleged the existence of a policy or custom within the DOCS leading to the unconstitutional practices that occurred.[FN18],[FN19] Plaintiff's only allegation concerning defendant Fischer's role is that he was grossly negligent in managing subordinates. Neither plaintiff's complaint, however, nor his motion submissions articulate specific facts suggesting Commissioner Fischer's negligence in training and supervising his subordinates.

> FN18. Indeed, DOCS has enacted and implemented a policy specifically recognizing the right of inmates to a limited exercise of their First Amendment religious rights, consistent with legitimate penalogical and security concerns. *See* DOCS Directive No. 4202.

> FN19. It is well established that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy," sufficient to establish supervisor liability. *Ricciuti v. NYC Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

**\*11** It is well settled that vague and conclusory allegations that a supervisor has failed to properly manage a subordinate do not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a

failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Having provided no factual basis for holding Commissioner Fischer personally responsible for the alleged violations of his First and Eighth Amendment rights, plaintiff has failed to allege a sufficient basis for holding him responsible for such alleged conduct.

Plaintiff's due process claim, however, is another matter. Plaintiff has produced documents indicating that he appealed the disciplinary determination to the Commissioner. Commissioner Fischer's participation in the relevant events, if any, including his review on appeal of the disciplinary hearing and determination, would seem to bring him squarely within the second of the five above-stated potential grounds for establishing personal involvement on the part of a supervisory employee.[FN20]

> FN20. As previously referenced, ordinarily such appeals are referred to Donald Selsky. On this record, however, there is no indication as to whether such referral was made in this case, thus leaving lingering material questions of fact as to the Commissioner's involvement.

Notably, with regard to the Commissioner's customary designee for review of disciplinary appeals, Donald Selsky, some courts have found that the mere allegation that Selsky has reviewed and affirmed a hearing officer's disciplinary determination is insufficient to show the requisite personal involvement in the alleged underlying constitutional violation. *See, e.g., Abdur-Raheem v. Selsky,* 598 F.Supp.2d 367, 370 (W.D.N.Y.2009) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU.... That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord,* No.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

05-CV47A, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("[t]he fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part."); *see also Odom v. Calero*, No. 06 Civ. 15527, 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (concluding that a due process violation is complete upon the hearing officer rendering a decision, even when the liberty interest deprivation persists, and therefore is not "ongoing" when an appeal is taken to Donald Selsky).

On the other hand, other courts have found that the act of reviewing and affirming a determination on appeal can provide a sufficient basis to find the necessary personal involvement of a supervisory employee like defendant Fischer. *See, e.g., Baez v. Harris*, No. 9:01-CV-807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (fact that defendant Selsky responds personally to all disciplinary appeals by inmates found sufficient to withstand summary judgment motion based on lack of personal involvement); *Cepeda v. Coughlin*, 785 F.Supp. 385, 391 (S.D.N.Y.1992) ("The Complaint alleges that '[t]he Commissioner and/or his designee entertained plaintiff[']s appeal and also affirmed.' ... [T]he allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal participation.").

**\*12** In my view, those cases in which courts have concluded that a plaintiff's allegations that the Commissioner, or Director Selsky, reviewed and upheld an alleged constitutionally infirm disciplinary determination are enough to show his personal involvement in the alleged violation appear to be both better reasoned and more consistent with the Second Circuit's position regarding personal involvement. *See Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir.1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to

establish his personal involvement).

Based upon plaintiff's submission, it appears that Commissioner Fischer may have been involved in review of Bennett's disciplinary appeal. On the record before the court it therefore appears that there are material questions of fact with regard to Commissioner Fischer's personal involvement which preclude the entry of summary judgment. *See Johnson v. Coombe*, 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (finding that plaintiff's complaint had sufficiently alleged personal involvement of Superintendent and Commissioner to withstand motion to dismiss because plaintiff alleged that both defendants had actual or constructive notice of the defect in the underlying hearing); *Ciaprazi v. Goord*, No. 9:02-CV-0915, Report-Recommendation, 2005 WL 3531464, at *16 (N.D.N.Y. Mar. 14, 2004) (Sharpe, D.J. and Peebles, M.J.) (Selsky's motion for summary judgment for lack of personal involvement denied because Selsky's review of plaintiff's disciplinary hearing appeal "sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations.").

In sum, although it may well be that this defendant was not in any way involved in the alleged due process violations, I have determined that at this juncture defendants have failed to establish that there are no material questions of fact as to Commissioner Fischer's personal involvement in the disciplinary appeal, and therefore recommend denial of defendants' motion is this respect. On the other hand, in light of plaintiff's failure to offer facts to support his bald and conclusory allegation regarding negligent supervision and training by Commissioner Fischer, I recommend that plaintiff's First and Eighth Amendment claims against Commissioner Fischer be dismissed on this additional, alternative basis of lack of personal involvement.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

(Cite as: 2010 WL 5525368 (N.D.N.Y.))

IV. *SUMMARY AND RECOMMENDATION*

Because it is clear from the record now before the court that plaintiff has failed to satisfy his PLRA obligation to exhaust available administrative remedies with regard to his free exercise and cruel and unusual punishment claims before commencing this action, his claims in this regard are subject to dismissal on this procedural basis. As to plaintiff's due process claim, the record before the court is equivocal as to whether plaintiff fully exhausted the claims made in this lawsuit by way of his appeal of the disciplinary determination, and material questions of fact preclude entry of judgment as a matter of law. Turning to the remaining portion of defendants' motion, I conclude that a reasonable fact finder could determine that Superintendent Artus was sufficiently involved in the offending conduct to support a finding of liability against him and that while questions of fact remain as to Commissioner Fischer's personal involvement, if any, in the alleged due process violations, the record fails to disclose any basis on which a reasonable fact finder could determine that Commissioner Fischer should also be held accountable for the for the First and Eighth Amendment violations alleged in plaintiff's complaint. It is therefore hereby respectfully RECOMMENDED, that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 14) be DENIED solely as to plaintiff's due process claim as against all three defendants, but that defendants' motion otherwise be GRANTED and that plaintiff's claims under the First and Eighth Amendments against all three defendants be DISMISSED.

**\*13** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roland v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2010.

Bennett v. Fischer

Slip Copy, 2010 WL 5525368 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 13826 (N.D.N.Y.)

(Cite as: 2011 WL 13826 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.

Delville BENNETT, Plaintiff,

v.

Brian FISCHER, Commissioner of New York State Department of Correctional Services, in his individual and official capacity; Dale Artus, Superintendent of Clinton Correctional Facility, in his individual and official capacity; and H. Martin, Correction Officer, in his individual and official capacity, Defendants.

No. 9:09-CV-1236 (FJS/DEP).

Jan. 4, 2011.

Delville Bennett, Beacon, NY, pro se.

Office of the New York, State Attorney General, Adam W. Silverman, AAG, of Counsel, Albany, NY, for Defendants.

**ORDER**

FREDERICK J. SCULLIN, JR., Senior District Judge.

**\*1** Currently before the Court are Magistrate Judge Peebles' August 17, 2010 Report and Recommendation, *see* Dkt. No. 23, and Plaintiff's objections thereto, *see* Dkt. No. 27.[FN1]

> FN1. After Plaintiff filed his objections to Magistrate Judge Peebles' August 17, 2010 Report and Recommendation, Chief Judge Mordue issued an Order staying this case and referring it to Magistrate Judge Bianchini for settlement proceedings pursuant to the *Pro Se* Prisoner Settlement Program ("Settlement Program"). *See* Dkt. No. 28. On December 22, 2010, Bruce J. Boivin, Coordinator of the Settlement Program for the New York State Attorney General's Office, filed a letter, in which he stated that this action, as well as others, was not appropriate for inclusion in the Settlement Program. *See* Dkt. No. 33. Therefore, he asked that Magistrate Judge Bianchini remove this case from the Settlement Program. *See id.* On that same date, Chief Judge Mordue issued an Order terminating the referral of this action to the Settlement Program and lifting the stay. *See* Dkt. No. 32.

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against Defendant Brian Fischer, the Commissioner of the New York State Department of Correctional Services ("DOCS"), Defendant Dale Artus, Superintendent of Clinton Correctional Facility, where Plaintiff was confined at the time of the incidents underlying this action, and Defendant H. Martin, a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 13826 (N.D.N.Y.)

(Cite as: 2011 WL 13826 (N.D.N.Y.))

corrections officer. The gravamen of Plaintiff's complaint is that, as a result of his participation in a congregate religious service, he received a false misbehavior report accusing him of creating a disturbance, engaging in an unauthorized demonstration, and refusing a direct order. This misbehavior report led to a disciplinary hearing and a finding of guilt on two of the three charges. Plaintiff contends that Defendants' actions violated his First Amendment right to exercise his chosen religion, as well as his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process.

On February 25, 2010, Defendants filed a pre-answer motion for summary judgment, in which they sought dismissal of Plaintiff's claims based on his failure to exhaust available administrative remedies and, with respect to Defendants Fischer and Artus, on the ground that they were not personally involved in the alleged violations.

In a Report and Recommendation dated August 17, 2010, Magistrate Judge Peebles recommended that this Court grant Defendants' motion for summary judgment with respect to Plaintiff's First and Eighth Amendment claims against all three Defendants and deny Defendants' motion for summary judgment with respect to Plaintiff's Due Process claim against all three Defendants. *See* Dkt. No. 23 at 36. Plaintiff objected to Magistrate Judge Peebles' recommendation that this Court dismiss his First and Eighth Amendment claims. *See* Dkt. No. 27.

In reviewing a magistrate judge's report and recommendation, the district court may decide to accept, reject or modify those recommendations. *See* 28 U.S.C. § 636(b)(1). The court conducts a *de novo* review of the portions of the magistrate judge's recommendations to which a party objects. *See* *Pizzaro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). " " 'If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.' " " *Salmini v. Astrue,* No. 3:06-CV-458, 2009 WL 1794741, *1 (N.D.N.Y. June 23, 2009) (quoting [ *Farid v. Bouey,* 554 F.Supp.2d 301] at 306 [ (N.D.N.Y.2008) ] (quoting *McAllan v. Von Essen,* 517 F.Supp.2d 672, 679 (S.D.N.Y.2007))). Finally, even if the parties file no objections, the court must ensure that the face of the record contains no clear error. *See* *Wilds v. United Parcel Serv., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003) (quotation omitted).

**\*2** The Court has thoroughly reviewed Plaintiff's objections to Magistrate Judge Peebles' recommendations and, for a variety of reasons, finds them to be without merit. In some instances, Plaintiff's objections are conclusory and do no more than reiterate the arguments that he made in opposition to Defendants' motion for summary judgment. In other instances, Plaintiff appears to be confused about the consequences of some of Magistrate Judge Peebles' findings. Finally, although he objects to Magistrate Judge Peebles' recommendations, Plaintiff, in some instances, reaches the same result.

Despite these deficiencies in Plaintiff's objections, the Court conducted a *de novo* review of Magistrate Judge Peebles' Report and Recommendation in light of those objections. Having completed that review, the Court hereby

**ORDERS** that Magistrate Judge Peebles' August 17, 2010 Report and Recommendation is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's First and Eighth Amendment claims against all Defendants; and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 13826 (N.D.N.Y.)

(Cite as: 2011 WL 13826 (N.D.N.Y.))

the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff's Fourteenth Amendment due process claim against all Defendants; and the Court further

**ORDERS** that this action is referred to Magistrate Judge Peebles for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Bennett v. Fischer

Slip Copy, 2011 WL 13826 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Candido BAEZ, Plaintiff,
v.
J. HARRIS, Deputy Superintendent, Shawangunk
Correctional Facility; Donald Selsky, Director Special
Housing Unit Program; and Quartarone, Nurse,
Shawangunk Correctional Facility, Defendants.
**No. 9:01-CV-807.**

Feb. 7, 2007.

Candido Baez, Ossining, NY, Plaintiff Pro Se.

Andrew M. Cuomo, Attorney General for the State of New
York, Maria Moran, Esq., Assistant Attorney General,
Syracuse, NY, Attorney for Defendants.

**MEMORANDUM-DECISION AND ORDER**

NORMAN A. MORDUE, Chief U.S. District Judge.

**INTRODUCTION**

**\*1** Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services, brought this
action under 42 U.S.C. § 1983. The amended complaint
(Dkt. No. 49) claims that defendants violated his
constitutional rights under the Eighth and Fourteenth
Amendments.

Defendants' motion for summary judgment (Dkt. No. 75)
was referred to United States Magistrate Judge David R.

Homer for a report and recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c). Magistrate
Judge Homer's Report and Recommendation (Dkt. No. 81)
recommends that defendants' motion be granted in part
and denied in part.

Plaintiff has submitted an objection (Dkt. No. 82) to the
Report and Recommendation. Pursuant to 28 U.S.C. §
636(b)(1)(C), this Court conducts a *de novo* review of
those parts of a magistrate judge's report and
recommendation to which a party specifically objects.
Where only general objections are filed, the Court reviews
for clear error. *See Brown v. Peters,* 1997 WL
599355,*2-*3 (N.D.N.Y.), *af'd without op.,*175 F.3d 1007
(2d Cir.1999). Failure to object to any portion of a report
and recommendation waives further judicial review of the
matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89
(2d Cir.1993).

**DISCUSSION**

Plaintiff objects to Magistrate Judge Homer's Report and
Recommendation insofar as it recommends: (1) that all
claims against Selsky be dismissed; and (2) that all Eighth
Amendment claims be dismissed.

**(1) Claims against Selsky**

Plaintiff asserts Eighth and Fourteenth Amendment claims
against Selsky. Plaintiff objects to Magistrate Judge
Homer's recommendation that they be dismissed.

The Court first addresses plaintiff's Eighth Amendment
claims against Selsky. Plaintiff's amended complaint may
be read to assert a claim against Selsky based on the
allegedly premature removal of plaintiff's bandages after
hernia surgery. In a Memorandum-Decision and Order
entered on September 29, 2003 (Dkt. No. 29) the Court
adopted Magistrate Judge Homer's recommendation (Dkt.
No. 27) to dismiss without prejudice plaintiff's claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

based on premature removal of the bandages because plaintiff had failed to exhaust this claim. Plaintiff then filed a grievance raising this issue. The grievance was rejected as untimely, and that rejection was affirmed on administrative appeal. Accordingly, the claim remains unexhausted. Plaintiff objects to dismissal of this claim, arguing that he attempted to exhaust it. The fact that plaintiff was foreclosed from exhausting the claim due to the passage of time does not, without more, excuse him from the administrative exhaustion requirement. *See Williams v. Comstock,* 425 F.3d 175, 176 (2d Cir .2005); *Baez v. Kahanowicz,* 2007 WL 102871, *7 (S.D.N.Y.). Thus, the Court agrees with Magistrate Judge Homer that plaintiff's Eighth Amendment claim based on removal of his bandages must be dismissed for failure to exhaust his administrative remedies. Further, the Court agrees with Magistrate Judge Homer that, in any event, the claim lacks merit. Accordingly, to the extent that plaintiff asserts an Eighth Amendment claim against Selsky based on this allegation, it is dismissed.

**\*2** Plaintiff also appears to assert an Eighth Amendment claim against Selsky stemming from plaintiff's allegedly premature removal from the hospital and subjection to a lengthy bus trip when he needed immediate medical attention. However, there is no basis to find that Selsky was personally involved in these events. To the extent that plaintiff asserts an Eighth Amendment claim against Selsky based on this allegation, it is dismissed.

To the extent that plaintiff bases an Eighth Amendment claim on the conditions he experienced in SHU, this Court agrees with Magistrate Judge Homer that as a matter of law plaintiff's allegations fail to state such a claim. *See generally Branch v. Goord,* 2006 WL 2807168, *5 (S.D.N.Y.). Thus, all Eighth Amendment claims against Selsky are dismissed.

With respect to plaintiff's Fourteenth Amendment claims against Selsky, plaintiff's objections state: "Defendant Selsky could have release[d] plaintiff sooner from SHU, but instead waited until I submitted a C.P.L.R. Article 78 [petition] to change his decision and release me. Defendant Selsky was put on notice sooner with my administration *[sic]* appeal to release me from SHU but chose not to." Essentially, plaintiff asserts Fourteenth

Amendment liability against Selsky stemming from the disciplinary hearing conducted by defendant Harris and Selsky's handling of plaintiff's appeal from Harris' determination. [FN1]

> **FN1.** In his objection, plaintiff also states: "My father addressed a letter to Mr. Selsky documenting the violations of my rights. Therefore, [Selsky] is personally involve[d] because he was aware of the violation and never release[d] me from SHU[.]" The receipt of a letter does not, however, constitute sufficient personal involvement to generate supervisory liability. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Garvin v. Goord,* 212 F .Supp.2d 123, 126 (S.D.N.Y.2002).

Selsky's affidavit in support of summary judgment states that he is the Director of the Special Housing/Inmate Disciplinary Program, and that he personally responds, as the Commissioner's authorized designee, to all Tier III appeals taken by inmates. Under the circumstances of this case, the record is sufficient to withstand summary judgment on the issue of personal involvement. *See, e.g., Gilbert v. Selsky,* 867 F.Supp. 159, 166 (S.D.N.Y.1994) ("If a supervisory official learns of a violation through a report or an appeal, but fails to remedy the wrong, that may constitute a sufficient basis for liability."). Likewise, defendants are not entitled to dismissal of plaintiff's claim against Selsky based on plaintiff's confinement in SHU for one year. *See generally Sandin v. Connor,* 515 U.S. 472, 483-84 (1995).

**(2) Claims against Quartarone**

Plaintiff objects to Magistrate Judge Homer's recommendation that the Court dismiss plaintiff's Eighth Amendment claim against defendant Quartarone. Insofar as this claim is based on Quartarone's allegedly premature removal of plaintiff's bandages after his hernia repair surgery, it is unexhausted as discussed above.

Plaintiff's other Eighth Amendment claims, based on his allegedly premature removal from the hospital and bus

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

transfer, do not allege any involvement on the part of Quartarone. The sole named defendant allegedly involved in these events is Forte; however, all claims against him have been dismissed (Dkt. No. 79). Accordingly, all claims against Quartarone are dismissed.

## CONCLUSION

**\*3** It is therefore

ORDERED the Court accepts and adopts the Report and Recommendation (Dkt. No. 81) of United States Magistrate Judge David R. Homer, except insofar as it recommends dismissal of the Fourteenth Amendment claims as against Selsky; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No. 75) is granted in part and denied in part; and it is further

ORDERED that dismissal of all claims against defendant Quartarone is granted; and it is further

ORDERED that dismissal of plaintiff's Eighth Amendment claims against defendant Donald Selsky is granted; and it is further

ORDERED that dismissal of plaintiff's Fourteenth Amendment claims against Donald Selsky is denied; and it is further

ORDERED that dismissal of plaintiff's claims against J. Harris is denied.

IT IS SO ORDERED.

## REPORT-RECOMMENDATION AND ORDER[FN1]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN1. This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Candido Baez ("Baez"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants,[FN2] three DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. (Docket No. 49) at ¶¶ 50-53. Presently pending is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Docket No. 75. Baez opposes the motion. Docket No. 76. For the reasons which follow, it is recommended that defendants' motion be granted in part and denied in part.

FN2. Harris, Selsky, and Quartarone. Defs. Mem. of Law (Docket No. 75) at 2. The remaining defendant, Doctor Forte, was dismissed following his death in 2004. Docket No. 79.

## I. Background

The facts are set forth in the light most favorable to Baez as the non-movant. See Section II(A) *infra*.

### A. Disciplinary Hearing

At all relevant times, Baez was incarcerated at Shawangunk Correctional Facility ("Shawangunk"). Am. Compl. at ¶ 1. On November 8, 1999, while in the A yard, Baez swung a five-pound weight and hit inmate Garbez on the left side of his head. Moran Aff. (Docket No. 75), Ex. A at 1. Another inmate, Valdez, began to fight with Baez and both ignored orders from corrections officer Riopelle to stop. *Id.* A response team was able to separate Valdez and Baez, removed them from the yard, and brought both inmates to the infirmary. *Id.* Baez was issued a misbehavior report for assault on an inmate, fighting, refusing a direct order, and having a weapon. *Id.* On the

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

same day, corrections officers searched Baez's cell and confiscated a bottle of expired medication, a broken ruler, and a hard plastic plate. *Id.* at 2. Baez received another misbehavior report for possessing unauthorized medication, contraband, property in unauthorized area, and an altered item. *Id.*

On November 10, 1999, the commencement of Baez's Tier III disciplinary hearing [FN3] was adjourned to November 16, 1999 because the hearing officer, Deputy Superintendent of Programs J. Harris, was unavailable. Docket No. 24, Ex. C; Hrg. Tr. at 1. Baez's assistant for the hearing, Boyham,[FN4] first met with Baez on November 10, 1999 and completed his assistance on November 12, 1999. Hrg. Tr. at 2. On November 16, 1999, Baez's disciplinary hearing commenced. Hrg. Tr. at 1. On November 23, 1999, Harris found Baez guilty of assault, fighting, possessing a weapon, refusing a direct order, and having an altered item and found him not guilty of unauthorized medication, having property in an unauthorized area, and possessing contraband. Moran Aff., Ex. A at 3-4. Baez was sentenced to twenty-four months in the Special Housing Unit ("SHU"),[FN5] loss of packages, commissary, and telephone privileges, and the recommended loss of twenty-four months of good time credit. *Id.* Additionally, Baez lost his inmate grade-pay and program assignment. Compl. (Docket No. 1) at ¶ 17.

FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendents' hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2006).

FN4. Boyham, an original defendant in this matter, was dismissed from the case on a motion for summary judgment on September 29, 2003. Docket No. 29.

FN5. SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y.

Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2006). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

**\*4** Baez appealed Harris's determination. Docket No. 24, Ex. H. On March 21, 2000, Baez filed a petition pursuant to N.Y. C.P.L.R. Art. 78.[FN6] Moran Aff., Ex. C. The defendants received three extensions of time to answer Baez's petition. Am. Compl. at ¶ 10. On May 17, 2000, Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, modified Baez's punishment from twenty-four months to twelve months. Moran Aff., Ex. B at 1-2. On October 26, 2000, Baez's petition was transferred from Ulster County Supreme Court to the Appellate Division, Third Department. Moran Aff., Ex. C at 3. On March 12, 2001, Selsky administratively reversed the disciplinary determination because the hearing officer considered medical evidence not on the record. Moran Aff., Ex. B at 4. On June 14, 2001, Baez's Article 78 petition was denied as moot. Moran Aff., Ex. C at 3-4.

FN6. N.Y. C.P.L.R. Art. 78 (McKinney 1994 & Supp.2006 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

### B. Medical Treatment

On December 14, 1999, Baez had hernia repair surgery at Albany Medical Center. Am. Compl. at ¶ 33. Baez was to remain on bed rest in the hospital for three days. *Id.* On December 16, 1999, Baez was discharged from the hospital. *Id.* Baez was instructed to keep the dressing dry and intact for two days and then remove the outer dressing and resume showering. Davidson Decl. (Docket No. 75), Ex. 1. Baez was not allowed to engage in lifting, strenuous work, straining or reaching for six weeks and was allowed to return to work or school. *Id.* A follow-up examination at the prison clinic was also required. *Id.* Quartarone removed Baez's bandages and padding from the incision area against doctor's orders. Am. Compl. at ¶ 33.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

On the day of Baez's discharge, he was ordered to board a bus for transfer to Downstate Correctional Facility. *Id.* Baez was taken on a bus trip which included stops at Shawangunk and Wallkill Correctional Facility where Baez began to vomit and experience severe pain. Am. Compl. at ¶ 34. Baez's requests to be taken to the infirmary were ignored. *Id.* This action followed.

### C. Procedural History

Baez commenced this action by filing a complaint on May 25, 2001. *See* Compl. Defendants filed a motion for summary judgment on December 13, 2002. Docket Nos. 21-23. As a result of that motion, several claims and defendants were dismissed. Docket No. 27. That decision was modified on November 18, 2004 and required Baez to file an amended complaint within thirty days of the order. Docket No. 47. Baez complied and filed his amended complaint on December 17, 2004. Docket No. 49. This motion for summary judgment of the remaining defendants followed. Docket No. 75.

### II. Discussion

Baez asserts three causes of action in his amended complaint. The first alleges that defendant Selsky failed to correct behavior that violated Baez's Eighth and Fourteenth Amendment rights. The second alleges that defendants Harris and Selsky deprived him of his due process rights in connection with a prison disciplinary hearing. The third alleges that defendant Quartarone was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[FN7] Am. Compl. at ¶¶ 50-53. Defendants seek judgment on all claims.

> FN7. Any claims against Dr. Forte have been dismissed and are not being considered on this motion. *See* note 2 *supra*.

### A. Standard

**\*5** A motion for summary judgment may be granted if

there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223-24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the nonmovant special solicitude.[FN8] *Id.; Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 2006 WL 3499975, at *5 (2d Cir. Dec. 5, 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247-48.

> FN8. Baez has, however, filed at least seven other actions in the federal courts of New York since 1990. *U.S. Party/Case Index* (visited Jan. 8, 2007) <http://pacer.uspci. uscourts.gov/cgi-bin/dquery.pl>.

### B. Eighth Amendment

#### 1. Defendant Quartarone

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

In his third cause of action, Baez contends that "less than forty (40) hours after the [hernia] surgery, defendant Quartarone ... removed the bandages and padding from the incision area of [his] operation," thereby acting with deliberate indifference to his medical needs. Am. Compl. at ¶ 33. Defendants contend that Baez has failed to exhaust his administrative remedies on this claim and, in the alternative, the claim is without merit.

**a. Failure to Exhaust**

Defendants contend that Baez has not exhausted his administrative remedies with regard to the claim that his Eighth Amendment rights were violated by defendant Quartarone. This assertion is based on the fact that Baez did not raise the issue of his surgery dressings being removed prematurely in his Grievance No. UST-2681-00. Defs. Mem. of Law at 10; *see also* Moran Aff., Ex. E.

Issues that have previously been determined become the law of the case. *In re Lynch,* 430 F.3d 600, 604 (2d Cir.2005) (citing *Quern v. Jordan,* 440 U.S. 332, 348 n. 18 (1979)). A district court may reconsider its own decision if the law has since changed, if new evidence becomes available, to correct an error, or if a "manifest injustice would otherwise ensue." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber,* 407 F.3d 34, 44 (2d Cir.2005).

*6 Here, this Court has already decided that Baez did not exhaust his claim regarding removal of the bandages because he never filed a grievance regarding it. Docket No. 27. The Report-Recommendation and Order containing that finding was adopted in full by the district court on September 29, 2003. Docket No. 29. In response to this Court's decisions, Baez filed a grievance on October 3, 2003 where he raised the issue of the early bandage removal. Am. Compl., Ex. A. That grievance was rejected as untimely in the absence of any reason provided for the delay. *Id.* Baez appealed the decision to reject his late grievance, but that decision was affirmed. *Id.* Although Baez attempted to remedy his failure to exhaust, filing an untimely grievance does not amount to an exhaustion of remedies. *Williams v. Comstock,* 425 F.3d 175, 176 (2d Cir.2005). Further, since this Court finds no reason to reconsider its previous decisions, Baez has not exhausted his claim for removal of the bandages.

**b. Medical Treatment**

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844 (1994).

A serious medical need is " 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (quoting *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. *Chance,* 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. *Id.* at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate. *Id.* at 703. Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

recklessness. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

**\*7** Even assuming that hernia repair surgery is a serious medical need, Baez failed to raise a question of material fact with regard to the alleged deliberate indifference of Quartarone in removing his bandages. The bandages were removed on the second post-operative day, which was within the instructed time period recommended by Baez's surgeon. Davidson Decl. at ¶¶ 3-4. Therefore, it is recommended in the alternative that defendants' motion for summary judgment on this ground be granted.

### 2. Defendant Selsky

Baez alleges that Selsky "contributed to and proximately caused the ... violation of [his] Eighth and Fourteenth Amendment Rights." Am. Compl. at ¶ 50. Summary judgment in favor of all defendants, including Selsky, with regard to Baez's Eighth Amendment claim resulting from his disciplinary hearing has already been granted. Docket No. 27 at 16. As such, Baez's claim against Selsky for a violation of his Fourteenth Amendment due process rights in connection with his prison disciplinary hearing is dismissed. Baez's claim against Selsky for his alleged involvement in Baez's Eighth Amendment claims relative to his medical care remain at issue.

### a. Personal Involvement

Defendants contend that Baez cannot demonstrate the personal involvement of Selsky in any Eighth Amendment violation.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). The doctrine of respondeat superior is not a substitute for personal involvement. Polk *County v. Dodson,* 454 U.S. 312, 325 (1981). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Black v.*

*Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) (citations omitted).

In his amended complaint, Baez's only allegation as to the personal involvement of Selsky is that he and his father wrote Selsky a letter documenting the violations of Baez's rights. Am. Compl. at ¶ 42. However, "receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability." *Petty v. Goord,* No. Civ. 00-803(MBM), 2002 WL 31458240, at \*8 (S.D.N.Y. Nov. 4, 2002). Further, there is no evidence that Selsky participated here in the alleged violations or created a policy which allowed constitutional violations to continue.

Therefore, it is recommended that defendants' motion for summary judgment as to Selsky be granted on this ground.

### C. Fourteenth Amendment

**\*8** Defendants Harris and Selsky contend that Baez's due process claim should be dismissed and that qualified immunity bars Baez's claim.

### 1. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See *Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir.2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *Frazier v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

*Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

Here, this Court has already decided that Baez has raised a question of fact as to whether twelve months spent in SHU establishes a protected liberty interest. Docket Nos. 27, 29, & 47; *see also Colon v. Howard,* 215 F.3d 227 (2d Cir.2000) (holding that 305 days spent in normal SHU conditions was sufficient to raise a question of significant hardship). Defendants' motion on this ground should, therefore, be denied.

### 2. Process Provided

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing officer. *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-64 (1974)). Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process. *Massachusetts Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985); *Gaston v. Coughlin,* 249 F.3d 156, 162 (2d Cir.2001).

Again, this Court has already determined that there is a question of fact as to the fourth prong of Wolff. Docket No. 27 at 12; *see also In re Lynch,* 430 F.3d at 604 (quoting *Quern,* 440 U.S. at 348 n. 18)). As such, it is recommended that defendants' motion for summary judgment on this ground be denied.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229-30 (N.D.N.Y .2002) (McAvoy, J.), *aff'd,* 80 Fed.Appx. 146 (2d Cir. Nov. 10,

2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the issue of defendants entitlement to qualified immunity has already been decided in Baez's favor. Docket Nos. 27, 29, & 47.

**\*9** Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 75)

1. **GRANTED** as to Quartarone and Selsky in all respects; and

2. **DENIED** as to Harris as to the due process claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2007.
Baez v. Harris
Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)

### END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 446015 (N.D.N.Y.)
(Cite as: 2007 WL 446015 (N.D.N.Y.))

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Westlaw.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Roberto CIAPRAZI, Plaintiff,
v.
Glenn S. GOORD; et al. Defendants.
**No. Civ.9:02CV00915(GLS/.**

Dec. 22, 2005.

Roberto Ciaprazi, Clinton Correctional Facility,
Dannemora, New York, Plaintiff pro se.

Hon. Eliot Spitzer, Attorney General, State of New York,
The Capitol, Albany, New York, for the Defendants.

Patrick F. MacRae, Assistant Attorney General, of
counsel.

*MEMORANDUM-DECISION AND ORDER*

SHARPE, J.

*I. Introduction*

**\*1** Plaintiff *pro se* Roberto Ciaprazi brings this action
pursuant to 42 U.S.C. § 1983. Ciaprazi alleges that the
defendants violated his First, Eighth, and Fourteenth
Amendment rights. Pending are Ciaprazi's objections to
Magistrate Judge David E. Peebles'
Report-Recommendation. Upon careful consideration of
the arguments, the relevant parts of the record, and the
applicable law, the court adopts the
Report-Recommendation in its entirety. [FN1]

FN1. The Clerk is hereby directed to attach the

Report-Recommendation to constitute a
complete record of the court's decision in this
matter.

*II. Procedural History*

Ciaprazi commenced this action on July 15, 2002. *Dkt.
No. 1.* On February 27, 2003, the defendants moved for
summary judgment. *Dkt. No. 39.* On March 14, 2004,
Judge Peebles issued a Report-Recommendation which
recommended that the defendants' motion for summary
judgment be granted in part, and denied in part. *Dkt. No.
47.* Ciaprazi objected. *Dkt. No. 48.* His objections are now
before this court.

*III. Discussion* [FN2]

FN2. The court adopts the factual summary in
Magistrate Judge Peebles'
Report-Recommendation and assumes familiarity
with the facts alleged in Ciaprazi's Complaint.
*Dkt. Nos. 47,1.*

A. *Standard of Review*

When objections to a magistrate judge's
Report-Recommendation are lodged, the Court makes a
*"de novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such
a review, the court may "accept, reject, or modify, in
whole or in part, the findings or the recommendations
made by the magistrate judge." *Id.* Having reviewed the
unobjected to portions of the Report-Recommendation, the
court adopts them in their entirety because they are not
clearly erroneous.

B. *Report-Recommendation*

Although Judge Peebles examined the merits of the case

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

and found that many of Ciaprazi's claims were meritless, this court only conducts *de novo* review of the objected to portions of the Report-Recommendation. Specifically, Judge Peebles found no evidence tending to establish that the adverse actions taken against Ciaprazi were motivated by disciplinary animus, and thereby recommended dismissing Ciaprazi's First Amendment retaliation claim. *Report and Recommendation, pp. 13-23, 45, Dkt. No. 47.* He further found that Ciaprazi lacked standing to bring a cause of action challenging the Tier III disciplinary system under the Eighth Amendment. *Id. at 27.* Lastly, Judge Peebles dismissed both of Ciaprazi's claims under international law and his personal involvement claim against defendant Goord. *Id. at 41, 43-4.*[FN3]

> **FN3.** Ciaprazi also makes several procedural objections. For instance, he asserts that defendants' motion is procedurally defective since none of the moving papers are signed, as required by FRCP 11. Second, Ciaprazi objects to the defendants' alteration of the case caption. Third, Ciaprazi objects to the defendants' use of a name that did not appear in the original complaint. These arguments are without merit and this court adopts Judge Peebles articulated reasons for their denial. *See Report Recommendation p. 10-11 n. 5, Dkt. No. 47.*

C. *Objections*

1. *First Amendment Claim*

First, Ciaprazi contends that his retaliation claim under the First Amendment should not have been dismissed because the defendants did not satisfy their initial evidentiary burden. *Pl. Objs. pp. 1-7, Dkt. No. 48.* Specifically, he argues that Judge Peebles did not properly consider the falsity of a misbehavior report as evidence of retaliation by the defendants.

The court rejects Ciaprazi's argument because as Judge Peebles noted, a prisoner does not have a right to be free from false misbehavior reports. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). As Judge Peebles further noted, the defendants have shown sufficient evidence to

establish that there is no specific link between Ciaprazi's grievances and the defendants' actions. Accordingly, Ciaprazi's retaliation claim is dismissed.

2. *Eighth Amendment*

**\*2** Next, Ciaprazi objects to Judge Peebles' finding that he did not have standing to challenge the disciplinary authority of the Tier III system. *Pl. Objs. p. 7, Dkt. No. 48.* This objection is without merit. As Judge Peebles noted, since the length of Ciaprazi's disciplinary confinement was within the bounds of constitutionally acceptable levels, he has no standing to sue. Second, as Judge Peebles further noted, any generalized complaints Ciaprazi has against the Tier III system are more appropriately addressed as part of his due process claims. Accordingly, Ciaprazi's claims against the Tier III system are dismissed.

3. *Human Rights Claims*

Ciaprazi also objects to Judge Peebles' finding that he did not have claims under the Universal Declaration of Human Rights (UDHR) and the International Covenant on Civil and Political Rights (ICCPR). Ciaprazi's contention is without merit. As Judge Peebles noted, Ciaprazi has failed to establish that these treaties provide private causes of action. *See Report Recommendation p. 41, Dkt. No. 47.* Accordingly, Ciaprazi's claims under international law are dismissed.

4. *Personal Involvement*

Ciaprazi also objects to Judge Peebles' dismissal of his personal involvement claim against defendant Goord. As Judge Peebles noted, Ciaprazi merely made allegations against Goord in his supervisory capacity. Accordingly, the personal involvement claim against Goord was properly dismissed.

IV. *Conclusion*

Having reviewed the objected-to portions of the Report

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

and Recommendation *de novo,* the remainder under a
clearly erroneous standard, and Ciaprazi's objections, this
court accepts and adopts the recommendation of Judge
Peebles for the reasons stated in the March 14, 2004
Report-Recommendation.

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that defendants' summary judgment motion
(Dkt. No. 39) be GRANTED in part, and that all of
plaintiff's claims against defendant Goord, and all of
plaintiff's claims against the remaining defendants except
his procedural due process and Eighth Amendment
conditions of confinement causes of action, be
DISMISSED, but that to the extent of those claims, with
respect to which triable issues of fact exist, the defendants'
motion be DENIED.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION

PEEBLES, Magistrate J.

Plaintiff Roberto Ciaprazi, a New York State prison
inmate who by his own account has frequently lodged
complaints against prison officials and been openly critical
of their practices, has commenced this proceeding against
the Commissioner of the New York State Department of
Correctional Services ("DOCS") and several of that
agency's employees pursuant to 42 U.S.C. § 1983,
complaining of constitutional violations occurring during
the course of his confinement. In his complaint, Ciaprazi
alleges that 1) a misbehavior report was filed against him
in retaliation for his having previously engaged in
protected activity; 2) he was deprived of procedural due
process during the course of the hearing and resulting
adverse finding associated with that misbehavior report;
and 3) the conditions which he faced while in disciplinary
confinement, following that hearing, were cruel and
unusual. Plaintiff asserts claims pursuant to the First,
Eighth and Fourteenth Amendments to the United States
Constitution, as well as under certain international human
rights accords.

*3 Currently pending before the court is a motion by the
defendants seeking summary judgment dismissing
plaintiff's complaint in its entirety. Having carefully
reviewed the record in light of Ciaprazi's claims and
defendants' arguments, I find that many of plaintiff's
causes of action are devoid of merit, as a matter of law,
and thus subject to dismissal. Because I find the existence
of genuinely disputed issues of material fact surrounding
certain of plaintiff's claims, however, including notably his
due process claim against defendants Melino, Kohl,
Graham, Fitzpatrick, and Rogers, I recommend denial of
defendants' motion seeking dismissal of plaintiff's claims
against them.

I. *BACKGROUND*

At the times relevant to his complaint, Ciaprazi was a
prisoner entrusted to the custody of the DOCS. Plaintiff
alleges that after having been confined within the Clinton
Correctional Facility since February, 1997, he was
transferred into the Coxsackie Correctional Facility in
April of 1998. Complaint (Dkt. No. 1) ¶ 3. Ciaprazi
asserts that while at Coxsackie he was administered more
than a dozen allegedly false misbehavior reports, resulting
in disciplinary cell confinement of over 200 days as well
as other "deprivations" of an unspecified nature. *Id.* ¶ 3.
Plaintiff contends that the issuance of those misbehavior
reports was motivated by his having filed multiple
complaints involving conduct of corrections workers and
staff at Coxsackie.

At the heart of plaintiff's claims in this action is an
incident which occurred at Coxsackie on July 31, 1999.
On that date, Ciaprazi and various other prisoners were
taken to an enclosed holding area to provide specimens for
use in conducting drug screening urinalysis testing. As a
result of an interaction occurring during the course of that
testing between the plaintiff and defendant Fitzpatrick, a
corrections lieutenant at the facility, plaintiff was placed
in keeplock confinement and issued a misbehavior report
on the following day, charging him with creating a
disturbance (Rule 104.13), interference with a prison
employee (Rule 107.10), harassment (Rule 107.11),
refusal to obey a direct order (Rule 106.10), and making
threats (Rule 102.10). [FN1] Defendants' Motion (Dkt. No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

39) Exh. A.

>FN1. Keeplock confinement is defined by regulation to include restriction to one's prison room or cell. *See, e.g.,* 7 N.Y.C.R.R. 251-2.2.

On July 31, 1999, following the underlying events and the imposition of keeplock confinement but prior to receiving the misbehavior report, plaintiff filed a grievance regarding the incident; plaintiff followed the filing of that grievance with a request on August 3, 1999 for prehearing release from confinement. Complaint (Dkt. No. 1) ¶ 19. Plaintiff received no response to that grievance. *Id.*

A Tier III disciplinary hearing in connection with the charges stemming from the July 31, 1999 incident was conducted by defendant Melino, a corrections counselor at Coxsackie, beginning on August 4, 1999, and concluding on August 10, 1999. Defendants' Motion (Dkt. No. 39) Exh. A at 2; *id.* Exh. B at 17, 152.FN2 Defendant Cole, who according to the plaintiff is a civilian employee working at Coxsackie, was assigned as plaintiff's inmate assistant in connection with that hearing. The evidence adduced at that hearing included the misbehavior report, as well as testimony from the plaintiff, Corrections Lieutenant Fitzpatrick, Corrections Officer Marshal, Corrections Counselor Cole, Corrections Officer Rogers, Corrections Officer Simonik, Corrections Lieutenant McDermott, and Corrections Officer Phillips. Defendants' Motion (Dkt. No. 39) Exh. B.

>FN2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

**\*4** At the conclusion of the hearing, plaintiff was found guilty on all five counts, and a penalty of ten months of disciplinary confinement within the Coxsackie Special Housing Unit ("SHU"), with a corresponding loss of commissary, telephone and package privileges, was imposed.FN3 Defendants' Motion (Dkt. No. 39) Exh. A at 00. Ciaprazi was not present when Hearing Officer Melino read her decision into the record, having previously been removed from the proceeding for engaging in what the hearing officer regarded as disruptive behavior. *See* Defendants' Motion (Dkt. No. 39) Exh. B at 152. Plaintiff appealed the hearing officer's decision to Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, who on September 27, 1999 affirmed the determination. Complaint (Dkt. No. 1) ¶ 51.

>FN3. Of those sanctions, five months were suspended and deferred for a to tal of one hundred eighty days. Defendants' Motion (Dkt. No. 39) Exh. A at 00. The record is unclear regarding the amount of disciplinary confinement actually served by the plaintiff as a result of the hearing determination.

On August 20, 1999, plaintiff was transferred into the Upstate Correctional Facility, where he was apparently placed in SHU confinement to serve his disciplinary sentence. Complaint (Dkt. No. 1) ¶ 52. Plaintiff asserts that during that period, as well as while in keeplock confinement at Coxsackie, he was subjected to significant deprivations, which are described in summary fashion in his complaint, until September 16, 1999 when he was transferred into Clinton and exposed to similarly unpleasant conditions. *Id.* ¶¶ 53-55; Ciaprazi Aff. (Dkt. No. 46) ¶¶ 54-57. Plaintiff describes the keeplock confinement conditions at Coxsackie as even more unpleasant than those experienced in SHU, having included the deprivation of certain personal items such as food and snacks, toiletries, musical instruments, and other similar amenities. Ciaprazi Aff. (Dkt. No. 46) ¶ 54. The deprivations experienced by the plaintiff while in keeplock confinement at Coxsackie also entailed being subjected to "loud and non-stop noise from other frustrated prisoners yelling and banging on the doors," as well as the denial of access to the law library, books and other reading materials, and various programs available to those in general population. *Id.* ¶ 55. While at Upstate, plaintiff contends that he was exposed to cell lighting between 6:00

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

am and 1:00 am; he was denied reading materials; his medical requests "were ignored"; and he experienced cold conditions and the inability to participate in available recreation due to the lack of warm clothing. *Id.* ¶ 57; Complaint (Dkt. No. 1) ¶ 53. Similar conditions were experienced by the plaintiff while at Clinton, including exposure to cold and lack of warm clothing and blankets, together with the deprivation of medical and mental health services. Ciaprazi Aff. (Dkt. No. 46) ¶ 57; Complaint (Dkt. No. 1) ¶ 54..

II. *PROCEDURAL HISTORY*

The plaintiff, who is proceeding *pro se* and *in forma pauperis,* commenced this action on July 15, 2002. Dkt No. 1. Named as defendants in plaintiff's complaint are New York DOCS Commissioner Glenn S. Goord; Ellen J. Croche, Chair of the New York State Commission of Correction; Fred Lamey, a member of the New York Commission of Correction; Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program; Corrections Counselor Melino, whose first name is unknown; Cole, another DOCS employee whose complete name is unknown to the plaintiff; H.D. Graham, Deputy Superintendent for Security at Coxsackie; Corrections Lieutenant Fitzpatrick; and Corrections Officer Rogers. *Id.* In his complaint, plaintiff asserts nine separate causes of action, including claims 1) against defendants Rogers and Fitzpatrick, for infringement of his First Amendment right to free speech, and due process and equal protection violations under the United States Constitution, as well as under the Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights ("ICCPR"); 2) against defendant Graham, for failure to investigate plaintiff's grievance and to take actions to prevent infringement of his constitutional rights; 3) against defendant Cole, for failing to properly perform his duties as Ciaprazi's inmate assistant; 4) against defendant Melino, for deprivation of due process, based upon her conduct and bias during the disciplinary hearing; 5) of retaliation against defendant Melino, asserting that her actions were taken in response to the filing of complaints and grievances by the plaintiff; 6) against defendants Goord and Selsky, based upon their failure to overturn plaintiff's disciplinary conviction and remediate the constitutional deprivations suffered by him; 7) against defendants Goord and Selsky for retaliation, based on plaintiff's prior filing of complaints and grievances; 8)

against defendants Croche, Lamey and Goord, in their supervisory capacities, for failure to properly oversee DOCS employees and enact policies to prevent such abuses; and 9) against defendants Goord, Croche and Lamey, for maintaining and fostering a policy of widespread and disportionate disciplinary punishments within the state's prison system. Complaint (Dkt. No. 1) at 14-16. Plaintiff's complaint seeks both injunctive and monetary relief. *Id.*

**\*5** Following the filing of an answer on behalf of the eight defendants who have been served in the action on December 3, 2002, generally denying plaintiff's allegations and setting forth various affirmative defenses, Dkt. No. 13, and pretrial discovery, on February 27, 2004 those defendants moved seeking entry of summary judgment on various bases.[FN4] Dkt. No. 39. Aided only by plaintiff's complaint, the record related to the relevant internal disciplinary proceedings against the plaintiffs, and answers by plaintiff to defendants' interrogatories, and without the benefit of either a transcript of plaintiff's deposition or any affidavits, other than from their counsel, defendants have moved for summary judgment seeking dismissal of plaintiff's claims on various grounds. *Id.* In their motion, defendants argue that 1) plaintiff has failed to offer proof from which a reasonable factfinder could conclude that cognizable constitutional violations have occurred; 2) defendants Goord and Selsky lack the requisite personal involvement in the constitutional violations alleged; and 3) plaintiff should be denied the injunctive relief which he seeks. *Id.* Plaintiff has since submitted papers in opposition to defendants' summary judgment motion.[FN5] Dkt. No. 46. Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

FN4. There is no indication on the docket sheet that defendant Fitzpatrick has been served in the action. While plaintiff requested and obtained the entry of that defendant's default on June 20, 2003, *see* Dkt. Nos. 20, 21, his default was subsequently vacated by order issued by District Judge David N. Hurd on January 13, 2004, based upon plaintiff's failure to prove that defendant Fitzpatrick had in fact been served. *See* Dkt. No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

35.

**FN5.** In his papers in opposition to defendants' summary judgment motion, plaintiff has raised several procedural objections to defendants' motion papers. In addressing those objections I am mindful of the preference that matters before the court, whenever possible, be decided on their merits rather than on the basis of technical procedural shortcomings. *See, e.g., Upper Hudson Planned Parenthood, Inc. v. Doe,* 836 F.Supp. 939, 943 n. 9 (N.D.N.Y.1993) (McCurn, S.J.). In any event, plaintiff's procedural objections are not well-founded.

In his opposition papers, plaintiff asserts that defendants' motion is procedurally defective since none of the moving papers are signed, as required under Rule 11 of the Federal Rules of Civil Procedure. *See* Plaintiff's Memorandum (Dkt. No. 46) at 1. While not bearing signatures in the traditional sense, all of defendants' original moving papers, which were filed electronically with the court in accordance with this court's case management and electronic case filing requirements (*see* Northern District of New York Local Rule 5.1.2 and General Order No. 22), were properly signed.

Plaintiff also complains of alterations by the defendants to the caption of the case as set forth in his complaint. Specifically, Ciaprazi challenges defendants' addition of the word "unknown" in relation to defendants Melino and Cole, who are identified in plaintiff's complaint only by last names. Since it is well established that the caption of a pleading is not substantive in nature, and therefore does not control, the addition of that word does not provide a basis to reject defendants' motion papers. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1321 (3d ed. 2004) ("Although helpful to the district court ... the caption is not determinative as to the identity of the parties to the action"); *see also Prisco v. State of New*

York, 804 F.Supp. 518, 521 (S.D.N.Y.1992) (citing an earlier edition of Wright & Miller).

As plaintiff notes, defendants' Local Rule 7.1(a)(3) statement of uncontested, material facts, submitted along with the various other papers in support of their motion, indicates that it is submitted on behalf of a defendant Landry, even though there is no person by that name identified as a defendant in plaintiff's complaint. Because this is an obvious typographical error, and the contents of the statement obviously relate to the facts of this case, I decline plaintiff's invitation to reject and treat the statement as a nullity on this basis. *See* Dkt. No. 39.

I note that Ciaprazi, who appears to be well versed in the applicable requirements of the federal and local rules, himself has overlooked the important requirement that legal memoranda submitted in connection with motions to not exceed twenty-five pages in length. Northern District of New York Local Rule 7.1(a)(1). Plaintiff's memorandum, which is thirty-four pages in length, has been accepted by the court, without objection by the defendants, despite his failure to obtain prior permission to file an oversized brief. Plaintiff is admonished that in the future, just as he seeks to hold defendants to the requirements of the governing rules, he too must conform to those requirements.

### III. *DISCUSSION*

#### A. *Summary Judgment Standard*

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v.*

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

*Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4;*Security Insurance,* 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. [FN6]Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553;*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. When deciding a summary judgment motion, the court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [nonmovant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

> FN6. A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

B. *Plaintiff's First Amendment Retaliation Claim*

*6 Plaintiff's complaint asserts several claims of unlawful retaliation. In his first cause of action, plaintiff asserts that the actions of defendants Rogers and Fitzpatrick in confining him to a cell and issuing, or directing the issuance of, misbehavior reports were taken in retaliation for his having filed prior grievances and complaints regarding DOCS officials, including those working at Coxsackie. Complaint (Dkt. No. 1) First Cause of Action. Plaintiff's second claim alleges that defendant Rogers' failure to investigate plaintiff's complaint regarding the allegedly false misbehavior report, and to order his release from confinement pending a disciplinary hearing, were similarly retaliatory. *Id.* Second Cause of Action. Plaintiff further alleges in his fifth cause of action that the actions of Hearing Officer Melino, including in finding him guilty on all five counts, were motivated by Ciaprazi's filing of prior grievances and complaints. *Id.* Fifth Cause of Action. Plaintiff's seventh claim similarly attributes the failure of defendants Goord and Selsky to reverse the hearing officer's determination, on appeal, to retaliation for his having engaged in protected activity. *Id.* Seventh Cause of Action. Defendants maintain that these retaliation claims are legally deficient, and that the record contains no evidence upon which a factfinder could conclude that unlawful retaliation occurred.

Claims of retaliation like those asserted by the plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *See id.* at 81-83. Because of the relative ease with which claims of retaliation can be incanted, however, as exemplified by plaintiff's claims in this action, the courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

[t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992 (2002).

In order to state a *prima facie* claim under section 1983 for unlawful retaliation in a case such as this, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct or speech at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492). If the plaintiff carries this burden, the defendants must then show, by a preponderance of the evidence, that they would have taken action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

**7** As can be seen, evaluation of claims of retaliation is a particularly fact-laden exercise, since such claims revolve around both the engaging in protected conduct and establishment of a nexus between that conduct and the adverse action ultimately taken. In making the required analysis in this case, however, the court is somewhat disadvantaged by virtue of the fact that defendants' summary judgment motion is not particularly enlightening as to the basis for their claim that the court is positioned to find, as a matter of law, that plaintiff's retaliation claims are lacking in merit.

In their motion the defendants, in the context of the now-familiar standard governing analysis of First Amendment retaliation claims, acknowledge that the

plaintiff, who has lodged formal complaints of prison conditions and treatment of inmates, has engaged in protected activity. That plaintiff has filed an unusually large number of grievances and lawsuits, and taken other steps to complain publicly about matters associated with his confinement by the DOCS, is both apparent from the record before the court, and not controverted by the defendants. Indeed, in his response to defendants' summary judgment motion, plaintiff proudly states that he has "systematically exposed, vehemently criticized, and even ridiculed the inappropriate and arbitrary policies and actions of the staff at Coxsackie, including the actions of defendant Goord and of the Superintendent and Deputy Superintendents of Coxsackie." [FN7] Plaintiff's Affidavit (Dkt. No. 46) ¶ 32. Plaintiff has therefore established, at least for purposes of the instant motion, that he was engaged in protected activity sufficient to trigger First Amendment rights against acts taken in retribution for having voiced those types of complaints. *Graham,* 89 F.3d at 80;*Morello v. James,* 810 F.2d 344, 346-47 (2d Cir.1987).

> **FN7.** Plaintiff has referred to his efforts in this regard as a "blitz of grievances and complaints[.]" Plaintiff's Aff. (Dkt. No. 46) ¶ 52.

Defendants argue, however, that the record is lacking in evidence to establish the requisite connection between that protected activity and the adverse actions taken against Ciaprazi by prison officials. Defendants' legal position is advanced, in part, in an affidavit from their counsel, Patrick F. MacRae, Esq., outlining the evidence relied upon by the defendants in making their motions. [FN8] Defendants also note, in further support of their motion, the requirement that retaliation claims rest upon more than mere conclusory allegations regarding the state of mind of prison officials. *See* Dkt. No. 39 at 8-9; *e.g., Flaherty,* 713 F.2d at 13.

> **FN8.** The attorney's affirmation in and of itself is, of course, of no evidentiary value in determining the motion for summary judgment since none of the facts upon which such a finding would ostensibly be based are within his personal knowledge. *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011-12 (2d Cir.1986).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

As plaintiff correctly notes, the applicable pleading requirements, including Rule 8 of the Federal Rules of Civil Procedure, provide for mere "notice" pleading, and do not require that complaints contain every detail associated with a plaintiff's claims except in categories not applicable to this case. See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-69, 113 S.Ct. 1160, 1162-63 (1993). Accordingly, the mere fact that the plaintiff's retaliation claims are pleaded in non-specific, conclusory terms does not alone entitle defendants to summary dismissal of those claims.

**\*8** In this case the defendants have satisfied their initial, modest threshold burden of establishing the lack of evidentiary support for plaintiff's retaliation claims. Though conventional wisdom might dictate the submission of affidavits from the primary actors, including notably defendants Rogers and Fitzpatrick, disavowing any retaliatory motives associated with their actions, defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's retaliation claims, including through plaintiff's responses to defendants' interrogatories as well as the proceedings associated with the underlying disciplinary matter, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims. Celotex, 477 U.S. at 323-34, 106 S.Ct. at 2553; see also Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. There is no requirement under Rule 56 of the Federal Rules of Civil Procedure or otherwise that a party affidavit be submitted to support such a motion, which instead can be based upon any admissible evidence. Id.

To demonstrate that a reasonable factfinder could discern a nexus between plaintiff's filing of grievances and the disciplinary matters associated with the incident at issue, Ciaprazi essentially makes two arguments. First, he contends that the manifest falsity of the misbehavior report as well as testimony proffered during the disciplinary hearing give rise to an inference that the disciplinary matters were motivated toward retaliatory animus. Secondly, plaintiff argues that the sheer number of grievances and formal complaints lodged by him, including some close in temporal proximity to the underlying incident, similarly gives rise to a legitimate inference of retaliatory motivation. See Ciaprazi

Memorandum (Dkt. No. 46) at 14.

Plaintiff's argument in this regard is significantly diluted by the sheer number of complaints lodged by him over time. By his own admission, plaintiff has regularly and openly complained of prison policies and practices and during the relevant time period prior to the July 31, 1999 incident, and indeed had filed many formal complaints regarding his treatment while at Coxsackie. Yet, plaintiff has submitted no evidence that any of those complaints related to defendants Rogers or Fitzpatrick, the two principal actors in this case, nor has he pointed to any collaboration between those named in his prior complaints and Fitzpatrick and Rogers. At best, plaintiff has argued that prior to July 31, 1999 he "filed complaints and/or grievances against Lieutenants Sweeney, Armstrong, Skrocky and McDermott, all colleagues of defendant Fitzpatrick of the same rang [sic] with defendant Fitzpatrick." Id. ¶ 32.

In an equally tenuous attempt to link his protected activity with the issuance of a misbehavior report, plaintiff notes that on May 26, 1999 he filed a grievance for harassment against an employee named Fitzpatrick, who was assigned to assist him in connection with another Tier III disciplinary hearing, stating his naked belief, lacking in evidentiary support, that the employee named in that complaint "may be and apparently is a relative of defendant Fitzpatrick." Id. ¶ 33, Exh. 39. Plaintiff also notes that on July 21, 1999 he filed a grievance accusing defendant Goord of "gross abuse of power", requesting an investigation of defendant Goord by the New York State Police and federal authorities, and that five days later, on July 26, 1999, he filed a complaint with various agencies including the United States Department of Prisons complaining of mistreatment. Id. ¶¶ 34, 35.

**\*9** While there is some appeal to finding the requisite fact issue to avoid the entry of summary judgment on plaintiff's retaliation claims based upon the timing of these events, that factor is undermined by the steady stream of grievances filed by him on a regular and continuing basis. Were the plaintiff someone who had rarely if ever complained about prison conditions, but shortly before being issued a misbehavior report had lodged a formal complaint against or implicating the conduct of the officer who issued the disciplinary citation, a very different set of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

circumstances would be presented, and summary judgment would not be warranted. In this case, however, plaintiff can point to no complaints lodged by him against or implicating the conduct of defendant Fitzpatrick, who issued the disputed misbehavior report. Accordingly, I find that the defendants have established that they are entitled to summary dismissal of plaintiff's retaliation claims based upon plaintiff's failure to establish a basis on which a reasonable factfinder could find the requisite connection between plaintiff's grievance activities and the issuance of the misbehavior report and subsequent disciplinary hearing.[FN9] *E.g.,* *Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 389 (W.D.N.Y.1998).

FN9. Prior to the Second Circuit's recent decision in *Gill,* defendants perhaps could have effectively argued that defendants' actions were not likely to deter, and in fact have not chilled, plaintiff's exercise of his First Amendment rights, and therefore do not give rise to a retaliation claim. *E.g.,* *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002); *Curley v. Village of Suffern,* 268 F.3d 65, 72-73 (2d Cir.2001); *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). In its recent decision in *Gill,* however, the Second Circuit clarified that such a finding does not end the inquiry, since the critical focus is not upon the subjective element, but is instead objective, examining whether the retaliatory conduct alleged "would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030 (2d Cir. Feb. 10, 2003)).

C. *Plaintiff's Eighth Amendment Cruel And Unusual Punishment Claim*

In his complaint Ciaprazi, in somewhat indiscriminate fashion, asserts that the actions taken against him by the various defendants resulted in his exposure to cruel and unusual punishment, in violation of the Eighth Amendment.[FN10] Plaintiff's cruel and unusual punishment claims appear to center upon the conditions which he faced as a result of the disciplinary proceedings against him and resulting in SHU confinement initially at

Coxsackie, and later at Upstate and at Clinton. In their motion, defendants assert that these claims are similarly deficient as a matter of law.

FN10. That amendment provides, in pertinent part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also* *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). The Eighth Amendment does not mandate comfortable prisons, but yet it does not tolerate inhumane ones either; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See* *Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J .) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

**\*10** Plaintiff's cruel and unusual punishment claim challenges the fact that 1) he was placed in a double bunk cell at Upstate; 2) was placed in isolation and exposed to light except for five hours each night; 3) was deprived of such amenities such as writing paper and envelopes, proper access to the law library, medical care, access to newspapers, magazines and books, access to the courts, and legal papers; 4) was exposed to loud and boisterous behavior on the part of other inmates; 5) was denied essential clothing and bedding as well as personal hygiene materials, radios or headphones, books, newspapers and magazines; and 6) was exposed to cold conditions, leading him to suffer at least one case of the flu. Complaint (Dkt. No. 1) ¶¶ 52-56; *see also* Plaintiff's Affidavit (Dkt. No. 46) ¶¶ 53-57. To counter these allegations, defendants have submitted nothing to reflect the lack of a basis upon which a reasonable factfinder could conclude that plaintiff was exposed to cruel and unusual punishment while in disciplinary isolation as a result of the Tier III determination now at issue. Instead, defendants' motion focuses upon a narrow aspect of plaintiff's Eighth Amendment claim, in which they assert that the lack of policies guaranteed to result in uniformity throughout the DOCS system of punishments to result in a Eighth Amendment violation.

As skeptical as perhaps one may be regarding plaintiff's ability to ultimately persuade a factfinder that the admittedly unpleasant conditions to which he was apparently exposed and the deprivations suffered while in disciplinary confinement rise to a constitutionally significant level, I am unable to state, based upon the record as currently constituted, that no reasonable factfinder could so conclude. I therefore recommend denial of defendants' motion to dismiss plaintiff's Eighth Amendment cruel and unusual punishment claim relating to the conditions of his confinement.[FN11]

FN11. In their motion, defendants have not argued lack of personal involvement with regard to their Eighth Amendment claims. It therefore remains to be seen whether plaintiff can establish the defendants' participation in the Eighth Amendment violations alleged.

Included within his Eighth Amendment claim, though more appropriately grouped with his due process cause of action, is plaintiff's contention that because the Tier III hearing officer was provided the unfettered discretion, in the event of finding of guilt, to impose a penalty of whatever magnitude seen fit, the disciplinary scheme in place at the DOCS is constitutionally infirm. In plaintiff's case, however, the imposed penalty of ten months of disciplinary confinement, 180 days of which were deferred, fell comfortably within the bounds of acceptable levels under the Eighth Amendment. Consequently, whatever may be said about plaintiff's arguments regarding the discretion affording to hearing officers, he lacks standing to raise such a claim. *See Trammell v. Mantello,* No. 90-CV-382, 1996 WL 863518, at *8-*9 (W.D.N.Y. June 10, 1996) (Tier III regulations pass constitutional muster).

D. *Plaintiff's Procedural Due Process Claim*

In their motion, defendants also challenge plaintiff's contention that he was denied procedural due process during the course of the disciplinary hearing which resulted in his disciplinary confinement for a period of five months. In support of their motion, defendants argue both that plaintiff was not deprived of a constitutionally cognizable liberty interest, and that even assuming he was, he was afforded the requisite process due under the Fourteenth Amendment in connection with that deprivation.

**\*11** To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658;*Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996).

1. *Liberty Interest*

Addressing the first of these required showings, in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84, 115 S.Ct. at 2300;*Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

Defendants challenge the applicability of both of these factors. Initially, defendants question whether New York has, by statute or otherwise, created a protected liberty interest in prisoners remaining free from segregation, including for disciplinary reasons, arguing that it has not. Defendants' Memorandum (Dkt. No. 39) at 14. The cases cited in support of that proposition, however, which relate to whether there is a constitutional or liberty interest in being assigned to a particular program, job assignment, or facility, are inapposite. *See, e.g., Klos v. Haskell,* 48 F.3d 81, 87-88 (2d Cir.1995) (involving revocation of assignment to "shock incarceration" program); *Hall v. Unknown Named Agents of N.Y. State Dept. for Corr. Servs. for APPU Unit at Clinton Prison,* 825 F.2d 642, 645-46 (2d Cir.1987) (involving assignment to Assessment Program and Preparation Unit); *see also Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547 (1976) (no constitutional right of inmate to be placed in any particular facility); *Frazer v. Coughlin,* 81 F.3d 313, 318 (2d Cir.1996) ("no protected liberty interest in a particular job assignment"). Despite defendants' assertion to the contrary, it is now firmly established that through its regulatory scheme, New York State has created a liberty interest in prisoners remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004) (citing *Welch v. Bartlett,* 196 F.3d 389, 394 n. 4 (2d Cir.1999); *see also LaBounty v. Coombe,* No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N .Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.).

Having rejected defendants' contention that the State has not created such an interest, I next turn to examination of whether the conditions of plaintiff's disciplinary confinement, as alleged by him, rise to the level of an atypical and significant hardship under *Sandin.* Atypicality in a *Sandin* inquiry normally presents a question of law.[FN12]*Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). When determining whether a plaintiff possesses a cognizable liberty interest, district courts must examine

the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey,* 197 F.3d at 586;*Arce v. Walker,* 139 F.3d 329, 335-36 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 48-49 (2d Cir.1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[FN13]*Hynes,* 143 F.3d at 658;*Arce,* 139 F.3d at 336.

FN12. In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v.. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

FN13. While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin. Colon,* 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see id.* at 232 n .5), the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not. *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure). In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

**\*12** Given that plaintiff has shown that he was subjected to disciplinary confinement for a period of five months, and has alleged his exposure to conditions beyond those normally associated with such SHU confinement, as described in the applicable regulations, at this juncture I am unable to conclude, as a matter of law, that he was not deprived of a constitutionally significant liberty interest as a result of the disciplinary proceeding at issue. I therefore

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

recommend against summary dismissal of plaintiff's due process claims on this basis.

2. *Due Process*

The procedural protections to which a prison inmate is entitled before being deprived of a recognized liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564-67, 94 S.Ct. 2963, 2978-80 (1974). Under *Wolff,* the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564-67, 94 S.Ct. at 2978-80; *see also Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988).

Plaintiff's procedural due process claim is multi-faceted. In that claim, Ciaprazi maintains that 1) he was denied meaningful assistance by defendant Cole, who refused his request to interview potential witnesses identified by the plaintiff; 2) Hearing Officer Melino effectively denied the plaintiff access to witnesses since witness waiver forms, not to plaintiff's liking in form, were allegedly presented by an unknowledgeable corrections officer to those inmates whose testimony was requested by Ciaprazi, following which those inmates apparently refused to sign the waiver forms and appear to testify on his behalf; 3) the hearing officer was biased and partial, and demonstrated open hostility toward the plaintiff; 4) the hearing officer's disciplinary determination was not supported by the evidence; and 5) the hearing officer refused plaintiff's suggestion to administer polygraph tests to defendants Rogers and Fitzpatrick, as well as to Ciaprazi. Also implicit in plaintiff's due process claim is his contention that his constitutional rights were violated through the issuance of a false misbehavior report.[FN14]

FN14. Among the due process violations alleged in plaintiff's complaint is the claim that by taking into account his prior disciplinary record when

determining the appropriate punishment to be imposed based upon the finding of guilt, hearing officer Melino violated the constitutional guaranty against double jeopardy. Since it is well established that the double jeopardy clause does not apply in the prison disciplinary setting, this claim lacks merit. *Bolanos v. Coughlin,* No. 91 Civ. 5330, 1993 WL 762112, at *13 (S .D.N.Y. Oct. 15, 1993). Plaintiff's contention that the hearing officer's actions in this regard also violated an unspecified New York regulation fares no better, since such an allegation does not automatically support a claim of civil rights violations under 42 U.S.C. § 1983. *Alnutt v. Cleary,* 913 F.Supp. 160, 168 (W.D.N.Y.1996).

Plaintiff's arguments relating to the sufficiency of evidence supporting the hearing officer's finding of guilt can be swiftly discounted. The Constitution, including its Due Process Clause, requires only that there be some evidence of guilt supporting a prison disciplinary determination. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774 (1985). Having reviewed the record of plaintiff's disciplinary proceeding in light of his submissions, I find that this standard has been met.

**\*13** Plaintiff's claims regarding the allegedly false misbehavior report also lack merit. It is well established that in the absence of other aggravating factors, an inmate enjoys no constitutional right against the issuance of a false misbehavior report.[FN15] *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273 (1988). The rationale supporting this general rule is that an inmate's procedural due process rights are adequately safeguarded by the opportunity to challenge and present evidence to rebut the false accusations at a disciplinary hearing. *Freeman,* 808 F.2d at 953.

FN15. Unquestionably, a prisoner does enjoy a substantive due process right against the issuance of a false misbehavior report as retribution for having engaged in protected activity. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir.1995). In light of my finding of no connection between plaintiff's complaints and the issuance by defendant Fitzpatrick of the misbehavior report,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

however, such a claim does not lie in this action.

As for plaintiff's contention that his due process rights were violated when polygraph tests were not administered to key corrections officials, as requested by him, plaintiff has cited no cases-nor is the court aware of any-which require the administering of polygraph tests in connection with parties and witnesses in the context of an inmate disciplinary determination. *See Hinebaugh v. Wiley,* 137 F.Supp.2d 69, 79 (N.D.N.Y.2001) ("some evidence" does not require independent examination of credibility and therefore "certainly does not require" court to order personnel to submit to polygraph to ascertain if hearing testimony was truthful). This issue, then, provides no basis for finding the existence of a procedural due process violation.

Plaintiff's allegations regarding the ineffectiveness of his assigned assistant provide a greater basis for pause. While the requirements associated with the provision of such assistance are modest, they are not non-existent. Under *Wolff,* an inmate facing a Tier III disciplinary hearing is entitled to meaningful assistance in preparing his or her defense. *Eng,* 858 F.2d at 897-98. In this case, plaintiff asserts that while he was assigned an assistant, he was denied meaningful assistance from that individual. In support of this contention, plaintiff alleges that he identified certain witnesses critical to his defense, but that his assistant refused to interview those witnesses with an eye toward requesting their testimony during the hearing. Complaint (Dkt. No. 1) ¶¶ 20-21; Ciaprazi Aff. (Dkt. No. 46) ¶ 40. This, if true, could establish a due process violation based on the inadequacy of the inmate assistance provided to the plaintiff. *See Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998).

In light of my inability to find, as a matter of law, that plaintiff did not suffer the deprivation of a liberty interest as a result of his five month period of disciplinary confinement, and additionally to conclude that no reasonable factfinder could find the existence of a due process violation associated with that disciplinary confinement, I recommend denial of the portion of defendants' summary judgment motion which seeks dismissal of plaintiff's due process claims.

F. *Equal Protection*

In his complaint plaintiff also complains of the alleged deprivation of equal protection. Defendants contend that this claim is also subject to dismissal as a matter of law.

**\*14** "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tx. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985) (citation omitted). The general rule is that a policy is presumed to be valid and will be sustained if the classification drawn by that policy is rationally related to a legitimate state interest. *Id.* at 440, 105 S.Ct. at 3254. One exception to that rule, however, is when a policy classifies by race, alienage, or national origin-"[t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy-a view that those in the burdened class are not as worthy or deserving as others." *Id.* For this reason, these policies are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *Id.* The essence of a cognizable equal protection claim includes a showing of "clear and intentional discrimination." *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401 (1944) (internal quotation and citations omitted).

The apparent basis for plaintiff's equal protection claim is his contention that in light of his national origin, he was treated differently than United States citizen counterparts.[FN16] In the face of defendants' summary judgment motion, it was incumbent upon the plaintiff to come forward with evidence which could support a claim that he was treated differently than other inmates, and that the difference in treatment could properly be attributed to his status as a Romanian. As such evidence, plaintiff offers only a statement made to him by defendant Fitzpatrick at one point, in substance, that plaintiff had "now ... learned to speak English." *See* Plaintiff's Memorandum (Dkt. No. 46) at 29. Beyond this slender reed, plaintiff offers no evidence to support his claim that he was treated differently than inmates not of his national origin, and indeed acknowledges mere speculation on his part as to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

this premise, arguing that "discrimination based on national origin *may* ... have placed [sic] a role in defendants' unlawful actions[.]" Plaintiff's Memorandum (Dkt. No. 46) at 29 (emphasis added). Instead, plaintiff's equal protection claims consist of mere surmise and speculation, and are subject to dismissal on this basis. *See, e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) ( "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

FN16. Plaintiff is a Romanian citizen. Complaint (Dkt. No. 1) at 3.

Despite being obligated to do so at this juncture, plaintiff has failed to adduce any evidence to show either that he was treated differently than his non-Romanian counterparts, and that the difference in treatment was based upon his national origin. I therefore recommend dismissal of plaintiff's equal protection claims as a matter of law.

G. *United Nations Resolutions*

**\*15** Each of plaintiff's eight causes of action is based, in part, upon two international agreements, including the Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights ("ICCPR"). Defendants maintain that as a matter of law, those provisions do not support claims under section 1983.

Section 1983 provides, in pertinent part, for a right of action on behalf of any person deprived of "any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Plaintiff argues that because the United States is a signatory to these two treaty-like provisions, they have the force of law and can be implemented, and individual treaty violations can give rise to recourse, under section 1983.

It is true that violation of a treaty entered into by the United States can serve as a basis for a claim for damages under section 1983, provided that the treaty allows for a

private right of action to redress any alleged violations of its provisions. *Standt v. City of New York,* 153 F.Supp.2d 417, 422-30 (S.D.N.Y.2001) (finding private right of action under section 1983 for violation of the Vienna Convention on Consular Relations, 21 U.S.T. 77, 101 T.I.A .S. No. 6820, 596 U.N.T.S. 261 (April 24, 1963)). To the extent that the defendants argue otherwise, and contend that treaties-as distinct from constitutional and other types of federal statutory provisions-cannot support a claim for section 1983 liability, *see* Defendants' Memorandum (Dkt. No. 39) at 17-18, that position therefore lacks support.

As can be seen, analysis of the sufficiency of plaintiff's claims under the cited treaty provisions turns upon whether those international agreements confer individual rights of action. In order to be found deserving of enforcement under section 1983 as a "law", a treaty ratified by the Senate must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress. *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1298 (3d Cir.1979).

Since plaintiff has pointed to no applicable implementing legislation, nor is the court aware of any, the availability of the ICCPR to support plaintiff's section 1983 claim depends upon whether it is self-executing. The majority of the courts addressing this issue, however, including within the Second Circuit, have concluded that it is not.[FN17]*See, e.g., Poindexter v. Nash,* 333 F.3d 372, 379 (2d Cir.2003); *Murray v. Warden, FCI Raybrook,* No. 9:01-CV-255, 2002 WL 31741247, at \*11 n. 10 (N.D.N.Y. Dec. 5, 2002) (Sharpe, M.J.) (citing *U.S. ex rel. Perez v. Warden, FMC Rochester,* 286 F.3d 1059, 1063 (8th Cir.2002) and *Reaves v. Warden,* No. Civ. A3:01-CV-1149, 2002 WL 535398, at \*9 (M.D.Pa. Mar. 22, 2002). Similarly, the UDHR has been characterized by the Second Circuit as "non-binding." *Flores v. Southern Peru Copper Corp.,* 343 F.3d 140, 167-68 (2d Cir.2003).

FN17. Even in one of the cases relied heavily upon by the plaintiff, *Maria v. McElroy,* 68 F.Supp.2d 206, 231 (E.D.N.Y.1999)-a case which has since been effectively overruled on other grounds, *see Restrepo v. McElroy,* 369 F.3d 627 (2d Cir.2004)-the court recognized that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

the ICCPR was not "self-executing". 68 F.Supp.2d at 231.

**\*16** Based upon the foregoing, and without deciding whether the evidence in the record demonstrates a genuine issue of material fact as to whether those provisions were violated by defendants' alleged actions toward the plaintiff, I find that Ciaprazi's claims under the ICCPR and UDHR are legally deficient as a matter of law. I therefore recommend dismissal of plaintiff's claims which are dependent on those two international agreements.

H. *Personal Involvement*

Defendants claim that plaintiff's claims against defendants Goord and Selsky are legally deficient, in that the record fails to establish their requisite personal involvement in the constitutional violations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

The basis for asserting liability against defendant Selsky arises exclusively from plaintiff's appeal from his disciplinary determination. That appeal was addressed by defendant Selsky, whose review of that appeal sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations. *See, e.g., Gilbert v. Selsky,* 867 F.Supp. 159, 166 (S.D.N.Y.1994).

Plaintiff's claim against defendant Goord is far more tenuous. Plaintiff asserts that because his appeal was mailed directly to defendant Goord who, consistent with his established practice, then referred it to defendant Selsky for review, the Commissioner "presumably read [its] contents." *See* Plaintiff's Memorandum (Dkt. No. 46) at 32. This, coupled with his contention that as the ultimate supervisor of the DOCS defendant Goord was positioned to remedy the violations which he suffered, forms the sole basis for his claims against defendant Goord. These are merely claims against defendant Goord in his supervisory capacity; to sanction them would be to allow for *respondeat superior* liability. Since it is well established that such liability does not lie under section 1983, and there is no other discernible basis to conclude defendant Goord's awareness of or involvement in the matters alleged in plaintiff's complaint, I recommend that defendants' motion be granted and plaintiff's claims against defendant Goord be dismissed based upon lack of personal involvement. *Richardson,* 347 F.3d at 435 (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim"); *Scott v. Coughlin,* 78 F.Supp.2d 299, 312 (S.D.N.Y.2000) (Commissioner's act of forwarding appeals addressed to him to Selsky insufficient to establish personal involvement; citing, *inter alia, Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1991)).

IV. *SUMMARY AND RECOMMENDATION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)
(Cite as: 2005 WL 3531464 (N.D.N.Y.))

**\*17** The plaintiff, an experienced and well-versed *pro se* litigant, has commenced this action asserting various claims arising out of the issuance of a disciplinary misbehavior report and the process which followed, including the punishment received. Upon examination of the record, I find no evidence tending to demonstrate that the adverse actions taken against the plaintiff were motivated by disciplinary animus, and thereby recommend the entry of summary judgment dismissing his retaliation claim. I do, however, find the existence of triable issues of fact regarding whether or not Ciaprazi was deprived of a constitutionally significant liberty interest, and whether the assistance provided to the plaintiff in anticipation of his hearing was constitutionally adequate, and therefore recommend against summary dismissal of plaintiff's procedural due process claims.

Addressing plaintiff's Eighth Amendment claims I find, particularly in view of the lack of any evidence to the contrary, that the conditions described by the plaintiff could lead a reasonable factfinder to conclude that they amounted to cruel and unusual punishment, and therefore recommend against the entry of summary judgment dismissing plaintiff's Eighth Amendment claim. I further find, however, no basis to conclude that a reasonable factfinder could find an Eighth amendment violation based on the Tier III regulatory scheme, a violation of the Equal Protection Clause of the Fourteenth Amendment, or that the international treaty provisions cited give rise to a private right of action. Accordingly, I recommend dismissal of those claims.

Finally, I recommend dismissal of plaintiff's claims against defendant Goord based upon the lack of his personal involvement, but against dismissal of plaintiff's claims against defendant Selsky on this basis. It is therefore hereby

RECOMMENDED that defendants' summary judgment motion (Dkt. No. 39) be GRANTED in part, and that all of plaintiff's claims against defendant Goord, and all of plaintiff's claims against the remaining defendants except his procedural due process and Eighth Amendment conditions of confinement causes of action, be DISMISSED, but that to the extent of those claims, with

respect to which triable issues of fact exist, I recommend that defendants' motion be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have TEN days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Fed.R.Civ.P. 6(a), 6(e), 72; 28 U.S.C. § 636(b)(1); *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citations omitted); and it is further hereby

ORDERED that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

N.D.N.Y.,2005.
Ciaprazi v. Goord
Not Reported in F.Supp.2d, 2005 WL 3531464 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

(Cite as: 1995 WL 760651 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Reginald MARTIN, Plaintiff,

v.

J.T. MITCHELL, Lieutenant at Eastern Correctional Facility; P. Zanelli, Corrections Officer at Eastern Correctional Facility; R. Conklin, Corrections Officer at Eastern Correctional Facility, Defendants.

No. 92-CV-716.

Nov. 24, 1995.

Reginald Martin, Ossining, New York, plaintiff pro se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York (Deirdre Roney, Asst. Attorney General, of counsel), for defendants.

MEMORANDUM, DECISION, & ORDER

MCAVOY, Chief Judge.

**\*1** Plaintiff, a New York State Department of Corrections ("D.O.C.S.") inmate, filed suit against defendants pursuant to 28 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendment rights. Defendants filed a motion to dismiss the original complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). On August 7, 1993, this Court denied defendants' motion with respect to plaintiff's excessive punishment claim, but granted the motion with respect to plaintiff's due process, racial discrimination, and conspiracy to discriminate claims. The Court dismissed these claims without prejudice to replead them in an amended complaint. On October 7, 1993, plaintiff proceeded to file what the Court looks beyond the procedural inadequacies to deem an amended complaint. In response, defendant filed a motion for summary judgment as to all of plaintiff's claims pursuant to Rule 56(c). Magistrate Judge DiBianco recommended in his Report-Recommendation that the Court grant defendants' motion. Plaintiff filed objections.

I. Background

A. Facts

At all relevant times, plaintiff was incarcerated at the Eastern Correctional Facility. On January 12, 1991, while defendant Conklin was assisting the mess hall staff in Mess Hall # 2, plaintiff told him to, "keep your Mother Fucking hands off the food." Mitchell Aff. Ex. A. Plaintiff's comment created a disturbance in the mess hall, as inmates in the food line focussed their attention on plaintiff and defendant Conklin. Later that day, defendant Conklin filed a misbehavior report against plaintiff charging him with violations of Rules of Inmate Behavior 107.11 (verbal harassment) and 104.13 (creating a disturbance).

On January 14, 1991, defendant Zanelli delivered a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

(Cite as: 1995 WL 760651 (N.D.N.Y.))

copy of the misbehavior report to plaintiff's cell. Mitchell Aff. Ex. E ("Hearing Transcript"), 2. When plaintiff returned to his cell at 11:10 that morning, he found a copy of the misbehavior report there. Disciplinary Action and Hearing Request, 2, attached to Am. Compl. Defendant Mitchell commenced plaintiff's disciplinary hearing on January 15, 1991. When he arrived at the hearing, plaintiff claimed that he had not received a copy of the misbehavior report. To ensure a fair hearing, defendant Mitchell adjourned the hearing and served plaintiff with a copy of the misbehavior report. Defendant Mitchell recommenced the hearing twenty-four hours later.

At the hearing, plaintiff testified that another corrections officer besides defendant Conklin had been present during the incident, but that he did know the other officer's name. However, plaintiff originally requested that defendant Mitchell call only two other witnesses to testify, including Inmate Mendoza. Inmate Mendoza testified that a person nicknamed "Budd" had been working behind the food service line at the time of the incident, but he did not provide any additional information about "Budd." Hearing Transcript, 11. Plaintiff then requested that defendant Mitchell call the corrections officer whose nickname is "Budd" to testify. When defendant Mitchell asked plaintiff for "Budd's" real name, plaintiff responded that he did not know. *Id.* at 12. Defendant Mitchell adjourned the hearing for three hours to give plaintiff an opportunity to discover "Budd's" identity. *Id.* at 9. After the hearing recommenced, plaintiff indicated that he had failed to learn "Budd's" real name. *Id.* at 12. Then, plaintiff asked whether defendant Mitchell could find out the officer's name and defendant Mitchell said that he could not. Plaintiff responded, "Okay, no problem." *Id.*

**\*2** Defendant Mitchell found plaintiff guilty of verbal harassment and of creating a disturbance. Mitchell Aff. Ex. C. He imposed a penalty of keeplock confinement and loss of packages, commissary, and phone privileges for thirty days. Plaintiff appealed defendant Mitchell's decision to the Superintendent's Office, which affirmed.

B. Summary Judgment Standard

Under Fed. R. Civ. Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986), *on remand,* 807 F.2d 44 (3d Cir. 1986), *cert. denied,* 481 U.S. 1029 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir. 1975), and the trial court must resolve all ambiguities and draw all inferences in favor of the nonmovant. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied* 484 U.S. 918 (1987). When a party seeks summary judgment against a *pro se* litigant, the Court must afford the nonmovant special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir. 1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

II. Discussion

A. Fourteenth Amendment Claims

1. Due Process

a. Notice

Plaintiff alleged that defendant Mitchell violated his due process rights by commencing the disciplinary hearing before plaintiff received a copy of the misbehavior report. As the Magistrate Judge indicated, this claim is meritless.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

(Cite as: 1995 WL 760651 (N.D.N.Y.))

Admittedly, New York Prison Regulations and the Constitution require that inmates receive misbehavior reports at least twenty-four hours prior to their disciplinary hearings. N.Y. COMP. CODES R. & REGS. tit. 7, § 253.6(a) (1990); Wolff v. McDonnell, 418 U.S. 539, 564 (1974). The record indicates, however, that plaintiff received a copy of his misbehavior report at least twenty-four hours before the hearing. When plaintiff arrived at the hearing, defendant Mitchell read the charges against him. At that point, before defendant Mitchell even asked plaintiff for his plea, plaintiff insisted that he had not received a copy of the misbehavior report. Defendant Mitchell gave plaintiff a copy of the report and waited another twenty-four hours before recommencing the hearing. Hearing Transcript, 1-2. Thus, defendant Mitchell ensured that plaintiff would have at least twenty-four hours to prepare his defense to the misbehavior report.

In his objections to the Report-Recommendation, plaintiff makes the meaninglessly literal argument that the mere fact that defendant Mitchell started and then adjourned the hearing before plaintiff received a copy of the report means that his due process rights were violated. Magistrate Judge DiBianco fully and adequately addressed this argument in the Report-Recommendation. The purpose of the twenty-four hour rule is to provide inmates with sufficient time to prepare to defend charges filed against them, see Wolff, 418 U.S. at 564; Benitez v. Wolff, 985 F.2d 662, 665 (2d Cir. 1993), not to hold hearing officers to a rigid and useless requirement that they may only call an inmate into a hearing room once they are positive that the inmate received a copy of his misbehavior report at least twenty-four hours earlier. Defendant Mitchell's adjournment for twenty-four hours, which guaranteed that plaintiff would have sufficient time to prepare his defense, cured any deficiency in notice that may have occurred. Plaintiff has not and cannot identify any prejudice to him that resulted from the notice procedures about which he complains.

**\*3** Even if defendant Mitchell did not provide the requisite twenty-four hours' notice, plaintiff would

arguably not have a viable due process claim. In Uzzell v. Scully, 893 F. Supp. 259 (S.D.N.Y. 1995), the plaintiff, who had been confined to keeplock for twenty-three days following a disciplinary hearing, raised a claim nearly identical to the one currently under discussion. The court held that under Sandin v. Conner, 115 S.Ct. 2293 (1995), because prisoners do not have protected liberty interests in remaining free from keeplock, the State can confine prisoners there without giving them twenty-four hours' prior notice of the charges against them. Uzzell at 263. Plaintiff in this case has never offered evidence to show that his thirty days' keeplock confinement constituted the sort of "atypical and significant hardship ... in relation to the ordinary incidents of prison life" that now serves as the trigger for inmates' due process protections. Sandin, 115 S.Ct. at 2300.

Plaintiff has failed to raise a genuine issue of material facts as to whether he received constitutionally adequate notice of his disciplinary hearing. The Court will thus grant defendants' motion for summary judgment on this claim.

b. Documentary Evidence

Plaintiff claims that defendant Mitchell violated New York Correctional Regulations, and therefore his due process rights, by refusing to let him read "Chapter V, Title 7," into the record. According to the relevant regulation, "The inmate, when present, may reply orally to the charge and/or evidence and shall be allowed to submit *relevant* documentary *evidence* or written statements on his behalf." N.Y. COMP. CODES R. & REGS. tit. 7, § 253.6.

The first response to plaintiff's claim is that in the aftermath of Sandin, the "shalls" that dot prison regulations do not automatically create protected liberty interests. 115 S.Ct. at 2299; see also Delaney v. Selsky, 1995 WL 581235, at \*2 (N.D.N.Y. Oct. 2, 1995). Sandin

Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

(Cite as: 1995 WL 760651 (N.D.N.Y.))

also suggests that plaintiff's thirty days' keeplock confinement and loss of privileges did not deprive him of a protected liberty interest, which in turn suggests that plaintiff did not have a constitutional right to any hearing whatsoever, let alone one in which he is allowed to submit documentary evidence.

Second, assuming that plaintiff did have a right to a hearing, defendant Mitchell's refusal to let plaintiff read the text of a statute into the record did not violate the prison regulations or plaintiff's due process rights. "Documentary evidence" commonly refers to documents that help to establish the truth or falsity of a proposition. For instance, a medical record is documentary evidence that a patient has a certain medical condition. The text of a regulation, however, is not documentary evidence of anything other than the fact that the regulation exists. Plaintiff failed to show how the existence of the regulation he cited is in any way relevant to defendant Mitchell's determination as to whether plaintiff made the statement charged in his misbehavior report. Magistrate Judge DiBianco made this point clearly and plaintiff has not raised any valid objections to it.

**\*4** Therefore, defendant Mitchell did not act improperly when he refused to allow plaintiff to read the text of the regulation into the record. Plaintiff has thus failed to establish that any genuine issues exist with respect to the material facts giving rise to this part of his due process claim.

c. Right to Call Witnesses

Plaintiff only objects to the Magistrate's analysis of defendant Mitchell's refusal to call one witness, the corrections officer identified merely as "Budd." Prison regulations and pre-*Sandin* due process law afford inmates the right to call witnesses on their behalf to offer material testimony at disciplinary hearings. N.Y. COMP. CODES R. & REGS., tit. 7, § 253.5 (1990); *Wolff,* 418 U.S. at 566.

However, hearing officers need not grant every request to call a witness; the due process rule contains sufficient flexibility and accommodation to give them "the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses ... whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* at 566-67.

Defendant Mitchell adjourned the hearing for three hours to give plaintiff an opportunity to discover the identity of "Budd." Hearing Transcript, 9. When plaintiff returned to the hearing, he still could not provide "Bud's" true name. *Id.* at 12. Defendant Mitchell then told plaintiff that he could not find out who "Budd" was and plaintiff responded, "Okay, no problem." *Id.*

In response to plaintiff's assertion that defendant Mitchell had a duty to investigate the identity of "Budd" and call him to testify, the Magistrate Judge determined that even if defendant Mitchell could have identified "Budd" easily and even if he had an obligation under current law to do so, *see* Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir. 1991), he also had a sound qualified immunity defense. Plaintiff has failed to raise any cogent objections to the Magistrate Judge's suggested resolution of this claim. The Court therefore adopts the Magistrate Judge's determination that the facts of the case at bar are distinguishable from *Kingsley* and if they are not, that defendant Mitchell has a valid qualified immunity defense. Furthermore, as stated above, *Sandin* casts substantial doubt on whether defendants deprived plaintiff of a protected liberty interest at all.

d. False and Retaliatory Misbehavior Report

The plaintiff having failed to raise any meritorious objections to the Magistrate Judge's analysis of these issues, the Court adopts the relevant portions of the Report-Recommendation for the reasons stated therein.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

(Cite as: 1995 WL 760651 (N.D.N.Y.))

2. Racial Discrimination

The Magistrate Judge recommended granting defendants' motion for summary judgment as to plaintiff's equal protection claim on the ground that plaintiff failed to plead his claim with the requisite specificity. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.") As the Magistrate Judge correctly determined, plaintiff has failed to alleged any specific facts to support his conclusory allegations of racial discrimination. Plaintiff's objections to the Report-Recommendation are similarly devoid of specific support for his equal protection claim; he merely asserts that "the overall scenario of this entire disciplinary hearing smells of a racially motivated attitude." Obj, 5-6. As plaintiff has already had numerous opportunities to support his conclusory allegations with specific facts, the Court is disinclined to permit him to file a second amended complaint.

B. Eighth Amendment Claim

**\*5** The plaintiff has failed to raise any arguments in his objections to the Report-Recommendation that the Magistrate Judge has not already considered and adequately resolved. The Court therefore adopts the relevant portion of the Report-Recommendation for the reasons stated therein.

III. Conclusion

Defendants' motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.

N.D.N.Y.,1995.

Martin v. Mitchell

Not Reported in F.Supp., 1995 WL 760651 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court,

W.D. New York.

Nathaniel GATES, Plaintiff,

v.

Donald SELSKY, et al., Defendants.

No. 02 CV 496.

Sept. 2, 2005.

Nathaniel Gates, Alden, NY, Pro Se.

Darren Longo, Peter B. Sullivan, Office of the New York State Attorney General, Buffalo, NY, for Defendants.

Order

SCOTT, Magistrate J.

**\*1** Before the Court are (a) plaintiff's motion for summary judgment (Docket No. 47), and (b) defendants' cross-motion for summary judgment (Docket No. 56). The parties consented to proceed before the undersigned as Magistrate Judge (Docket No. 53, Mar. 7, 2005).

Responses to plaintiff's motion eventually were due by June 30, 2005 (as extended at the request of defense counsel, with the understanding that they would cross-move), and replies (if any) were due by August 1, 2005, with the motion deemed submitted on the latter date (Docket Nos. 51, 52, 55, 65). Responses to the defense cross-motion were due by August 1, 2005, and that motion was deemed submitted on August 1, 2005 (Docket No. 65). Defendants submitted for *in camera* review four pages from an exhibit to one of the defendant's Declarations.[FN1] The Court issued an Order to Show Cause, returnable August 3, 2005, on why these documents should be reviewed *in camera* without service upon plaintiff (Docket No. 66). The Court then ordered defendants either to serve and file these four documents or they would be excluded from judicial consideration (Docket No. 68). That Order gave defendants until August 19 (seven business days from entry of the Order) in order to serve and file the four documents (*id.*). Defendants filed and served these documents (Docket No. 69, Decl., Ex. A, with certificate of service).

FN1. *See* Docket No. 58, Bradt Decl., Ex. B88-91.

*BACKGROUND*

The present action involves an August 1999 incident in the Attica Correctional Facility which resulted in a Tier III administrative hearing in which plaintiff, an inmate proceeding pro se, now claims violated his constitutional rights to due process of law. Plaintiff has amended the Complaint several times (Docket Nos. 17 (motion for leave to amend), 25 (Order granting leave to amend), 27 (Amended Compl.), 30 (motion for leave to amend), 35 (motion for extension of time to file amended complaint), 36 (Order granting leave to amend), 37 (motion to amend), 39 (Order granting leave), 41 (Amended Complaint)). He now alleges a single cause of action for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

deprivation of due process under the Fourteenth Amendment (Docket No. 41, Am. Compl. ¶¶ 26, 27). Plaintiff seeks a declaratory judgment that defendants' conduct violated his constitutional rights; $150,000 in compensatory damages against defendant Selsky, $100,000 against defendant Bradt, and $75,000 against defendant Westermeier; punitive damages of $20,000 against each defendant, and other relief (Docket No. 41, Am. Compl., Relief ¶¶ (A)-(D)).

*Factual Allegations*

According to plaintiff's statement of undisputed facts (Docket No. 50) [FN2] plaintiff was accused in a misbehavior report on August 10, 1999, by correction officer Garbacz for violating prison rules 104.11, violent conduct; 104.13, creating a disturbance; 100.11, assault on staff; 106.10, refusing a direct order; and 115.10, refusing a search or frisk (Docket No. 50 ¶ 4). Later that day, plaintiff was accused in a second misbehavior report by correction officer Verrastro for violation of prison rules 113.10, weapon, and 113.25, drug possession (*id*. ¶ 5). Plaintiff was immediately removed from general prison population and placed in housing unit. Once he was served with the misbehavior reports, plaintiff selected defendant Correction Officer R. Westermeier as his employee assistant. (*Id*. ¶ 6.) Plaintiff claims that Westermeier denied him assistance in responding to the second misbehavior report (*id*. ¶ 7). A combined disciplinary hearing was conducted before defendant Captain Mark Bradt, on September 7, 1999 (*id*. ¶¶ 8, 9; *see* Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 2). There, plaintiff objected to Westermeier not providing assistance regarding the second report (Docket No. 50, Pl. Statement ¶ 9). The hearing was conducted in disregard of plaintiff's objections and plaintiff was found guilty of all charges (*id*. ¶¶ 10-11). He was sentenced to twelve months in special housing unit (or "SHU"), loss of package, commissary, and telephone privileges, eighteen months loss of personal clothing, and recommendation of loss of good time (*id*. ¶ 11; Docket No. 57, Defs. Statement ¶ 42). Plaintiff filed a timely appeal to defendant Donald Selsky, director of Special Housing Units within the Department of Correctional Services ("DOCS"), alleging that he was

denied assistance and was not informed, notified, or allowed to comment upon the evidence against him (Docket No. 50, Pl. Statement ¶ 12). On or about November 17, 1999, defendant Selsky affirmed the disciplinary hearing's determination (*id*. ¶ 13).

FN2. Defendants' Response to plaintiff's Statement, Docket No. 57, generally does not dispute plaintiff's factual allegations, *id*. at pages 10-12, but defendants object that plaintiff fails to cite to the evidentiary record in his Statement, Docket No. 64, Defs. Memo. at 6.

*2 Plaintiff claims that he was held in special housing unit for 365 days due to defendant Selsky's failure to reverse this disciplinary decision. (Docket No. 49, Pl. Aff. ¶ 22.) Defendants, however, contend that plaintiff only served six months in special housing unit on defendant Bradt's determination (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15). Selsky modified Bradt's determination on the loss of good time, reducing it from twelve months to six (Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A). Plaintiff filed an Article 78 petition in New York State Supreme Court challenging this determination on or about May 31, 2000 (Docket No. 50, Pl. Statement ¶ 14; *see* Docket No. 59, Fritschi Decl. ¶¶ 4, 5, Ex. A). Selsky administratively reversed the misbehavior reports; plaintiff claims that Selsky conceded to violation of plaintiff's rights (Docket No. 50, Pl. Statement ¶ 15; *see also* Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15 (agreeing that Selsky administratively reversed and expunged the disciplinary reports)). Selsky issued a memorandum on July 21, 2000, expunging the second misbehavior report stating the reason for this action was because it was "modified after discussion with AG's office [d]ue to denial of assistance on charges for C.O. Verrastro report." (Docket No. 50, Pl. Statement ¶ 16; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 16; Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A.) Selsky then issued a second memorandum on August 22, 2000, providing a complete expungement of all charges, again allegedly reversed following discussion

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

with the Attorney General's office "due to failure to provide inmate with notice that certain documentary evidence would be considered" (Docket No. 50, Pl. Statement ¶ 17; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 17; Docket No. 62, Selsky Decl. ¶ 23, Ex. C000123). Selsky submitted these memoranda in state court as support for his motion to dismiss the Article 78 petition as being moot (Docket No. 50, Pl. Statement ¶ 18; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 18; *see* Docket No. 59, Fritschi Decl. Ex. B).

*Plaintiff's Motion*

Prior to his release from Attica Correctional Facility on parole (*see* Docket No. 57, Defs. Statement ¶ 81), plaintiff moved for summary judgment (Docket No. 47). He poses four issues for resolution with his motion: (1) whether he demonstrated a "liberty interest" for his twelve months in special housing unit as being atypical and significant hardship for inmates; (2) whether defendants are barred by collateral estoppel from relitigating the due process issues for denial of meaningful assistance and furnishing notice of evidence against him; (3) whether defendants are liable for violations of plaintiff's due process rights; and (4) whether defendants are shielded by qualified immunity. (Docket No. 48, Pl. Memo. at (2)).

*Defendants' Cross-Motion*

**\*3** Defendants cross-moved for an order denying plaintiff summary judgment and for summary judgment to them to dismiss the Complaint (Docket No. 55). According to defendants, plaintiff had a list of employee assistants that included defendant correction officer Robert Westermeier, but plaintiff did not select him (Docket No. 57, Defs. Statement ¶¶ 6, 7; Docket No. 58, Bradt Decl. ¶ 20, Ex. B, at 000092). Plaintiff testified that Westermeier was not his employee assistant (Docket No. 57, Defs. Statement ¶ 9; Docket No. 61, Defs. Atty. Decl. Ex. A, Pl. EBT Tr. at 48). Westermeier did meet with potential witnesses who declined to participate (Docket No. 57, Defs. Statement ¶¶ 12-16). Defendant Bradt, as

hearing officer, had sole discretion to affirm the charges based on the evidence presented to him and had discretion to impose penalties (Docket No. 57, Defs. Statement ¶¶ 25-26; Docket No. 62, Selsky Decl. ¶¶ 5, 6). Bradt interrogated those of plaintiff's identified witnesses who agreed to participate; all said they saw the incident and saw plaintiff had complied with the search procedures (Docket No. 57, Defs. Statement ¶¶ 28-31). Bradt then took the testimony of two officers (*id.* ¶ 33). Bradt states in his Declaration that he relied upon a confidential statement made by another officer (Docket No. 58, ¶¶ 12-13, 14). These documents were subject to the Order to Show Cause (*see* Docket No. 66 (Order to Show Cause), 68 (Order compelling filing and service), 69 (defendants' production of documents)).

*DISCUSSION*

I. Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003); Fed.R.Civ.P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. *Ford, supra,* 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir.) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied,* 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed); *McCarthy v. American Intern. Group, Inc.,* 283 F.3d 121, 124 (2d Cir.2002); *Marvel Characters v. Simon,* 310 F.3d 280, 285-86 (2d Cir.2002).

## II. Plaintiff's Motion

### A. Liberty Interest

**\*4** For plaintiff's due process violation claim, he has to establish that he lost a cognizable liberty interest. Under the analysis of *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and its progeny, plaintiff argues that he suffered a loss of liberty for being placed in SHU for twelve months. In this Circuit, three factors must be evaluated to determine if an inmate has a constitutionally significant liberty interest apart from the normal deprivations inherent with imprisonment; the effect of segregation on the length of the inmate's imprisonment, comparison of conditions in SHU with that of the general population, and the duration of the segregation. *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998). On the duration of segregation element, prolonged confinement in SHU, or a sentence for prolonged confinement, has been held in this Circuit to be atypical and a deprivation of an inmate's liberty. *See Colon v. Howard,* 215 F.3d 227 (2d Cir.2000) (305 days SHU confinement); *Sims v. Artuz,* 230 F.3d 14 (2d Cir.2000) (7 months SHU confinement in restraints, aggregated sentences to SHU of 3 1/2 years); *Lee v. Coughlin,* 26 F.Supp.2d 615 (S.D.N.Y.1998) (376 days SHU confinement); *see also Giano v. Selsky,* 238 F.3d 223, 225-26 (2d Cir.2001) (125 days SHU confinement in new facility after 670 days confinement in former facility, Second Circuit aggregated two confinements).

Plaintiff complains that being in maximum security reduced his chances to being released on parole. (Docket No. 48, Pl. Memo. at 5.[FN3]) Plaintiff claims that he was confined to special housing unit for 365 days, with loss of packages, commissary, telephone calls, and loss of access to personal clothes for eighteen months, constituting a departure from ordinary confinement to require *Sandin* due process protections (*id.*). *See Colon v. Howard,* 213 F.3d 227 (2d Cir.2000); *Lee v. Coughlin,* 26 F.Supp.2d 615 (S.D.N.Y.1998).

FN3. Dated March 4, 2005, before plaintiff actually being released on parole in May 11, 2005. Docket No. 61, Defs. Atty. Decl. ¶ 10, Ex. B.

Defendants, however, contend that plaintiff was confined to the special housing unit on Bradt's adoption of the misbehavior reports at issue here for only six months (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15; Docket No. 62, Selsky Decl. ¶¶ 24-27, 29-31, Ex. D131-34), suggesting that an issue of fact exists. Selsky states that, by the time he reversed the misbehavior reports, plaintiff had served all the special housing unit time imposed by Bradt (Docket No. 62, Selsky Decl. ¶ 24), but plaintiff meanwhile accumulated other misbehavior reports which resulted in penalties that he served consecutively to the SHU time he had under the misbehavior reports at issue in this case (*id.* ¶¶ 25-26). When Selsky reversed Bradt's determination, the time plaintiff served was credited to other misbehavior penalties (*id.* ¶¶ 27, 29-31, Ex. D131-34). They contend that, as to Selsky himself, at most he would be liable for three months (from when he initially affirmed Bradt's decision until Selsky's expungement of the discipline) (Docket No. 64, Defs. Memo. at 8 n. 3). Defendants conclude that the conditions within SHU are not dramatically different from general prison population (*id.* at 8-9, *citing Husbands v. McClellan,* 990 F.Supp. 214, 218-19 (W.D.N.Y.1998) (Larimer, Ch. J.)).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

**\*5** Plaintiff was placed in special housing unit on August 10, 1999, following the incident, and defendant Selsky expunged the misbehavior reports on August 20, 2000. In *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir.2000), the Second Circuit held that a *sentence* of one year in SHU was a sufficient length to be atypical under *Sandin*. Here, defendants argue that plaintiff was confined only six months in SHU. But the fact he was *sentenced* to twice that term is sufficient length to be atypical. Therefore, plaintiff has established a liberty interest that possibly was infringed by defendants.

**B. Collateral Estoppel**

Plaintiff contends that the order dismissing his Article 78 petition was a judgment that collaterally estops defendants' defense (*see* Docket No. 48, Pl. Memo. at 6-7). Defendants argue that the Article 78 proceeding has no collateral estoppel effect on them in this action since that proceeding was dismissed as moot. (Docket No. 64, Defs. Memo. at 6-7.) Plaintiff concedes that an order was entered mooting his petition (Docket No. 48, Pl. Memo. at 7). That order, however, only dismissed the petition as moot (Docket No. 59, Fritschi Decl. Ex. C), without granting the relief requested (*cf.* Docket No. 48, Pl. Memo. at 7). Absent a prior judgment on the merits of the petition, there is no judgment to collaterally estop defendants. Defendant Selsky's memoranda (the rationale plaintiff claims for deeming his Article 78 petition moot, *cf.* Docket No. 48, Pl. Memo. at 8-10) is not a judgment (Docket No. 64, Defs. Memo. at 7). At most, it is evidence and a possible admission, but by itself it lacks preclusive effect.

**C. Due Process Violation**

Plaintiff argues that each defendant is personally liable for their respective roles in this matter. Defendant Westermeier was the assigned employee assistant but allegedly failed to provide that assistance to plaintiff. Defendant Bradt was the hearing officer and defendant Selsky was the appellate review official; both disregarded plaintiff's two objections to the disciplinary hearing that he was deprived assistance and was not informed of the evidence against him. (Docket No. 48, Pl. Memo. at 10-11.)

1. Westermeier as Employee Assistant

Plaintiff here objects to the quality of the employee assistance afforded him by defendant Westermeier. Westermeier substituted for one of the employee assistants plaintiff previously selected, contacting the witnesses plaintiff identified and reporting the results of these inquires (that either the witnesses did not observe anything or declined to testify) to him.

According to the disciplinary hearing record, plaintiff was told that he was not being provided with an employee assistant for the second misbehavior report for weapon possession, drug possession, smuggling, and a facility visiting violation because he was not confined in SHU on that report (Docket No. 58, Bradt Decl. Ex. A12, 8). But plaintiff's request for employee assistance and the form submitted for his signature by Westermeier indicated that the named assistants were for two misbehavior reports (*id.* Ex. A92, 97).

a. Right to Employee Assistance in Disciplinary Proceedings

**\*6** The United States Court of Appeals for the Second Circuit in *Eng* established for inmates the limited constitutional right to "some assistance" to them while they are in SHU or otherwise disabled by being transferred to another facility while their disciplinary proceedings were pending. *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir.1988). This assistance must be provided in good faith and in the best interest of the inmate, *id. at 898.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

Recognizing that an inmate in SHU has an extremely limited ability to prepare his defense for a disciplinary hearing (such as to formulate a defense, collect statements, interview witnesses, compile documentary evidence), *id. at 897,* an employee assistant, at a minimum, is to perform pre-hearing investigatory tasks that the inmate would have done but for his incarceration in SHU or other disability. *id. at 898; Pilgrim v. Luther,* No. 01 Civ. 8995, 2003 U.S. Dist. LEXIS 2933, at *18 (S.D.N.Y. Feb. 27, 2003). An inmate may waive this limited right to assistance, *see, e.g., Jermonsen v. Coughlin,* No. 86 CV 208, 2001 U.S. Dist. LEXIS 23577, at *37 (N.D.N.Y. July 25, 2001) (Peebles, Mag. J.).

The employee assistant is to do what the inmate instructs him to do. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993); *Dawes v. Carpenter,* 899 F.Supp. 892, 896 (N.D.N.Y.1995). But an inmate is not entitled to the employee assistant serving as his advocate or counsel, *Jackson v. Johnson,* 30 F.Supp.2d 613, 619 (S.D.N.Y.1998) (Peck, Mag. J.), or to have that assistant serve as a private investigator, *Shepard v. Coughlin,* No. 91 Civ. 8725, 1993 U.S. Dist. LEXIS 3170, at *13 (S.D.N.Y. Mar. 16, 1993). The assistant only acts as the inmate's surrogate, *Samuels v. Selsky,* No. 01 Civ. 8235, 2003 U.S. Dist. LEXIS 19162, at *36 (S.D.N.Y. Oct. 24, 2003) (quoting *Jackson, supra,* 30 F.Supp.2d at 619, internal citation omitted). The inmate also is not entitled to the assistant of his choice, *Jermonsen, supra,* 2001 U.S. Dist. LEXIS 23577, at *36, state regulations only afford the inmate the *opportunity* to select an assistant of his choice and do not require that this choice be honored, *Samuels, supra,* 2003 U.S. Dist. LEXIS 19162, at *38-39; *Dawes v. Selsky,* 265 A.D.2d 825, 696 N.Y.S.2d 327, 328 (4th Dep't 1999).

Failing to provide assistance without a valid reason may be the basis for a § 1983 claim, with the burden of proving a rationale for declining to assist the inmate upon the employee assistant, *Fay v. Coughlin,* 893 F.2d 475, 478 (2d Cir.1990) (per curiam); *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). On one extreme, an assigned

assistant who does nothing to assist an inmate "has failed to accord the prisoner his limited constitutional due process right of assistance." *Eng, supra,* 858 F.2d at 898. But the United States District Court for the Southern District of New York evaluated the adequacy of the assistant's performance on a harmless error analysis, *Samuels, supra,* 2003 U.S. Dist. LEXIS 19162, *36, *38 (citing cases, holding plaintiff was disciplined based upon other evidence); *but cf. Pilgrim, supra,* 2003 U.S. Dist. LEXIS 2933, at *19 (ultimate outcome of disciplinary hearing not determinative of whether right to assistance was violated). Courts have found assistance to be adequate when a replacement assistant interviewed witnesses but failed to tell the inmate, *Silva v. Coughlin,* No. 89 Civ. 8584, 1992 U.S. Dist. LEXIS 6732, at *16-20 (S.D.N.Y. May 18, 1992), *aff'd,* 992 F.2d 20 (2d Cir.1993), or when the inmate alleged lack of assistance in finding documents, courts found that the documents did not exist, *Mays v. Mahoney,* No. 91 Civ. 3435, 1993 U.S. Dist. LEXIS 19234, * 17-19 (S.D.N.Y. Nov. 23, 1993). This Court held that, where an employee assistant interviewed witnesses and reported to the inmate, nothing else was required of the assistant, *Jermosen v. Coughlin,* No. 89 CV 1140, 1993 U.S. Dist. LEXIS 11364, at *10-12 (W.D.N.Y. Aug. 5, 1993) (Elfvin, J.).

b. Application

**\*7** Here, defendant Westermeier was covering for another employee who plaintiff identified as his assistant. *Cf. Lee v. Coughlin,* 902 F.Supp. 424, 432 (S.D.N.Y.1995) (defendant substituted for three chosen assistants, nothing in record why chosen assistants were not available for duration of disciplinary hearing); *Silva, supra,* 1992 U.S. Dist. LEXIS 7323, at *20-21 (substitute assistant), *aff'd,* 992 F.2d 20 (2d Cir.1993). Westermeier questioned several of plaintiff's witnesses, securing signatures of those inmates to forms in which they declined to testify (Docket No. 63, Westermeier Decl. ¶¶ 10-12), meeting with plaintiff one time (*id.* ¶¶ 13-19).

Plaintiff complains that he gave Westermeier a list of

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

potential witnesses and list of questions to be asked each witness, but Westermeier failed to interview these potential witnesses (Docket No. 49, Pl. Aff. ¶ 15; Docket No. 50, Pl. Statement ¶ 7; Docket No. 1, Compl. ¶¶ 19, 20; Docket No. 27, Am. Compl. ¶ 11; Docket No. 41, (2d) Am. Compl. ¶ 11; *cf.* Docket No. 57, Defs. Response to Pl.'s Statement ¶ 7). Westermeier met with some of the witnesses plaintiff identified and all signed forms declining to participate (Docket No. 57, Defs. Statement ¶¶ 10-16), meeting with plaintiff to present the assault report (*id.* ¶¶ 17-23). Plaintiff, however, does not state how this assistance was inadequate.

Defendants contend, however, that plaintiff did not select Westermeier as his employee assistant (Docket No. 58, Bradt Decl. ¶ 20, Ex. B92; Docket No. 63, Westermeier Decl. ¶ 7; Docket No. 57, Defs. Statement ¶¶ 7-9, Defs. Response ¶¶ 6-7; *see also* Docket No. 61, Longo Decl., Ex. A, Tr. at 48-50), but Westermeier filled in for plaintiff's assistant on August 13, 1999 (Docket No. 63, Westermeier Decl. ¶¶ 8-9; Docket No. 57, Defs. Statement ¶¶ 11-12). They argue (without citation to authority) that, as a substitute for plaintiff's assistant, Westermeier "did not bear the responsibility of providing plaintiff with the full measure of assistance to which plaintiff claims he was entitled" (Docket No. 64, Defs. Memo. at 17) or, alternatively, that Westermeier is entitled to qualified immunity because it was not unreasonable for him to interview witnesses and to provide documents to plaintiff (*id.* at 18). The employee assistant, even one substituting for another assistant, owes the inmate a duty to the provision of requested services in good faith and in the best interest of that inmate, *see Eng, supra,* 858 F.2d at 898, and perform as instructed by the inmate, *Silva, supra,* 992 F.2d at 22. While plaintiff declined to sign the form Westermeier presented following their interview (Docket No. 63, Westermeier Decl. ¶ 17, Ex. A97), that action did not constitute a waiver of the right to assistance.

Using the harmless error analysis from the Southern District of New York, the fact that Westermeier, rather than plaintiff's selected assistant, conducted the interviews

had no bearing on the ultimate outcome of his disciplinary proceeding. Westermeier posed two questions to four of fifteen inmate witnesses plaintiff identified (Docket No. 64, Defs. Memo. at 17; Docket No. 63, Westermeier Decl. ¶¶ 10-13, Ex. A97). During the disciplinary hearing, plaintiff stated that he had other, unspecified questions he wanted asked of these witnesses that were not posed by the assistant (Docket No. 64, Defs. Memo. at 17; Docket No. 58, Bradt Decl. ¶¶ 27-28, Ex. A3). Hearing officer Bradt reduced the number of potential witnesses from fifteen (or eleven willing to testify) to five to avoid redundancy (Docket No. 58, Bradt Decl. ¶ 27, Ex. A3, 4). Bradt then asked the five witnesses the four questions plaintiff wanted posed (*id.* ¶ 31, Ex. A12-28). In a later deposition, plaintiff testified that he wanted an assistant to investigate whether he was set up on the contraband misbehavior report (*see* Docket No. 64, Defs. Memo. at 19-20, quoting Docket No. 61, Longo Decl., Ex. A, Tr. at 48-50). But the employee assistant's role is not to serve as a private investigator for the inmate. *Shepard, supra,* 1993 U.S. Dist. LEXIS 3170, at *13.

**\*8** Any prejudice arising from Westermeier's actions would concern the four inmates who declined to testify. Plaintiff does not make a proffer of what these inmates may have witnessed or testified to had Westermeier obtained their statements or whether their failure to testify was due to Westermeier. Nevertheless, Bradt restricted the number of witnesses to five and plaintiff does not state how the reluctant four witnesses would have testified differently than the five he called to testify (that Westermeier first interviewed). Despite Selsky's later reduction and reversal of disciplinary action due to the issue of employee assistance, Westermeier limited role as employee assistant did not have a prejudicial effect on plaintiff's disciplinary hearing. *See Samuels, supra,* 2003 U.S. Dist. LEXIS 19162, at *39. Plaintiff, therefore did not state a due process claim against Westermeier.

2. Bradt as Hearing Officer

Plaintiff alleges that Bradt is liable for his conduct of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

the disciplinary hearing as the hearing officer by depriving him of employee assistance and by not affording plaintiff access to the evidence against him. Defendants counter that plaintiff made only conclusory allegations insufficient to grant him summary judgment (Docket No. 64, Defs. Memo. at 18). Plaintiff makes no specific allegations of the flaws in Bradt's conduct of the proceedings against plaintiff. Alternatively, defendants argue that Bradt should enjoy qualified immunity because, after hearing the witnesses called on plaintiff's behalf, it was reasonable for him not to call the other witnesses plaintiff identified (*id.* at 23).

As a hearing officer, Bradt could refuse to call witnesses for irrelevance, lack of necessity or the hazards presented in that case. *See Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). Plaintiff, when informed that four of his original fifteen witnesses declined to testify and not all eleven witnesses would be heard, called five witnesses. But issues of fact remain regarding not informing plaintiff of the evidence against him, as discussed below.

3. Selsky

As for Selsky, plaintiff faults Selsky for initially affirming Bradt's determination. Defendants argue that he is responsible only from when he affirmed plaintiff's disciplinary determination on November 17, 1999, to his expunging of the charges (Docket No. 64, Defs. Memo. at 8 n. 3, 23). Since they believe Bradt is not liable, defendants conclude Selsky also is not liable (*id.* at 23). They also argue that administrative appellate review is not a due process right, or one currently recognized in this Circuit (*id.* at 23-24 & n. 5), hence entitling Selsky to qualified immunity.

D. Qualified Immunity

Plaintiff argues that defendants should not enjoy qualified immunity. He outlines the existing precedent as of 1999 that established his rights to minimal due process in his disciplinary hearing (Docket No. 48, Pl. Memo. at 12-13). As stated above for each defendant individually, each claims qualified immunity either because their actions were reasonable under the then-current state of the law or no legal requirement existed to make them liable. In particular, as to Selsky, plaintiff does not argue how he does not enjoy immunity given the lack of a constitutional right to an administrative appeal of a disciplinary proceeding.

*9 When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As required by the *Saucier* Court, this Court first considered (above) the constitutional question, then considered the qualified immunity question, *id.* Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, *see Frank v. Reilin,* 1 F.3d 1317, 1327 (2d Cir.1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568-69 (2d Cir.1996).

III. Defendants' Cross-Motion

Defendants contend, first, that plaintiff failed adequately to move for summary judgment by not submitting evidence in support of his motion and violated

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

this Court's local rules by not including citations to the record with his statement of undisputed facts (Docket No. 64, Defs. Memo. at 6). On the merits, defendants argue that plaintiff fails to establish defendants interfered with plaintiff's liberty interest and fails to establish that defendants used constitutionally infirmed procedures (*id.* at 1-2). Defendants claimed qualified immunity (*id.* at 2). Most of these contentions were discussed above in considering plaintiff's motion.

IV. Application

A. Plaintiff's Motion

Plaintiff did not follow this Court's procedural rules regarding making a summary judgment motion, W.D.N.Y. Local Civ. R. 56.1(d), *see also id.* R. 7.1(e) (papers required to support summary judgment motions), 56.2 (notice to *pro se* plaintiff opponents to summary judgment motions). Failure to submit a Rule 56.1 statement *"may* constitute grounds for denial of the motion," *id.* R. 56.1(a) (emphasis added), including failure to provide citations to evidence in the record to substantiate the facts alleged in the statement. This citation requirement helps the Court to identify the existence of material issues of fact and the evidentiary support for movant's or opponent's positions. This Court's Local Civil Rule 5.2(e), the *pro se* litigant rule, states that *pro se* parties must be familiar with and follow local rules, but (while expressly listing particular local rules) does not explicitly list Rule 56.1. Local Rule 56.2 requires notice to a *pro se* plaintiff of a pending summary judgment motion, informing that plaintiff that merely reasserting claims alleged in the complaint will not satisfy responding to a summary judgment motion.

**\*10** But the lapse in not citing to the evidentiary record could be excused due to his *pro se* status, *cf.* *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (leeway given to *pro se* litigants in their papers), and the Court can consider the merits asserted in plaintiff's motion. Plaintiff's motion, despite the caution of Local Rule 56.2, merely recites the allegations from his Complaint without citation to evidence supporting those claims. As a result, plaintiff's motion for summary judgment (Docket No. 47) is DENIED.

B. Defendants' Cross-Motion

1. Merits

Regarding defendants' motion, plaintiff has asserted a liberty interest. But defendant Westermeier did not deprive plaintiff of due process in acting as plaintiff's substitute employee assistant by interviewing inmates plaintiff identified. As for defendant Selsky, plaintiff does not have a due process right to an administrative appeal or to a particular result in such an appeal. Therefore, plaintiff's due process claims against Westermeier and Selsky also fails, as well as so much of plaintiff's claim against Bradt regarding affording plaintiff employee assistance.

Defendant Bradt, however, relied upon confidential documents that were not revealed or referenced to plaintiff during or following his disciplinary hearing (Docket No. 58, Bradt Decl. ¶¶ 11-14), not even alluded to as a basis for Bradt's punishment. The disciplinary decision (*id.* Ex. B 000109) lists "hard copy" of "to/from" memoranda (including one from Sergeant Martinez, who provided one of the confidential reports, *see* Docket No. 69, Ex. A, 000089-90) without alerting plaintiff to the existence of the confidential memoranda Bradt relied upon in reaching his decision. These documents were only recently served upon plaintiff as part of defendants' motion papers (*see* Docket Nos. 69, 68). Plaintiff generally objects that he was deprived of the evidence against him, obviously

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

without making specific reference to these documents. Failure to produce these documents, to reference them as the basis for Bradt's decision, or even to furnish a justification for their exclusion when challenged here in Court, *see* _Sira v. Morton,_ 380 F.3d 57, 75 (2d Cir.2004), violates plaintiff's due process rights. Plaintiff's punishment under Bradt's determination was reduced ultimately because plaintiff was not afforded "notice that certain documentary evidence would be considered" (Docket No. 62, Selsky Decl. ¶ 23, Ex. C000123).

2. Qualified Immunity

With plaintiff stating a claim against Bradt only, defendants' alternative assertion of qualified immunity needs to be examined. Defendants argue that Bradt should enjoy immunity as to the denial of employment assistance in obtaining witnesses (Docket No. 64, Defs. Memo. at 23), but they do not address immunity regarding depriving plaintiff of access to the evidence against him.

Inmates have a well established due process right, at a minimum, to knowing the evidence that confronts them in a disciplinary hearing, _Sira, supra,_ 380 F.3d at 74, 76 (denying qualified immunity for failure to disclose evidence, identities of confidential informants); _Wolff v. McDonnell,_ 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); _Francis v. Coughlin,_ 891 F.2d 43, 47-48 (2d Cir.1989), and this right existed in August 1999. As noted by the Second Circuit in _Sira,_

**\*11** "such disclosure affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence.

"Courts have long recognized, however, that the right to know evidence supporting prison disciplinary rulings is not absolute. *See* _Wolff v. McDonnell,_ 418 U.S. at

564-65. As the Supreme Court has observed, prison disciplinary proceedings 'take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society.' _Ponte v. Real,_ 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). The risks of 'violence or intimidation directed at either other inmates or staff' are real. _Id._ at 495. Thus, when the disclosure of evidence presents such risks, hearing officers may properly decline to inform an inmate of the adverse evidence."

_Sira, supra,_ 380 F.3d at 74-75. Institutional safety concerns may provide a sufficient reason to decline to inform an inmate of evidence. _Francis, supra,_ 891 F.2d at 47-48.

Unlike in _Sira,_ 380 F.3d at 75, Bradt in this case did not present a contemporaneous. reason for not disclosing these documents. Only in support of an *in camera* inspection of these documents was any type of reason given (*see* Docket No. 58, Bradt Decl. ¶¶ 11-14), that their disclosure would somehow reveal DOCS's procedures and techniques of investigation (*id.* ¶ 12). As noted in the Order following the show cause to its production, the Court rejected defendants' rationale first stated in defense counsel's cover letter that they were submitted "for security reasons" this way rather than serving and filing the documents. They then argued that disclosure would reveal investigative tactics for the facility and claimed the confidentiality declared upon these documents, despite the fact of plaintiff's release from that facility on parole last May. (*See* Docket No. 66, Order at 2.) As in _Sira, see id.,_ there is nothing in the record to explain why plaintiff could not have been told the substance of the information that served as the basis for his discipline without identifying the sources of that information. Depriving plaintiff of that information "deprived him of any opportunity to explain or challenge this inculpatory evidence," *id.* Reviewing the record in the light most favoring plaintiff, he has presented a viable due process claim and "there is no basis to hold that any reasonable officer could have thought otherwise." *Id.* at 76. As held

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

(Cite as: 2005 WL 2136914 (W.D.N.Y.))

in *Sira,* defendant Bradt is not entitled to qualified immunity on this due process claim. *Id.*

Thus, issues of material fact exist to preclude defendant Bradt summary judgment as to the due process violation for failing to disclose evidence against plaintiff in his disciplinary proceeding.

### CONCLUSION

Plaintiff's motion for summary judgment (Docket No. 47) is denied; defendants' cross-motion for summary judgment dismissing this Complaint (Docket No. 56) is granted in part as to defendants Westermeier and Selsky entirely but in part as to defendant Bradt for so much of plaintiff's due process claim about affording employee assistance to plaintiff but denied in part as to Bradt as to failing to furnish evidence against plaintiff to him. The only remaining issue is plaintiff's claim against defendant Bradt and whatever damages arise from that claim. The Court will issue an order setting forth a trial schedule.

**\*12** So Ordered.

W.D.N.Y.,2005.

Gates v. Selsky

Not Reported in F.Supp.2d, 2005 WL 2136914 (W.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

**c**

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Andre JOHNSON, Plaintiff,

v.

Richard DOLING, Hearing Officer, Great Meadow Correctional Facility; Robert Murphy, Acting Director, Special Housing Unit, Defendants.

Civ. No. 9:05-CV-376 (TJM/RFT).

Oct. 17, 2007.

Andre Johnson, Pine City, NY, pro se.

Hon. Andrew Cuomo, Attorney General for the State of New York, Jeffrey P. Mans, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants Doling and Murphy.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge.

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Randolph F. Treece, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). No objections to the Report-Recommendation and Order dated September 17, 2007 have been filed. Furthermore, after examining the record, this Court has determined that the Report-Recommendation and Order is not subject to attack for plain error or manifest injustice. Accordingly, the Court adopts the Report-Recommendation and Order for the reasons stated therein.

It is therefore,

**ORDERED** that Defendants' motion for summary judgment (Docket No. 34) is **GRANTED** and the complaint is **DISMISSED** as to all defendants.

**IT IS SO ORDERED.**

***REPORT-RECOMMENDATION and ORDER***

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Andre Johnson brings this civil action, pursuant to 42 U.S.C. § 1983, alleging Defendants Doling and Murphy denied him due process rights in a Disciplinary Hearing in violation of the Fourteenth Amendment. Dkt. No. 1, Compl., Facts at ¶¶ 1-35 & Cause of Action at ¶¶ 36-47. Specifically, Plaintiff alleges Defendants violated his due process rights by denying him the right to present a defense, call witnesses, be present, receive a written disposition and statement of the evidence

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

relied upon, and receive a fair and impartial hearing. Compl. at ¶ 39. Defendants now bring a Motion for Summary Judgment. Dkt. No. 34. Plaintiff opposes the Motion. Dkt. No. 35. For the following reasons, it is recommended that the Motion for Summary Judgment be **granted.**

### I. FACTS

During all relevant times pertaining to this action, Plaintiff was incarcerated at Great Meadow Correctional Facility. Dkt. No. 34, Defs' 7.1 Statement at ¶ 2.[FN1] Plaintiff was served with an Inmate Misbehavior Report, dated March 17, 2002, in which he was charged with possession of a weapon, assault, fighting, and threat of violence. *Id.* at ¶ 3. Prior to the Disciplinary Hearing, Plaintiff was provided an assistant of his choice with whom he met, received all requested documents, and requested one inmate witness, Angulo. *Id.* at ¶ 4.

> FN1. When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, we will not cite to both 7.1 Statements, only to the Defendants'. *See* N.D.N.Y.L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* ) (emphasis in original).

Defendant Officer Doling commenced the Hearing on March 21, 2002, advising Plaintiff of the procedure and his rights. *Id.* at ¶ 7. Doling then read the Inmate Misbehavior Report into the record and asked Plaintiff to enter a plea, to which Plaintiff entered a plea of not guilty. *Id.* at ¶¶ 7-8. During the Hearing, Plaintiff objected to the evidence tag number identified in the Misbehavior Report (# 8621), which was not the same evidence tag number on the physical weapon (# 8629). *Id.* at ¶ 9. Doling dismissed the objection, indicating that because the weapon marked # 8629 had the same physical description as the weapon in the Misbehavior Report, he believed the mixup in numbers

was the result of a typographical error. Dkt. No. 34, Jeffrey P. Mans, Asst. Att'y Gen., Affirm., dated Jan. 10, 2007, Ex. A-10, Hr'g Tr. at p. 2.

**\*2** Correction Officer Young authored the Misbehavior Report which formed the basis for the charges against Plaintiff. Mans Affirm., No. 34, Ex. A-3, Inmate Misbehavior Report, dated Mar. 17, 2002. In the Report, Young stated he saw Plaintiff swing at and stab another inmate, Angulo, with a weapon about eight inches long and sharpened to a point with a piece of bed sheet wrapped around it as a handle. *Id.* Young also stated he recovered the weapon after Plaintiff threw it away as he was falling to the floor. *Id.* The Misbehavior Report does not mention any other inmate besides Plaintiff and the victim, Angulo. Plaintiff objected that the Misbehavior Report should include other inmates involved in the incident pursuant to Departmental Regulation, codified at N.Y. COMP.CODES R. & REGS. (N.Y.CRR) tit. 7, § 251-3.1(c)(4), which states that "when more than one inmate was involved in an incident, the report should, to the extent practicable under the given circumstances, indicate the specific role played by each inmate." Hr'g Tr. at pp. 3-6. Because Young had not mentioned other inmates in the Report, Doling dismissed Plaintiff's objections to the Report as irrelevant. *Id.* at pp. 3-4.

An Unusual Incident Report (UIR), dated March 17, 2002, indicates that four inmates were involved in the altercation Young observed. Mans Affirm., Ex. A-6 at pp. 1-3, Unusual Incident Rep., dated Mar. 17, 2002 (stating "[O]fficer [Y]oung observed three inmates fighting with inmate Angulo"). Plaintiff attempted to introduce the UIR into evidence in order to call into question the accuracy of the Misbehavior Report, however, Doling denied said introduction for lack of relevancy because the Misbehavior Report alone constituted the formal charge against Plaintiffs under 7 NYCRR § 254.3, and because the UIR was not written by Young. Hr'g Tr. at pp. 3-5 & 10.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

At Plaintiff's request, Officer Young and Inmate Ingram testified at the Hearing. Defs.' 7.1 Statement at ¶ 11. Young testified he observed Plaintiff and two other inmates attacking Inmate Angulo, that Plaintiff attempted to stab Angulo with the shank he subsequently threw away as he slipped and fell to the floor, and that after he recovered the weapon he "screwed up" the tag number, creating the aforementioned tag number discrepancy. Hr'g Tr. at pp. 6-10.

Plaintiff then called as witnesses Inmate Angulo and the other inmates named in the UIR, Temple and Ingram. Hr'g Tr. at p. 5. Angulo refused to testify in the case, stating in his refusal form that he didn't know Plaintiff. Mans Affirm., Ex. A-9 at p. 4, Requested Inmate Refusal to Testify Form, dated Mar. 21, 2002. Defendant Doling was satisfied that Angulo's refusal was fair, reasonable and not occasioned by any wrongdoing. Hr'g Tr. at p. 13. Doling called Officer Stemp in order to request Inmate Temple to testify, but Officer Stemp indicated Temple did not want to testify. *Id.* at p. 18. Officer Stemp did not know why Temple refused, nor did he know if Temple had been threatened or promised anything if he didn't testify. *Id.* Based upon that conversation, Doling found that Temple had voluntarily refused to testify. *Id.* at p. 19.

**\*3** Plaintiff also called as a witness Sergeant (Sgt.) Brown, who investigated the incident, and Lieutenant (Lt.) Armstrong, who received an interdepartmental communication from Officer Young indicating that Young recovered a different weapon from the scene of the altercation, a four-and-a-half inch long piece of sharpened metal wrapped with plastic food covering. Hr'g Tr. at pp. 13-17; Mans Affirm., Ex. A-6 at p. 4, Ex. 5, Interdepartmental Commc'n, dated Mar. 17, 2002. Doling refused to call these officers for lack of relevancy. Hr'g Tr. at pp. 13-17. In Sgt. Brown's case, Doling deemed his testimony irrelevant because he did not witness the incident nor write the Misbehavior Report. *Id.* Lt. Armstrong's testimony was deemed irrelevant because Doling saw no inconsistencies between the Interdepartmental Communication and the Misbehavior

Report. *Id.*

Doling excluded Plaintiff from the Hearing after Plaintiff allegedly exhibited threatening behavior and, in Doling's opinion, attempted to prolong the Hearing by calling irrelevant witnesses. Hr'g Tr. at pp. 19-20. Officer Doling stated:

Upon asking Mr. Johnson to step out so I could arrange for further witnesses, Mr. Johnson became threatening and I had him removed from the hearing room because of his clear refusal to um, move this hearing along and his threatening manner. Mr. Johnson has been excluded from this hearing. I have decided to complete this hearing without him. It is clear that Mr. Johnson is making requests for witnesses who are not relevant or material to the issue has become very angry with hearing officer for refusing to uh, subject himself, the hearing officer refusal to subject himself to the_____ of the inmate and have become argumentative, threatening and otherwise uh, dangerous to the safety and security of the facility. The inmate has requested a number [of] witnesses most of whom have been dealt with by either hearing the testimony of or obtaining the refusal of the witnesses.

Hr'g Tr. at pp. 19-20.

Plaintiff denies exhibiting any threatening or obstructive behavior, and further asserts that Doling stopped the audio recorder while rudely dismissing him.[FN2] Pl.'s 7.1 Statement at ¶ 7. Doling continued the Hearing without Plaintiff and questioned Inmate Ingram, the final witness Plaintiff had requested prior to his removal. Hr'g Tr. at pp. 20-22. Doling found Plaintiff guilty of the charges and imposed a penalty of 730 days disciplinary confinement in the Special Housing Unit (SHU). *Id.* at p. 22. Doling made a statement of the evidence relied upon,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

and requested that Officer Catalfamo give copies of the Hearing Disposition along with an appeal form to Plaintiff within twenty-four hours. *Id.* at pp. 22-23. Plaintiff denies ever receiving these documents. Pl.'s 7.1 Statement at ¶ 7; Compl. at p. 2. However, Plaintiff did receive a copy of the audio tape of the Hearing and successfully requested an extension of time to appeal the disposition. Mans. Affirm., Ex. A-11, Letter from Andre Johnson to Glenn S. Goord, dated Apr. 18, 2002 (stating "I received the hearing tape in SHU"); Mans. Aff., Ex A-13, Letter from Deputy Comm'r Lucien J. Leclaire, Jr. to Andre Johnson, dated Apr. 29, 2002 (granting Johnson's request for an extension to supplement his appeal).

> FN2. Plaintiff asserts Doling told Officer Catalfamoto to "get this piece of shit out of here." Pl.'s 7.1 Statement at ¶ 7. There does appear to be a break in the transcript before Doling announces he has expelled Plaintiff. Hr'g Tr. at p. 19.

**\*4** Plaintiff appealed Doling's Tier III determination. Defs.' 7.1 Statement at ¶ 21. Defendant Robert Murphy, Acting Director of Special Housing and Inmate Discipline, modified the Tier III disciplinary determination by reducing the penalty imposed from 730 days to 540 days in SHU. *Id.* at ¶ 22. Subsequently, by determination dated June 23, 2002, Donald Selsky, Director of Special Housing and Inmate Discipline, administratively reversed the Tier III disciplinary determination, although Plaintiff had already served the entirety of the modified sanction. Defs.' 7.1 Statement at ¶ 26; Pl.'s 7.1 Statement at ¶ 12.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party

bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), accord, *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Due Process Claims Against Defendant Doling**

**\*5** In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations. *Id.*

The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.' " *Id.* (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)). Furthermore, "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.' " *Vitek v. Jones,* 445 U.S. 480, 493 (1980) (quoting *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)).

However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner,* 515 U.S. 472, 484 (1995), and "qualitatively different from the punishment characteristically suffered by a person convicted of crime," the Due Process Clause itself confers a liberty interest. *Vitek v. Jones,* 445 U.S. at 493 (holding an involuntary transfer to a state mental hospital implicated a liberty interest protected by the Due Process Clause); *see also, Washington v. Harper,* 494 U.S. 210 (1990) (finding the Due Process Clause provides a liberty interest in being protected from the involuntary administration of psychotropic drugs).

In the case at bar, Plaintiff's disciplinary confinement in SHU does not constitute an "unexpected" change in condition, nor did those conditions exceed the sentence imposed upon him. *See Dawes v. Dibiase,* 1997 WL 376043, at \*4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper & Vitek v. Jones* for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year). Therefore, Plaintiff does not have a liberty interest in remaining free from SHU confinement emanating from the Due Process Clause itself.

State statutes and regulations may also confer liberty interests to prisoners. *Arce v. Walker,* 139 F.3d at 334 (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. at 460). The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. at 484. Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

**\*6** While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections, *Sims v. Artuz,* 230 F .3d 14, 23 (2d Cir.2000) (stating that confinement in SHU exceeding 305 days was atypical); *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (finding 305 days of SHU confinement atypical).

Thus, while Plaintiff cannot claim a liberty interest emanating from the Due Process Clause itself, he has by virtue of being confined in SHU for over a year passed the *Sandin* threshold for constitutional protection of a state-created liberty interest. Because New York State has created by statute or regulation a liberty interest in remaining free from segregated confinement, Plaintiff has stated a valid due process claim based on a constitutionally protected, state-created liberty interest. *Sher v. Coughlin,* 739 F.2d 77, 81 (2d. Cir.1984); *Alvarez v. Coughlin,* 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (holding *Sandin* does not affect the validity of prior decisions holding New York State Regulations create a protected liberty interest in remaining free from disciplinary segregation).

Having made a threshold showing of atypical and significant confinement, we must consider whether Plaintiff, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner placed in administrative segregation must be provided (1) advanced written notice of the charges against him at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564-66; *see also Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001) (quoting *Hewitt v.*

*Helms,* 459 U.S. 460, 476 (1983).

### 1. Notice

"Notice" should be something more than a mere formality. *Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993). "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez,* 238 F.3d at 192-93 (quoting *McKinnon v. Patterson,* 568 F.2d 930, 940 n.11 (2d Cir.1977)) (alteration in original).

In this case, Plaintiff was served with an Inmate Misbehavior Report, dated March 17, 2002, in which he was charged by Officer Young with possession of a weapon, assault, fighting, and threat of violence. Mans Affirm., Ex. A-3, Inmate Misbehavior Rep. Johnson acknowledged receipt of the Misbehavior Report by signing the Hearing Record Sheet and does not contest receipt of such Report. Mas Affirm. Ex. A-9 at p. 2, Hr'g Record Sheet.

**\*7** We find that Plaintiff was provided sufficient notice to fulfill the requirements of due process.

### 2. Hearing

A prisoner must be afforded the opportunity to appear at the Disciplinary Hearing, to call witnesses, and to present rebuttal evidence. *Wolff v. McDonnell,* 418 U.S. at 556. "Although the hearing requirement for placement in administrative segregation may be met by an 'informal, nonadversary' proceeding, *Hewitt [v. Helms,]* 459 U.S. at 476, it is a bedrock requirement of due process that such hearing be held 'at a meaningful time and in a meaningful

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

manner,' *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976)." *Taylor v. Rodriguez,* 238 F.3d at 193.

Plaintiff was provided an assistant of his choice, received all requested documents, and requested Inmates Angulo and Temple to testify as his only inmate witnesses. At the Hearing presided by Defendant Officer Doling on March 21, 2002, Plaintiff was advised of the procedure and of his rights and was read the charges against him as reflected in the Misbehavior Report. Hr'g Tr. at pp. 1-2. Plaintiff claims Doling violated his due process rights at various times during the course of the Hearing. Compl. at ¶ 39.

### a. Witnesses

First, Plaintiff asserts he was denied the opportunity to call witnesses as part of his defense. *Id.* An inmate's right to call witnesses is not the same as a defendant in a criminal trial, but rather, is qualified by the circumstances of prison life. *Wolff v. McDonnell,* 418 U.S. at 566-67. The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case. *Id.* (noting that the right to call witnesses must be balanced against legitimate penological interests).

Plaintiff attempted to call as witnesses Inmates Angulo (the victim) and Temple (mentioned in the Unusual Incident Report). Angulo refused to testify, stating in his signed refusal form he didn't know Plaintiff. Mans Affirm., Ex A-9 at p. 4, Requested Inmate Witness Refusal to Testify Form, dated Mar. 21, 2002. Inmate Temple, without offering any reasons, also refused to testify as recounted by Officer Stemp. Hr'g Tr. at p. 18.

A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993); *see also Rossi v. Goord,* 2006 WL 2811505, at *14 (N.D.N.Y. Sept. 28, 2006). The hearing officer does not have to conduct an independent investigation before accepting an inmates-witness's refusal to testify. *Dumpson v. Rourke,* 1997 WL 610652, at *1 (N.D.N.Y. Sept. 28, 2006) (citing *Greene v. Coughlin,* 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995). In this case, the record provides no evidence nor intimation that either refusal was made because of intimidation. The fact that Temple did not sign a refusal form did not even amount to a violation of any New York State Regulation, let alone a constitutional due process violation. *See,* 7 N.Y. COMP.CODES R. & REGS. tit. 7, § 253 .5. Therefore, Officer Doling's refusal to compel these witnesses' appearance does not constitute a due process violation.

**\*8** Plaintiff also attempted to call as witnesses Sgt. Brown, who investigated the incident, and Lt. Armstrong, who received an interdepartmental communication about the incident from Officer Young. Defendant Officer Doling denied calling them for lack of relevancy. Hr'g Tr. at pp. 13-17. Doling ruled that neither Lt. Armstrong nor Sgt. Brown personally witnessed the incident, and thus could not offer any relevant information. Irrelevancy is a valid grounds for the denial of a witness. *Wolff v. McDonnell,* 418 U.S. at 566-67. Although Plaintiff correctly points out that the Misbehavior Report did not include information pertaining to other inmates who were allegedly involved in the incident, possibly in contravention of the protocol laid out in Departmental Regulation § 251-3.1, such an omission does not change the charges against him nor the evidence relevant to that charge. Violation of state law alone is generally insufficient to establish a constitutional violation. *See Soto v. Walker,* 33 F.3d 169, 173 (2d Cir.1993). Additionally, the UIR, which identified other inmate participants, is congruent with Young's Misbehavior Report in that both state that Young observed Johnson stabbing and slashing Angulo with an eight inch sharpened metal shank with a cloth handle. In determining that their testimony was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

irrelevant, Doling's refusal to call Brown and Armstrong did not violate due process.

Plaintiff was allowed to call and question Officer Young as a witness. Hr'g Tr. at pp. 6-10. Young affirmed the charges described in his Misbehavior Report. *Id.* Doling also called Inmate Ingram and examined him after Plaintiff was removed from the Hearing .[FN3] *Id.* at pp. 20-22. For the reasons stated above, it is therefore recommended that summary judgment be **granted** as to this claim.

FN3. We consider Plaintiff's ejection and the continuation of the Hearing in his absence below.

**b. Ejection from Hearing**

Second, Plaintiff asserts Doling deprived him of due process when he evicted him from the Hearing and continued it in his absence. Compl. at ¶ 39. Defendants argue due process does not entail the right to be physically present at a disciplinary hearing. Defs' Mem. of Law, at p. 17 (citing *Bogle v. Murphy,* 2003 WL 22384792 (W.D.N.Y. Sept. 9, 2003) for the proposition that violations of New York State Regulations do not necessarily constitute constitutional due process violations, and *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989) for the Second Circuit's determination that "[p]rison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding"). We recently recognized in *Holloway v. Selsky* the existence of conflicting Second Circuit opinions regarding whether prisoners have a right to be present at disciplinary hearings under the Due Process Clause. 2007 WL 433375, at *7 (N.D.N.Y. Feb. 6, 2007). In that case, we noted that in *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989), the Second Circuit declared nonexistent the right of an inmate to be present at a disciplinary hearing, while in two subsequent cases, the Second Circuit affirmed a limited right to be

present during disciplinary hearings: in *Young v. Hofman,* 970 F.2d 1154 (2d Cir.1992), the Second Circuit stated that "[t]he Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, *including the opportunity to appear at the hearing* and to call witnesses" (emphasis added) and in *Chavis v.. Zodlow,* 2005 WL 834646, at *3-4 (2d Cir.2005), it stated that prisoners have a "limited right to be present" during disciplinary hearings. In *Holloway,* we declined to address this constitutional issue because the Plaintiff failed to make the threshold showing of a constitutionally protected liberty interest under the atypical and significant standard. *Holloway v. Selsky,* 2007 WL 433375, at *7. In the case at bar, no such roadblock prevents our consideration of this constitutional issue.

**\*9** The Second Circuit has held that the limited right to call witnesses, present evidence, and comment on the charges brought are facially valid constitutional claims. *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2000) (citing *Wolff v. McDonnell,* 418 U.S. at 555-72). We find implicit in the Supreme Court's decision in *Wolff* the limited right to be physically present at disciplinary hearings in order to exercise the aforementioned basic due process rights. *Chavis v. Zodlow,* 2005 WL 834646 at *3-4 (stating that the Supreme Court in *Wolff v. McDonnell* "acknowledg[ed] an inmate's limited right to be present during his disciplinary hearing"). While this right must necessarily be limited by penological interests, the *per se* denial of such right would undermine the requirement that disciplinary hearings be held "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976); *see also Wolff v. McDonnell,* 418 U.S. at 566 (stating "we must balance the inmate's interest ... against the needs of the prison, and some amount of flexibility and accommodation is required").

However, because we recognize that neither the Supreme Court nor the Second Circuit has clearly articulated the right of prisoners to be present at disciplinary hearings, Defendants are entitled to qualified immunity. *African Trade & Info. Ctr., Inc. v. Abromaitis,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

294 F.3d 355, 359 (2d Cir.2002). Qualified immunity will shield "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 359 (2d Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker,* 229 F.3d 366, 370 (2d Cir.2000). Violation of a duty under state law does not defeat qualified immunity because there must be a clearly established *federal* right on which the claim for relief is based. *Elder v. Holloway,* 510 U.S. 510, 515-16 (1994) (citing *Davis v. Scherer,* 468 U.S. 183, 197 (1984)). In order for the constitutional right to be clearly established, three elements must be met: "1) ... [that] the right in question [be] defined with reasonable specificity; 2) [that] the decisional law of the Supreme Court and applicable circuit court support the existence of the right in question; and 3) [that] under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Mollica v. Volker,* 229 F.3d at 371 (internal quotation marks and citations omitted) (alterations in original).

Because neither the Supreme Court nor the Second Circuit has clearly established the right of prisoners to be present at a disciplinary hearing, qualified immunity applies and it is recommended that summary judgment on this claim be **granted.**

### c. Right to Present a Defense

Plaintiff asserts Doling denied him the opportunity to present a defense. Compl. at ¶ 39. Specifically, Plaintiff objects to Doling's determination that the discrepancy of the numbered label on the evidence bag was due to a typographical error, to his refusal to call certain witnesses, and to the Misbehavior Report, which failed to include a description of the participation of three other inmates who were named in the UIR. Pl.'s Mem. of Law at pp. 15-20. These objections are without merit. As discussed above, Doling acted within his authority when he declined to call witnesses for lack of relevancy. *See supra* Part II.B.2.a at

pp. 12-14. Further, the charges brought against Plaintiff in the Misbehavior Report are not contradicted by the UIR, and are in fact affirmed by it. *Compare* Inmate Misbehavior Report (stating Plaintiff was "swinging and stabbing inmate Angulo") *with* Unusual Incident Report (stating Plaintiff was "using a metal shank stabbing and slashing at Angulo"). Finally, Doling's determination that a typographical error was the cause of the mislabeled evidence bag, affirmed by Officer Young's testimony, was not unreasonable. Hr'g Tr. at pp. 6-9. And, as previously discussed with respect to Plaintiff's dismissal from the hearing, qualified immunity applies, and it is therefore recommended that summary judgment on this claim be **granted.**

### d. Fair and Impartial Hearing

**\*10** Plaintiff claims he received an unfair and partial hearing before Hearing Officer Doling. Compl. at ¶ 39. An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer who does not prejudge the evidence. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). But, it has been held that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* at 259 (citing *Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1994) and *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

The Hearing Transcript reveals a contentious proceeding characterized by frequent interruptions and heated exchanges between Plaintiff and Doling. *See generally* Hr'g Tr. Notwithstanding, until his dismissal from the proceeding, Plaintiff was provided the opportunity to testify, call and question witnesses, and raise objections on which Doling ruled and explained his reasoning to Plaintiff. *Id.* Disagreement with rulings made by a hearing officer does not constitute bias. *Cf. Dumpson v. Rourke,* 1997 WL 610652, at *6 (N.D.N.Y. Sept. 26, 1997) (stating "[t]he fact that the hearing officer did not decide in the plaintiff's favor does not make him biased in the constitutional sense"). We find no genuine issues of material fact concerning Doling's impartiality and therefore it is recommended that summary judgment be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

granted on this claim.

### 3. Written Statement of the Evidence Relied Upon

Plaintiff claims he did not receive a written disposition of the Disciplinary Hearing or statement of the evidence relied upon. Compl. at ¶ 39. Prisoners are entitled to a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff v. McDonnell,* 418 U.S. at 563. Provision of a written disposition is a mechanism that ensures the inmate protection against "collateral consequences based on a misunderstanding of the nature of the original proceeding.... Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." *Id.* at 565.

After declaring Plaintiff guilty of the charges brought, Doling imposed a penalty of 730 days in SHU with attendant loss of privileges, annunciated a statement of the evidence which was relied upon, and directed Officer Catalfamo to deliver the Hearing Disposition together with an appeal form to Plaintiff within 24 hours. Hr'g Tr. at p. 22. Defendants provide an Interdepartmental Communication from Officer Catalfamo, dated March 29, 2002, wherein he asserts he delivered a copy of the disposition form to Plaintiff and also informed Plaintiff of his right to appeal the disposition within thirty days. Mans Affirm., Ex. A-9 at p. 6, Interdepartmental Commc'n, dated Mar. 29, 2002. Plaintiff asserts those documents were never delivered to him as Doling directed. Pl.'s Mem. of Law at pp. 20-21. However, Plaintiff did receive a copy of the disposition within a month after the Hearing, and was able to file an appeal on which he eventually prevailed. Mans Affirm ., Ex. A, Dep. of Andre Johnson, dated Sept. 12, 2006, at pp. 47-51 (stating he received them sometime in April 2002); *see also* Mans Affirm. Exs. a-11 & A-12 (letters from Plaintiff requesting extensions of time to file an appeal and noting he received an audio tape of the Hearing along with a cassette player). Any potential constitutional violation was therefore cured

because the delay in no way prejudiced Plaintiff, as evidenced by the fact that he filed an appeal and was ultimately successful, and therefore it is recommended that summary judgement be granted on this claim.

### C. Due Process Claims Against Defendant Murphy

*11 Plaintiff claims Murphy violated his due process rights by failing to remedy the alleged constitutional violations he suffered. Compl. at ¶¶ 40-41. Plaintiff does not allege that Defendant Murphy was personally involved in any wrongdoing, and thus his theory of liability rests solely on Murphy's supervisory status. Because we find that Defendant Doling did not violate any clearly established constitutional rights, Defendant Murphy cannot be held liable on any grounds. *See supra* Part B, Due Process Claims Against Defendant Doling. It is therefore recommended that summary judgment be granted as to the claims against Murphy.

### III. CONCLUSION

For the reasons stated herein, it is hereby

RECOMMENDED, that Defendants' Motion for Summary Judgment (Dkt. No. 34) be GRANTED and the Complaint (Dkt. No. 1) be DISMISSED against all Defendants, and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

(Cite as: 2007 WL 3046701 (N.D.N.Y.))

Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2007.

Johnson v. Doling

Not Reported in F.Supp.2d, 2007 WL 3046701 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Timothy DUMPSON, Plaintiff,

v.

Captain ROURKE; Hans Walker, Superintendent, Auburn Correctional Facility; Donald Selsky, Director of Department of Correctional Services; and Du Seitz, Hearing Officer Defendants.

No. CIVA96CV621 (RSP/GJD)

Sept. 26, 1997.

Timothy Dumpson, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, New York State Department of Law, The Capitol, Albany, New York, Howard L. Zwickel, Assistant Attorney General, of Counsel.

*ORDER*

POOLER, J.

**\*1** The above matter comes to me following a Report-Recommendation by Magistrate Judge Gustave J.

Di Bianco, duly filed on the 2nd day of September, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Timothy Dumpson, an inmate incarcerated in the state of New York, brought this civil rights action alleging violations of his rights to due process of law and freedom from cruel and unusual punishment in connection with a Tier III disciplinary hearing held on March 18, 1994, and the subsequent punishment imposed of one day of keeplock and a seven day restricted diet. The magistrate judge recommended that I dismiss Dumpson's complaint in its entirety and deny his response filed as a cross-motion. Dumpson has filed objections to the report-recommendation.

I review the sections of the magistrate judge's report-recommendation to which Dumpson has filed specific objections *de nov.* *See* 28 U.S.C. § 636(b); Fed.R.Civ.P. 72(b). I review the remainder of the report-recommendation for clear error.

Dumpson contends primarily that his due process and Eighth Amendment claims against defendant Seitz should be allowed to go forward because Seitz (1) violated state by failing to interview inmate Green, who refused to testify at Dumpson's disciplinary hearing, to ascertain the reasons for Green's refusal and (2) imposed a seven day restricted diet which Dumpson was unable to eat without becoming ill. Dumpson contends that Seitz's violation of state law rises to the level of a due process violation and that imposition of the restricted diet constitutes cruel and unusual punishment.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

I conclude that the magistrate judge correctly held that the hearing officer's failure to investigate the reasons for inmate Green's refusal to testify does not constitute a due process violation. As noted in the report-recommendation, when a hearing officer denies an inmate witness, due process requires only that officials provide some explanation either at the time of the hearing or subsequently in court. *Russell v. Selsky,* 35 F.3d 55, 58 (2d Cir.1994) (citing *Ponte v. Real,* 471 U.S. 491, 498-99, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985)). In this case officials have stated that inmate Green refused to testify. The Hearing Record Sheet signed by defendant Seitz also notes that Green refused to testify. Dkt. No. 15, Ex. A. Finally, a Witness Refusal Form indicating that Green both refused to testify and refused to sign the form is attached and signed by a corrections officer. *Id.* Yet another corrections officer noted at the bottom of the form that he specifically asked Green to provide a reason for his refusal and Green refused to provide further information. *Id.* When an inmate refuses to testify, a hearing officer need not call the witness, *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993), or make an independent investigation into the refusal to testify, *Greene v. Coughlin,* 1995 WL 60020, *14 (S.D.N.Y.).* Consequently, Seitz's failure to investigate Green's refusal to testify does not constitute a due process violation.

**\*2** Dumpson's Eighth Amendment claim also fails. As the magistrate judge noted, plaintiff alleges that he suffered because of his refusal to accept the food offered to him on the restricted diet, not that the diet harmed him in any way. In addition, Dumpson does not allege that the restricted diet was nutritionally inadequate and doest not controvert defendant Walker's statement that the diet includes a "nutritionally adequate loaf and cabbage." Walker Aff. at ¶¶ 4, 5. Although Dumpson alleges in his objections that he refused the food offered on the restricted diet because he knew from past experience that the food would make him sick, I do not find those allegations in the pleadings. In addition, Dumpson does not allege that he informed prison officials that the restricted die food had made him sick in the past. Dumpson failed to contest defendants' statement that Dumpson never complained about the diet. Consequently,

Dumpson fails to state a claim of an Eighth Amendment violation, and his Eighth Amendment claims are dismissed.

However, the magistrate judge has recommended that I dismiss Dumpson's Eighth Amendment claim against Seitz without prejudice in light of recent developments in the Second Circuit with regard to this issue. *See Phelps v. Kapnolas,* 123 F.3d 91, 1997 WL 469904 (2d Cir.). I agree, and I dismiss Dumpson's Eighth Amendment claim against Seitz only without prejudice.

Dumpson's remaining objections are general in nature. Therefore, finding no clear error, I adopt the magistrate judge's report-recommendation with respect to the remaining issues.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and the objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby approved;

2. The departments' motions are granted and the action dismissed for the reasons set forth in the Magistrate Judge's Report;

3. The plaintiff's cross-motion is denied; and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

3. The Clerk shall serve a copy of this Order on the parties by regular mail.

IT IS SO ORDERED.

REPORT-RECOMMENDATION

GUSTAVE J. DI BIANCO, Magistrate J.

This matter was referred to the undersigned for report and recommendation by the Honorable Rosemary S. Pooler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint, plaintiff alleges that he was denied due process of law in connection with a Tier III disciplinary hearing held against him, beginning on March 18, 1994, and as a result of which, he received the sanctions of one day of keeplock [FN1] and a seven day restricted diet. Plaintiff also alleges an Eighth Amendment violation as the result of the imposition of the diet.

FN1. Keeplock is a form of confinement which can be administrative or disciplinary, and which involves an inmate's confinement to his own cell, deprived of participation in normal prison routine, and denied contact with other inmates. See *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989) (defining administrative keeplock).

Plaintiff seeks injunctive and monetary relief.

Presently before the court is a motion for summary judgment filed on benefit of defendants Selsky, Walker,

and Seitz [FN2] pursuant to FED.R.CIV.P. 56 (Docket # 14). Plaintiff responded to the defendants' motion [FN3] (Docket # 19). Defendant Rourke [FN4] has filed a motion for judgment on the pleadings pursuant to FED.R.CIV .P. 12(c) (Docket # 20). On February 3, 1997, plaintiff filed his "Second Reply for Cross-Motion in Opposition for Summary Judgment" [FN5] (Docket # 23).

FN2. The plaintiff mistakenly referred to defendant Seitz as "Duseitz" in the complaint. It is clear, however, that Lieutenant Seitz was the Hearing officer in plaintiff's case and will be referred to by his correct name. The court would also point out that originally, the plaintiff sued Philip Coombe, Jr. in addition to the other defendants. Philip Coombe, Jr. is the present Commissioner of the Department of Correctional Services. However, the plaintiff submitted an amended complaint, in which he deleted Coombe as a defendant. Therefore, Philip Coombe, Jr. is no longer in this action and does not need to be included in the motion for summary judgment.

FN3. Plaintiff labeled his response as "Notice of Motion Reply to Opposition for Summary Judgment" (Docket # 19). The document is merely a responsible to the defendants' motion.

FN4. Defendant Rourke was not included in the defendants' motion for summary judgment because he had not been served at the time.

FN5. Plaintiff labeled his responsible as "Cross-Motion", and it was docketed as such, but the document is merely a response to the defendants' motion (Docket # 23).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

**\*3** For the following reasons, the undersigned agrees with the defendants and will recommend dismissal of the amended complaint.

DISCUSSION

**1.** *Summary Judgment:*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must doe more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

**2.** *Judgment on the Pleadings:*

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c). *Maggette v. Dalsheim,* 709 F.2d 800, 801 (2d Cir.1983) (citations omitted). *See* FED.R.CIV.P. 12(b), 12(c), and 12(h)(2). The motion for judgment on the pleadings is then treated according to the same standard as a motion under Rule 12(b)(6). *Id.*

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (citing *inter alia Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro see* litigants. *Platsky v. Central Intelligence Agency,* 953 F.2d 26, 28 (2d Cir.1991) (citation omitted).

**3.** *Facts:*

Plaintiff was given a misbehavior report on March 14, 1994 by Lieutenant Rourke, charging plaintiff with demonstration, creating a disturbance, and refusing a direct order. Defendants' Exhibit A. The misbehavior report involved an incident when Lieutenant Rourke and another officer were attempting to "talk [another inmate] out of his cell." Defendants' Exhibit A at p. 5. Defendants rourke stated in the misbehavior report that plaintiff yelled and continuously interrupted the officers as they were "making headway with the inmate", resulting in the inmate's refusal to leave the cell and the need to use chemical agents to remove the inmate. Rourke stated in the misbehavior report that he told plaintiff three times to be quiet, but plaintiff continued to interrupt. *Id.*

**\*4** The disciplinary hearing began on March 18, 1994. Plaintiff requested five witnesses. Defendants' Exhibit A at p. 4. Four of the five inmate witnesses testified, two by speakerphone in the inmate's presence, and two outside of the inmate's presence. *Id.* One inmate refused to testify. *Id. See also id.* at p. 8. An officer named Sergeant Smith the at the request of the hearing officer. *Id* . Plaintiff was ultimately found guilty of creating a disturbance and refusing a direct order. Defendants' Exhibit A at p. 1. Plaintiff was found not guilty of the demonstration charge. *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

As a sanction for the violations, defendant Seitz sentenced plaintiff to one day of keeplock, to be served after plaintiff was released from the Special Housing Unit (SHU) in the year 2000. In addition, Seitz imposed a 7 day restricted diet that was to commence almost immediately. The diet disposition was imposed because the plaintiff was confined to SHU (on other sanctions) until the year 2000, and "no other disposition [could] be applied that [would] have an immediate effect." Defendants' Exhibit A at p. 2. This reasoning is set forth in the "Restricted Diet Form", which is a memorandum to the Commissioner of Correctional Services, informing the Commissioner of the imposition of the diet. *Id.*

Plaintiff appealed the decision to defendant Selsky, who reversed the hearing officer's disposition on May 17, 1994. Defendants' Exhibit C. Selsky also ordered plaintiff's records expunged. *Id.* at p. 2. The hearing officer's decision was reversed by Selsky because the "[h]earing [o]fficer failed to make the required meaningful effort to obtain the requested witness testimony ." There was no "indication that [Seitz] questioned the officer who signed [sic] witness refusal form." *Id.* at p. 2. Plaintiff was subjected to the restricted diet prior to the reversal, but he never served the keeplock sanction because that sanction was not set to commence until the year 2000.

Plaintiff alleges that he was denied due process in connection with the disciplinary hearing. He alleges that he was denied the right to be present when his witnesses testified. Plaintiff also claims that the hearing officer failed to investigate the refusal of one of plaintiff's witnesses to testify. Plaintiff alleges that he was denied his right to call inmate Cruz as a witness, and denied the right to obtain documentary evidence. Plaintiff states that the hearing officer was not impartial and alleges that defendant Rourke filed a false misbehavior report.

Plaintiff also claims Eighth Amendment violations due to the restricted diet. Plaintiff alleges that he refused

to eat for the 7 day period, thus he suffered pain, weight loss, dermatitis, depression, headaches, and nightmares.

### 4. *Due Process:*

As the Second Circuit stated in *Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir.1996),* in order to award damages under 42 U.S.C. section 1983 for a procedural due process violation, the court must find that the defendants acted under color of state law and deprived the plaintiff of a liberty or property interest without due process of law. Once the "color of state law" hurdle is past, the remaining inquiry is whether plaintiff had a protected liberty or property interest and whether that interest was deprived without due process. *Id.* If the court determines that plaintiff was not deprived of any due process right, then the court need not decide whether plaintiff had a protected liberty interest.

**\*5** In the instant case, the court has reviewed all the records submitted, and finds that plaintiff was not denied constitutional due process, notwithstanding the reversal of his disciplinary hearing. Thus, the undersigned need not decide whether plaintiff had a protected liberty interest in either the keeplock confinement or the restricted diet.

In the case of prison disciplinary procedures, the Supreme Court has outlined the procedural protections necessary once a liberty interest is found to exist. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These protections include twenty-four hour notice of the claimed violation, a written statement of the evidence relied upon by the fact finder, and the reasons for the disciplinary action taken. *Wolff,* 418 U.S. at 563-65.

Additionally, the inmate should be able to call witnesses and present documentary evidence when doing so will not be unduly hazardous to safety or correctional

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

goals. *Id.* at 566. However, witnesses may be denied for irrelevance or lack of necessity. *Russell v. Selsky,* 35 F.3d 55, 58 (2d Cir.1994) (citations omitted). When denying the inmate witnesses, the officials are only required to provide some explanation *either at the time of the hearing or subsequently in court. Id.* (citing *Ponte v. Real,* 471 U.S. 491, 498-99, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985)).

In the instant case, plaintiff alleges that defendant Seitz did not allow some witnesses to testify in the plaintiff's presence. Plaintiff alleges that Seitz did not call inmate Cruz as a witness. However, the hearing record sheet indicates that inmate Cruz testified from Southport Correctional Facility, using a speakerphone. Defendants' Exhibit A at p. 4. The fact that Cruz was not transported to Auburn Correctional Facility to testify does not rise to the level of a constitutional violation. Another inmate also testified by telephone from Southport. An inmate has no constitutional right to have his witnesses testify in his presence. *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989) (quoting *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). It has also been held that testimony taken by telephone in the inmate's presence is constitutionally sufficient. *Greaves v. New York,* No. 95 Civ. 9725 WL 278109, p. *3 (S.D.N.Y. May 22, 1997) (citing *Sinclair v. Coughlin,* 128 A.D.2d 883, 513 N.Y.S.2d 806, 807 (2d Dep't 1987)).

Plaintiff also claims that Seitz did not investigate inmate Green's refusal to testify on plaintiff's behalf. Green's Refusal Form is included on page 8 of Defendants' Exhibit A. Although Green apparently refused to testify, he also refused to sign the Refusal Form. *Id.* Defendant Selsky reversed the hearing disposition based upon the hearing officer's failure to investigate this refusal. The violation of state law alone, however, does not necessarily rise to the level of a constitutional violation. *See Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). A hearing officer has no power to force an inmate to testify, and when the inmate refuses, the hearing officer need not call the

witness. *Silva v. Casey,* 992 F.2d 20, 21-22 (2d Cir.1993). It has also been held that a hearing officer need not make an independent evaluation of the basis for the refusal to testify. *Greene v. Coughlin,* No. 93 Civ. 2805, 1995 WL 60020, p. *14 (S.D.N.Y. February 10, 1995). Thus, the fact that Seitz did not interview the officer who witnessed the refusal does not rise to the level of a constitutional violation.

**\*6** The plaintiff's only complaint against defendant Selsky is that he failed to reverse the hearing disposition quickly enough to avoid the imposition of the restricted diet on plaintiff. *See* Plaintiff's Second Reply to Defendants' Summary Judgment Motion (Docket # 23 at p. 3). Plaintiff states that he filed his Notice of Appeal on March 25, 1994, and the restricted diet was commenced on March 28, 1994. Plaintiff states that Selsky did not reverse the hearing disposition until May 17, 1994. The undersigned cannot find that the less than 60 day delay between the plaintiff's appeal and the reversal rose to the level of a constitutional violation, or any violation. Certainly, given the amount of disciplinary appeals that are probably filed, it would be almost impossible for defendant Selsky to review and decide a disciplinary appeal within 3 days. Thus, the case must be dismissed against defendant Selsky based only on this allegation by plaintiff.

Plaintiff also claims that the hearing officer was not impartial. Plaintiff, however, makes only this conclusory allegation, without any basis whatsoever for the claim. The fact that the hearing officer did not decide in the plaintiff's favor does not make him biased in the constitutional sense. Conclusory allegations are insufficient to state a claim under section 1983. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Thus, no due process violations occurred at or subsequent to the disciplinary hearing.

**5.** *False Misbehavior Report:*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

Defendant Rourke has submitted a motion for judgment on the pleadings. The only claim against defendant Rourke is that the misbehavior report was falsified. The court would first point out that in the plaintiff's first response to the defendants' summary judgment motion, he basically agrees with the facts stated by Rourke. Defendant Rourke and another officer were attempting to extricate another inmate from his cell. The plaintiff admits that "several prisoners voiced complaints to the defendants ... about improper treatment and harassment by staff against [the other inmate]." Docket # 19 at p. 3. Plaintiff also admits that as a result of this, chemical agents had to be used against the other inmate to get him out of the cell. *Id.* at 3-4. Plaintiff may be claiming that he was not one of the inmates involved. However, it appears that the misbehavior report was not false. Whether plaintiff was guilty of the misbehavior was an issue for the disciplinary hearing. In fact, the Second Circuit has held that a false misbehavior report does not rise to the level of a constitutional violation, as long as the inmate has the opportunity at a disciplinary hearing to challenge the report. *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).

In the instant complaint, plaintiff alleges only that defendant Rourke filed a false misbehavior report. Thus, the case may be dismissed as to this defendant.

**6. *Respondeat Superior:***

**\*7** It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a section 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondent superior is inapplicable to section 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

In *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

In the instant case, plaintiff names the superintendent of Auburn Correctional Facility as a defendant. However, there is no indication that defendant Walker had any personal involvement with the plaintiff's case. Therefore, summary judgment may be granted in defendant Walker's favor.

**7. *Eighth Amendment:***

Apart from any due process claims regarding the restricted diet, plaintiff seems to allege that the restricted diet violated his Eighth Amendment right to be free from cruel and unusual punishment. "The inquiry to be made [in an Eighth Amendment cruel and unusual punishment claim] is whether the prison conditions 'deprived inmates of the minimal civilized measure of life's necessities.' " *Morgan v. Ward,* 699 F.Supp. 1025, 1054 (N.D.N.Y.1988) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "Not all deprivations, therefore, give rise to Eighth Amendment concerns, 'instead the deprivations that trigger Eighth Amendment scrutiny are deprivations of essential human needs.' " *Morgan v. Ward,* 699 F.Supp. at 1054 (quoting *Inmates of Occoquan v. Barry,* 844 F.2d 828, 836

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

(D.C.Cir.1988)). The Eighth Amendment is implicated when inmates claim that they are denied essential food, medical care, or sanitation, or when the conditions are such that the threat of violence among inmates is increased. *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. at 348).

In the instant case, plaintiff alleges that the imposition of the restricted diet constituted cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff alleges that because the diet was improperly imposed, he refused the food and therefore, suffered a variety of ailments including pain, headaches, nightmares, and cramps. It does appear that plaintiff created some of his own problems by refusing food. He does not allege that the restricted diet was in any way nutritionally unsound. The fact that he refused the food does not create an Eighth Amendment violation. As stated above, the hearing did not violate plaintiff's due process right. The sanction of restricted diet was imposed properly, and based on plaintiff's own admissions, it was not the diet that caused him injury, it was his refusal of the food.

**\*8** The court is aware of the Second Circuit's decision in *Phelps v.. Kapnolas,* No. 96-2242, slip op. at 5744 (2d Cir. August 19, 1997), wherein the court held that it could not say that there are no facts under which the imposition of a seven day diet might constitute cruel and unusual punishment. The court then vacated a sua sponte dismissal on the diet issue and remanded for service of the complaint and for further development of the Eighth Amendment claim. The instant case is different in that it is at the summary judgment stage, plaintiff refused the food, did not make a nutritional argument, and defendnat Walker has submitted an affidavit stating that the medical department reviews inmates placed on restricted diets to make sure there is no medical problem which would prevent its imposition. Finally, defendant Walker states that the diet includes a "nutritionally adequate loaf and cabbage." Walker Affidavit at ¶ 4, 5. Finally, the defendants argue that plaintiff never complained about the diet. Plaintiff's response to the summary judgment motion does not contest any of those facts.

Thus, as the complaint stands, plaintiff cannot claim an Eighth Amendment violation relating to the restricted diet. However, based on the liberality with which *pro se* complaints are treated, and based upon *Phelps,* the undersigned will recommend dismissing plaintiff's Eighth Amendment claim without prejudice.

WHEREFORE, based on the above, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Docket # 14) be **GRANTED** as to any due process claims, and the complaint be dismissed as to defendants Walker, Selsky, and Seitz on the due process issues, and it is

RECOMMENDED, that the defendants' motion for summary judgment (Docket # 14) be **GRANTED** on the Eighth Amendment claim, and the complaint be dismissed **with prejudice** as to defendants Walker and Selsky on the Eighth Amendment claim, but **without prejudice** as to defendant Seitz on the Eighth Amendment diet claim, and it is

RECOMMENDED, that defendant Rourke's motion for judgment on the pleadings (Docket # 20) be **GRANTED,** and the complaint be dismissed as against defendant Rourke in all respects, and it is further

RECOMMENDED, that plaintiff's response, filed as a cross-motion (Docket # 23), be **DENIED.**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

(Cite as: 1997 WL 610652 (N.D.N.Y.))

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing reports. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R .Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.

Dumpson v. Rourke

Not Reported in F.Supp., 1997 WL 610652 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.